**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 29, 2021

By ECF

Honorable Kiyo A. Matsumoto,
   United States District Court Judge,
      U.S. District Court for the Eastern District of New York,
         225 Cadman Plaza East,
           Brooklyn, New York 11201.

      Re:    *Wildman* v. *Deutsche Bank Aktiengesellschaft*,
             21 Civ.4400 (KAM) (RML)

Dear Judge Matsumoto:

      Pursuant to Section III.B.1 of the Court's Chambers Practices and this Court's Order entered on October 6, 2021, I write on behalf of defendants Standard Chartered Bank ("SCB"), Standard Chartered PLC ("SC PLC"), and Standard Chartered Bank (Pakistan) Limited ("SCB Pakistan" and, collectively with SCB and SC PLC, the "SCB Defendants"), to request a pre-motion conference with respect to the SCB Defendants' anticipated motion to dismiss the Complaint in the above-referenced action.

      Plaintiffs' Complaint alleges two counts of aiding and abetting against the SCB Defendants under the civil liability provisions of the Antiterrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d). JASTA provides a claim for damages based on injuries arising from an act of international terrorism "committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization" (an "FTO"), against "any person who aids and abets, by knowingly providing substantial assistance . . . the person who committed such an act of international terrorism." *Id.* To plead such a claim, Plaintiffs must allege facts sufficient to plausibly establish three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury (the 'aiding party who causes injury' element); (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance (the 'general awareness' element); [and] (3) the defendant must knowingly and substantially assist the principal violation (the 'substantial assistance' element)." *Honickman* v. *BLOM Bank SAL*, 6 F.4th 487, 494 (2d Cir. 2021) (internal quotation marks and emphases omitted) (quoting *Halberstam* v.

Honorable Kiyo A. Matsumoto -2-

*Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). The Complaint does not adequately allege these elements, and should be dismissed as a matter of law for several reasons:

**1. Plaintiffs fail to allege that the SCB Defendants were generally aware they were playing a role in terrorist activity at the time they provided banking services.** "[T]he relevant inquiry for the general awareness element is: did Plaintiffs 'plausibly allege[ ] the [SCB Defendants' customers] were so closely intertwined with [the terrorist attacks] that one can reasonably infer that [the SCB Defendants were] generally aware while [they were] providing banking services to those entities that [they were] playing a role in unlawful activities from which [the terrorist] attacks were foreseeable[.]'" *Honickman*, 6 F.4th at 499 (quoting *Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F.3d 842, 860-61 (2d Cir. 2021)). Plaintiffs do not allege that the SCB Defendants provided banking services to anyone who carried out any of the relevant attacks. Instead, Plaintiffs allege that the SCB Defendants provided banking services to U.A.E.-based individuals and currency exchanges and Pakistan-based fertilizer companies and that those customers directly or indirectly facilitated actions by others who carried out the attacks in Afghanistan.[1] (*E.g.*, Compl. ¶¶ 689, 691, 712, 721, 727, 745.) Plaintiffs' allegations acknowledge that the SCB Defendants ceased banking many of these customers *years* before the attacks (Compl. ¶¶ 717, 725, 733, 735), "mak[ing] it implausible under the circumstances that [the SCB Defendants] had knowingly assumed a role in the [a]ttacks." *Siegel* v. *HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 224 (2d Cir. 2019). Further, Plaintiffs' reference to unrelated regulatory enforcement actions to suggest that the SCB Defendants "consciously chose to serve as a Laundromat for terrorist financiers" (Compl. ¶ 1155) is unavailing because general allegations that the SCB Defendants "violated laws that were designed principally to prevent terrorist activity do[es] not allege plausibly a general awareness that [the SCB Defendants] had assumed a role in a foreign terrorist organization's *act* of international terrorism." *Freeman* v. *HSBC Holdings PLC*, 465 F. Supp. 3d 220, 230 (E.D.N.Y. 2020).

