

1920 L Street, N.W., Suite 535
Washington, D.C. 20036

150 South Wacker Drive, Suite 2400
Chicago, IL 60606

November 19, 2021

**Via ECF**
The Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Wildman, et al. v. Deutsche Bank AG, et al.*, No. 1:21-cv-4400

Dear Judge Matsumoto,

We represent the Plaintiffs in the above-captioned matter. We write to respond to the letter filed by Deutsche Bank AG ("DB AG") and Deutsche Bank Trust Company Americas ("DBTCA") (collectively, "Deutsche Bank") on October 29, 2021, requesting a conference prior to filing a motion to dismiss (the "Deutsche Bank Letter") (D.I. 27).[1]

Plaintiffs are 487 Americans who were injured, or whose loved ones were killed or injured, in attacks committed by a terrorist syndicate led by al-Qaeda and the Taliban, including its Haqqani Network (the "Syndicate") that targeted Americans in Afghanistan from 2011 through 2016. Plaintiffs were injured and killed by terrorists who received direct and indirect support from Deutsche Bank.

## I.   Plaintiffs State Secondary Liability (Aiding/Abetting) Claims

Plaintiffs' Complaint alleges Deutsche Bank's substantial assistance to al-Qaeda, the Taliban, and their Syndicate allies from 9/11 through 2016, during which time Deutsche Bank was one of the world's worst enablers of Syndicate terrorism. Compl. ¶¶ 483–505. Plaintiffs suffered the foreseeable consequences of the Deutsche Bank's acts and accordingly, seek relief.

Plaintiffs plausibly allege that from 9/11 through 2016, Deutsche Bank was not a responsible global financial institution and was, in fact, a criminal enterprise that knowingly financed terrorists. *See*, *e.g.*, *id.* ¶¶ 496, 501. The Complaint alleges, with detail and precision, how Deutsche Bank's employees and agents worked directly with notorious al-Qaeda and Taliban, including Haqqani Network, financiers to help the Syndicate raise, protect, move, and deploy money in its terrorist campaign against Americans in Afghanistan. Compl. § IV.A.

---

[1] Plaintiffs and all defendants who have been served or agreed to waive service have met and conferred regarding timing for their motions to dismiss and previously agreed on a proposed briefing schedule whereby Defendants will file their motions to dismiss by December 15, Plaintiffs' oppositions would be due February 16, 2022, and Defendants' replies would be due March 16, 2022. Plaintiffs this week reached out to these Defendants and proposed that the proposed briefing schedule be modified so that opening briefs would be filed January 21, 2022, oppositions would be filed March 18, 2022, and replies would be filed April 15, 2022, and Defendants informed Plaintiffs that Defendants do not oppose that modified schedule. While Plaintiffs do not believe the Court should grant leave to file the motions to dismiss, should the Court decide otherwise, Plaintiffs may amend their Complaint upon review of the motions.

Three examples prove the point.  First, Altaf Khanani was the world's most notorious terrorist financier, *Id.* § III.A, with a decades-long reputation for aiding al-Qaeda and the Taliban.  *Id.* § V.F.  Plaintiffs plausibly allege that Deutsche Bank knowingly helped Khanani move at least $50 million on behalf of the Syndicate from 2009 through 2016.  *Id.* § IV.A.1.  Second, Samir Azizi engaged in transactions, *id.* § III.B, that mirrored a known al-Qaeda/Taliban fundraising strategy to raise money to fund attacks through Value Added Tax ("VAT") fraud schemes.  *Id.* § V.B.  Plaintiffs plausibly allege that the VAT fraud scheme was obvious and known to Deutsche Bank, and that Deutsche Bank knowingly helped Azizi grow his enterprise and repatriate millions back to Syndicate terrorists.  *Id.* § IV.A.2.  Third, the Syndicate used the Russian Mafia as financial agents and as joint venture partners.  *Id.* § II.B.2.  Plaintiffs plausibly allege that when the Russian Mafia needed to launder the terrorists' opium money, Deutsche Bank knowingly and intentionally helped them set up a bespoke operation that internal Deutsche Bank personnel called its "Russian Laundromat."  *Id.* § IV.A.1.  Each time Deutsche Bank aided al-Qaeda and its allies, the Bank was generally aware that its transactions foreseeably aided terrorist violence against Americans in Afghanistan.  *Id.* § V (general awareness common to all industry participants), *id.* § VI.A (general awareness based upon additional factors specific to Deutsche Bank).

