

1920 L Street, N.W., Suite 535
Washington, D.C. 20036

150 South Wacker Drive, Suite 2400
Chicago, IL 60606

November 19, 2021

**Via ECF**
The Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Wildman, et al. v. Deutsche Bank AG, et al.*, No. 1:21-cv-4400

Dear Judge Matsumoto,

We represent the Plaintiffs in the above-captioned matter. We write to respond to the letter Standard Chartered Bank ("SCB"), Standard Chartered PLC, ("SC PLC"), and Standard Chartered Bank (Pakistan) Limited ("SCB Pakistan" and, collectively with SCB and SC PLC, "Standard Chartered Bank" or the "SCB Defendants") filed on October 29, 2021, requesting a conference prior to filing a motion to dismiss (the "SCB Letter") (D.I. 29).[1]

Plaintiffs are 487 Americans who were injured, or whose loved ones were killed or injured, in attacks committed by a terrorist syndicate led by al-Qaeda and the Taliban, including its Haqqani Network (the "Syndicate") that targeted Americans in Afghanistan from 2011 through 2016. Plaintiffs were injured and killed by terrorists who received direct and indirect support from Standard Chartered Bank.

### I.     Plaintiffs State Secondary Liability (Aiding/Abetting) Claims

Plaintiffs' Complaint alleges that Standard Chartered Bank provided substantial assistance to al-Qaeda, the Taliban, and their Syndicate allies from 9/11 through 2016, and during that time Standard Chartered Bank was one of the world's worst enablers of Syndicate terrorism. Compl. § IV.B (SCB aided Syndicate terrorist finance), *id.* § IV.C (SCB aided Syndicate terrorist fertilizer bomb logistics). Plaintiffs suffered the foreseeable consequences of the Standard Chartered Bank's acts and accordingly seek relief.

Plaintiffs plausibly allege that from 9/11 through 2016, Standard Chartered Bank was not a responsible global financial institution and was, in fact, a "rogue" bank that knowingly financed terrorists. *Id.* ¶¶ 664–65. The Complaint alleges, with detail and precision, how Standard Chartered Bank's employees and agents worked directly with notorious al-Qaeda and Taliban,

---

[1] As discussed in Plaintiffs' response to Deutsche Bank's pre-motion letter, D.I. 31, Plaintiffs proposed to all defendants who have been served or agreed to waive service that should there be briefing, opening briefs would be filed January 21, 2022, oppositions would be filed March 18, 2022, and replies would be filed April 15, 2022, and Defendants do not oppose that schedule. While Plaintiffs do not believe the Court should grant leave to file the motions to dismiss, should the Court decide otherwise, Plaintiffs may amend their Complaint upon review of the motions.

including Haqqani Network, financiers to help the Syndicate raise, protect, move, and deploy money in its terrorist campaign against Americans in Afghanistan. *Id.* § IV.B.

Two examples prove Standard Chartered Bank's key role in the Syndicate's terrorist finance schemes, as Plaintiffs allege. First, Altaf Khanani was the world's most notorious terrorist financier, *id.* § III.A, with a decades-long reputation for aiding al-Qaeda and the Taliban. *Id.* § V.F. Plaintiffs plausibly allege that Standard Chartered Bank knowingly helped Khanani move millions in U.S. Dollars from New York to the Syndicate from 2009 through 2016. *Id.* § V.B.1. Second, the SCB Defendants helped fund and finance nearly half a dozen other key Syndicate terrorist agents and operatives from 9/11 through 2016, including but not limited to Mustafa Ahmed al-Hisawi, who was al-Qaeda's "money man," *id.* § IV.B.2, Viktor Bout, al-Qaeda's key weapons and smuggling agent, *id.* § IV.B.3, Abdul Baqi Bari, a key financier for the Haqqani Network, *id.* § IV.B.3, and Hikmatullah Shadman, a warlord known for funding the Taliban, including its Haqqani Network, *id.* § IV.B.4. Each time the SCB Defendants aided al-Qaeda and its allies, Standard Chartered Bank was generally aware that its transactions foreseeably aided terrorist violence against Americans in Afghanistan. *Id.* § V (general awareness common to all industry participants), *id.* § VI.B (general awareness based upon additional factors specific to Standard Chartered Bank).