**2. Plaintiffs fail to plead that any of the SCB Defendants knowingly provided substantial assistance to anyone who carried out the attacks.** To satisfy the substantial assistance element, Plaintiffs must establish that the SCB Defendants "knowingly and substantially assist[ed]" in causing the attacks that injured Plaintiffs, which requires analyzing six identified factors: "(1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance." *Honickman*, 6 F.4th at 499-500 (quoting *Linde* v. *Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)). Plaintiffs do not allege that the SCB Defendants encouraged any attack, were present at the time of the attacks, or had a direct relationship with any of the groups that carried out the attacks. At most, Plaintiffs allege that the SCB Defendants provided banking services to intermediaries, not the persons who carried out the attacks. Plaintiffs, however, must allege facts that permit a reasonable inference that the SCB Defendants recognized that assistance to the alleged customers would enable the

---

[1] Although Plaintiffs also allege that the SCB Defendants had a banking relationship with an individual in Afghanistan, Plaintiffs concede that the SCB Defendants ceased doing business with him in September 2012, before the U.S. government "instituted proceedings against" him in November 2012 based on alleged links to the Taliban and Haqqani Network. (Compl. ¶¶ 477, 737-38.)

Honorable Kiyo A. Matsumoto -3-

attackers to commit the terrorist attacks. *See Kaplan*, 999 F.3d at 864. They have not done so: the Complaint's allegations here are far too attenuated to satisfy JASTA's substantial assistance element. *See Siegel*, 933 F.3d at 220-21, 225. For similar reasons, the Complaint does not establish that the SCB Defendants proximately caused Plaintiffs' injuries. *SPV Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 345-56 (2d Cir. 2018) ("Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated. That is, the injury must be a direct or reasonably foreseeable result of the conduct." (citations and internal quotation marks omitted)). Plaintiffs have not alleged any facts to suggest that the SCB Defendants, the SCB Defendants' customers, and the groups that carried out the attacks were all acting together to further the attacks, such that the SCB Defendants knowingly provided substantial assistance to the persons who carried out the attacks. Thus, Plaintiffs' claims fail.

**3. The Complaint does not allege any FTO involvement for certain attacks.** JASTA limits secondary liability under the ATA to "injur[ies] arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a[n] [FTO] . . . as of the date [of the attack]." 18 U.S.C. § 2333(d)(2). Several claims must be dismissed because they do not allege the attack was committed, planned, or authorized by an FTO. For example, the Taliban (*e.g.*, Compl. ¶¶ 1419-23; 1556-60; 1573-77) has never been designated an FTO, and the Haqqani Network (*e.g.*, Compl. ¶¶ 1395-1399; 1905-1909) was designated an FTO on September 19, 2012, after the attacks it allegedly committed, *Foreign Terrorist Organizations*, U.S. DEP'T STATE, https://www.state.gov/foreign-terrorist-organizations/.

**4. SC PLC and SCB Pakistan are not subject to personal jurisdiction.** Neither SC PLC nor SCB Pakistan is incorporated in the United States or does business in the United States. In the Second Circuit, "[a]llegations that a [non-U.S.] bank provides financial services to clients that associate with [an FTO], thereby aiding [an FTO], are 'not enough for personal jurisdiction purposes'" for ATA claims. *Siegel* v. *HSBC Holdings, PLC*, 2018 WL 501610, at *4 (S.D.N.Y. Jan. 19, 2018) (citing *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013)). SC PLC and SCB Pakistan are foreign entities with no alleged presence in the United States, and Plaintiffs' *only* allegations concerning SC PLC and SCB Pakistan's contacts with the United States are a step even further removed: namely, that SC PLC and/or SCB Pakistan allegedly routed transactions through New York for customers, who were alleged fronts for an individual named Altaf Khanani, who in turn allegedly laundered money for al-Qaeda and the Haqqani Network's agents. (Compl. ¶ 700.) These attenuated connections are not enough for this Court to exercise personal jurisdiction over SC PLC or SCB Pakistan.

The SCB Defendants will be prepared to elaborate on these arguments at a pre-motion conference. The parties have agreed upon the following briefing schedule: moving papers to be served on December 15, 2021; opposition papers to be served on February 16, 2022; and reply papers to be served on March 16, 2022.

    Respectfully submitted,

    */s/ Andrew J. Finn*
    Andrew J. Finn

cc: All Counsel (via ECF)