Through its decades-long terrorist finance scheme, Plaintiffs allege with precision how Deutsche Bank was directly responsible for and caused tens of millions of U.S. Dollars to flow to Syndicate terrorists targeting Americans in Afghanistan from 9/11 through 2016.  *Id.* § IV.A.  And Plaintiffs plausibly allege that Deutsche Bank did this through its relationships with counterparties that were notorious Syndicate financiers and agents.  *Id.*

Plaintiffs' allegations easily state a claim for secondary (aiding/abetting) liability under the ATA, pursuant to established precedent.  *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 861-63 (2d Cir. 2021); *Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, 154-57 (E.D.N.Y. 2020); *Bartlett v. Société Générale de Banque Au Liban SAL*, 2020 WL 7089448, at *12-16 (E.D.N.Y. 2020); *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 47-48 (E.D.N.Y. 2019).

## II. Deutsche Bank's Arguments Are Unavailing

At the pleading stage, Plaintiffs' allegations are presumed true, and all reasonable inferences must be made in Plaintiffs' favor.  The Deutsche Bank Letter mischaracterizes, recasts, and/or ignores Plaintiffs' well-pleaded allegations and reasonable inferences therefrom.  For example, Deutsche Bank ignores detailed allegations concerning its specific relationships with customers who were known to have al-Qaeda, Taliban, and/or Haqqani Network ties.  Those customers include Altaf Khanani (Compl. § IV.A.1), Samir Azizi (*id.* § IV.A.2), Imran Yakub Ahmed (*id.* § IV.A.3), and Mamoun Darkanzali (*id.* § IV.A.4).  Plaintiffs have plausibly alleged Deutsche Bank's liability such that they should be allowed to learn more, through discovery.

Defendants' assertion that Plaintiffs fail to adequately plead "general awareness" is unavailing.  The Complaint alleges, in detail, that each Deutsche Bank Defendant was generally aware of the terrorist linkages between Deutsche Bank's customers and al-Qaeda, the Taliban (including its Haqqani Network), and their allies.  Under the recently decided *Kaplan* decision, as well as the other cases cited above, Plaintiffs more than sufficiently allege Deutsche Bank's general awareness

SPARACINO PLLC

based on Deutsche Bank's direct participation in transactions that raised or should have raised terrorist red flags due to customer identities.

Defendants' assertion that Plaintiffs fail to adequately plead knowing "substantial assistance" falls short and does not comport with either the ATA or binding precedent interpreting it. Under the ATA's secondary liability provision, "[i]n an action … for an injury arising from an act of international terrorism committed, planned, or authorized by an … foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). Defendants' arguments cannot be reconciled with *Kaplan* or any of the above cases.

Deutsche Bank's assertion that the Court lacks personal jurisdiction over DB AG is unavailing because the transactions at issue depended upon DB AG's use of DBTCA, in New York, as a Laundromat for DB AG's various terrorist finance schemes, *e.g.*, the VAT fraud schemes that DB AG executed on behalf of Azizi and Ahmed. Compl. § VIII.A.

Deutsche Bank's attempt to require that Plaintiffs directly link Defendants to an FTO misses the mark under the plain text of the statute, which merely requires that the substantial assistance flow to the "person" who committed the act of international terrorism. 18 U.S.C. § 2333(d)(2). It is only the "act of international terrorism" that must have been "committed, planned, or authorized" by an FTO, *id.*, and Plaintiffs' plausible, precise, and specific allegations easily clear this hurdle. *See* Compl. § I.A (al-Qaeda organized and led Syndicate alongside Taliban), *id.* § I.B (al-Qaeda planned and authorized all attacks); *id.* § I.C (al-Qaeda jointly committed many attacks).

Lastly, Plaintiffs' Complaint complies with FRCP Rule 8. Plaintiffs have alleged that Deutsche Bank's behavior lasted for decades, was wide ranging in scope, caused, at least, tens of millions of dollars to flow to the Syndicate through at least four key financiers, and caused harm to or killed hundreds if not thousands of Americans. These terrorist finance activities, Plaintiffs allege, were perpetrated by a complex global financial institution. The Complaint comprehensively catalogues Deutsche Bank's relevant conduct, and the resulting length of the document merely reflects the unprecedented and factually complicated nature of what Deutsche Bank did.

Sincerely,

*/s/ Ryan R. Sparacino*

Ryan R. Sparacino (admitted *pro hac vice*)
Sparacino PLLC
1920 L Street, N.W., Suite 535
Washington, DC 20036
Ryan.sparacino@sparacinopllc.com

CC: Counsel of Record (via ECF)