Plaintiffs allege with precision how, through its decades-long terrorist finance scheme, Standard Chartered Bank was directly responsible for and caused tens of millions of U.S. Dollars to flow to Syndicate terrorists targeting Americans in Afghanistan from 9/11 through 2016. *Id.* § IV.B. And Plaintiffs plausibly allege that Standard Chartered Bank did this through its relationships with counterparties that were notorious Syndicate financiers and agents. *Id.*

Plaintiffs' allegations easily state a claim for secondary (aiding/abetting) liability under the ATA, pursuant to established precedent. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 861-63 (2d Cir. 2021); *Estate of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, 154-57 (E.D.N.Y. 2020); *Bartlett v. Société Générale de Banque Au Liban SAL*, 2020 WL 7089448, at *12-16 (E.D.N.Y. 2020); *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 47-48 (E.D.N.Y. 2019).

Plaintiffs' allegations against the SCB Defendants also go beyond terrorist finance and includes direct operational support. Among other things, Standard Chartered Bank aided the Haqqani Network, after it was designated as an FTO in 2012, maintain its fertilizer bomb logistics pipeline even after having been specifically warned by the U.S. government about how the Bank's services were helping the Syndicate kill Americans in Afghanistan. Compl. § IV.B (syndicate finance); § IV.C (syndicate bomb logistics). These specific and plausible allegations independently state Plaintiffs' aiding/abetting claim under the ATA. *See*, *e.g.*, *Kaplan*, 999 F.3d at 861–63.

## II. Standard Chartered Bank's Arguments Are Unavailing

Standard Chartered Bank's assertion that Plaintiffs fail to adequately plead "general awareness" is unavailing. The Complaint alleges, in detail, that each SCB Defendant was generally aware of the links between their customers and al-Qaeda, the Taliban (including its Haqqani Network), and their allies. Under the recently decided *Kaplan* decision, as well as the other cases cited above, Plaintiffs more than sufficiently allege Standard Chartered Bank's general awareness based on

Standard Chartered Bank's direct participation in transactions that raised or should have raised terrorist red flags due to customer identities.

Standard Chartered Bank's argument that Plaintiffs fail to adequately plead knowing "substantial assistance" falls short, and does not comport with either the ATA or binding precedent interpreting it.  Under the ATA's secondary liability provision, "[i]n an action … for an injury arising from an act of international terrorism committed, planned, or authorized by an … foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.".  18 U.S.C. § 2333(d)(2).  Defendants' arguments cannot be reconciled with, among other binding precedent, *Kaplan*.

Standard Chartered Bank's assertion that the Court lacks personal jurisdiction over SC PLC and SCB Pakistan is also unavailing because, among other things, the transactions at issue depended upon the SCB Defendants' use of SCB's New York branch as a Laundromat for SCB Pakistan's various terrorist customers, *e.g.*, Altaf Khanani and Fatima Fertilizer.  Compl. § VIII.B.

Standard Chartered Bank's assertion that Plaintiffs fail to allege FTO involvement for certain attacks fails because the plain text of the ATA requires only that the substantial assistance flow to the "person" who committed the act of international terrorism.  18 U.S.C. § 2333(d)(2).  It is only the "act of international terrorism" that must have been "committed, planned, or authorized" by an FTO, *id.*, and Plaintiffs' allegations easily clear this hurdle, as Standard Chartered Bank's assistance flowed to persons who committed terrorist acts, and each of those terrorist acts was "committed, planned, or authorized" by FTOs.  Compl. § I.A (al-Qaeda organized and led Syndicate alongside Taliban), *id*. § I.B (al-Qaeda planned and authorized all attacks); *id*. § I.C (al-Qaeda jointly committed many attacks).  To be clear, Plaintiffs allege FTO involvement for every attack because Plaintiffs allege that every attack was committed, planned, or authorized by al-Qaeda.  *Id.*

Sincerely,

*/s/ Ryan R. Sparacino*


Ryan R. Sparacino (admitted *pro hac vice*)
Sparacino PLLC
1920 L Street, N.W., Suite 535
Washington, DC  20036
Ryan.sparacino@sparacinopllc.com


CC:   Counsel of Record (via ECF)