**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

AUGUST WILDMAN, et al.,

                Plaintiffs,

      v.

DEUTSCHE BANK AKTIENGESELLSCHAFT,
DEUTSCHE BANK TRUST COMPANY
AMERICAS, STANDARD CHARTERED BANK,
STANDARD CHARTERED PLC, STANDARD
CHARTERED BANK LIMITED, STANDARD
CHARTERED BANK (PAKISTAN) LIMITED,
DANSKE BANK A/S, DANSKE MARKETS INC.,
PLACID NK CORPORATION d/b/a PLACID
EXPRESS, and WALL STREET EXCHANGE LLC,

                Defendants.

**21 Civ. 4400 (KAM) (RML)**

**MEMORANDUM OF LAW IN SUPPORT OF DEUTSCHE BANK AG AND DEUTSCHE BANK TRUST COMPANY AMERICAS' MOTION TO DISMISS PLAINTIFFS' CORRECTED AMENDED COMPLAINT**

David G. Januszewski
Sheila C. Ramesh
Sesi V. Garimella
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
(212) 701-3000
djanuszewski@cahill.com
sramesh@cahill.com
sgarimella@cahill.com

*Attorneys for Defendants Deutsche Bank*
*Aktiengesellschaft and Deutsche Bank Trust*
*Company Americas*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................ 4

    A.   Parties.......................................................................................................... 4

    B.   The Syndicate Operations ........................................................................ 6

    C.   Allegations Regarding Altaf Khanani and the Khanani Money Laundering Organization............................................................................. 7

    D.   Allegations Regarding the VAT Fraud Scheme as to the Ahmed and the Azizi Cells... 8

    E.   Allegations Regarding the Hamburg Cell ............................................ 10

    F.   Allegations Regarding the Iranian Terrorist Sponsors ....................... 10

LEGAL STANDARDS ....................................................................................... 10

ARGUMENT ..................................................................................................... 11

  I.    PLAINTIFFS' AMENDED COMPLAINT VIOLATES RULE 8.................................... 11

  II.   PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO SECTION 2333(D) ........ 14

    A.   Statutory Framework ............................................................................ 15

    B.   Plaintiffs' Allegations Do Not Adequately Plead that the Deutsche Bank Defendants Directly or Indirectly Aided Syndicate Terrorism ......................................... 16

    C.   Plaintiffs' Allegations Do Not Give Rise to an Inference That the Deutsche Bank Defendants Were Generally Aware They Were Playing a Role in Acts of International Terrorism ...................................................................... 17

       i.  Khanani and the Khanani MLO .................................................. 19

       ii.  Ahmed Cell and Iranian Terrorist Sponsors ............................. 20

       iii. Hamburg Cell .............................................................................. 21

       iv. Azizi Cell ..................................................................................... 22

    D.   Plaintiffs Fail to Adequately Allege that the Deutsche Bank Defendants Knowingly Provided Substantial Assistance to Anyone Who Carried Out the Attacks ................ 23

CONCLUSION...................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)....................................................................... 4n, 10-11

*Ashmore* v. *Prus*,
510 F. App'x 47 (2d Cir. 2013) ................................................................14

*Atuahene* v. *City of Hartford*,
10 Fed. App'x. 33 (2d Cir. 2001)..............................................................13

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007) ................................................................................11

*Berdeaux* v. *OneCoin*,
2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021).........................................14

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014)................................................................................13

*Faber* v. *Metropolitan Life Insurance Co.*,
648 F.3d 98 (2d Cir. 2011)......................................................................21

*Freeman* v. *HSBC Holdings PLC*,
2021 WL 76925 (E.D.N.Y. Jan. 7, 2021) ...............................................18

*Giachetto* v. *Patchogue-Medford Union Free School District*,
413 F. Supp. 3d 141 (E.D.N.Y. 2016) .....................................................20

*Grimes* v. *Fremont General Corp.*,
933 F. Supp. 2d 584 (S.D.N.Y. 2013)......................................................11

*Halberstam* v. *Welch*,
705 F.2d 472 (D.C. Cir. 1983) ..................................................15-16, 22-23

*Honickman* v. *BLOM Bank SAL*,
6 F.4th 487 (2d Cir. 2021) .............................................................. *passim*

*Infanti* v. *Scharpf*,
2008 WL 2397607 (E.D.N.Y. June 10, 2008) .........................................11

*Jeffrey M. Dressel, D.D.S., P.C.* v. *Hartford Insurance Co. of the Midwest, Inc.*,
2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021).........................................4n

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021)...................................................................17, 17n

*Linde* v. *Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018)...................................................15, 17, 17n, 23

*N.J. Carpenters Health Fund* v. *Royal Bank of Scotland Group, PLC*,
    709 F.3d 109 (2d Cir. 2013)...................................................................11

*O'Sullivan* v. *Deutsche Bank AG*,
    2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ........................................15

*O'Sullivan* v. *Deutsche Bank AG*,
    2020 WL 906153 (S.D.N.Y. Feb. 25, 2020)...........................................17

*Ochre LLC* v. *Rockwell Architecture Planning & Design, P.C.*,
    2012 WL 6082387 (S.D.N.Y. 2012)......................................................13

*Salahuddin* v. *Cuomo*,
    861 F.2d 40 (2d Cir. 1988)...................................................................11

*Siegel* v. *HSBC Bank USA, N.A.*,
    2018 WL 3611967 (S.D.N.Y. 2018)......................................................14

*Siegel* v. *HSBC North American Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019)...............................................................3, 24

*Simmons* v. *Abruzzo*,
    49 F.3d 83 (2d Cir. 1995)...................................................................13

*Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers
    Retirement Plan* v. *Morgan Stanley Investment Management Inc.*,
    712 F.3d 705 (2d Cir. 2013)...............................................................11

*Weiss* v. *National Westminster Bank PLC*,
    381 F. Supp. 3d 223 (E.D.N.Y. 2019) ..............................................21-22

*Weiss* v. *National Westminster Bank, PLC*,
    993 F.3d 144 (2d Cir. 2021)...............................................................16

*In re Zinc Antitrust Litigation*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016)...................................................14

**Statutes**

8 U.S.C. §§ 1189(a)(1), (d)(4) ...............................................................15n

18 U.S.C.
§ 2333 ............................................................................................................1, 16
§ 2331(1) ........................................................................................................16n
§ 2333(d) .............................................................................4, 4n, 14, 15, 16n, 23

Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, §
4(a), 130 Stat. 854 (2016) ..............................................................................*passim*

## Other Authorities

DEUTSCHE BANK, *Deutsche Bank announces details of Strategy 2020* (Oct. 29,
2015), https://www.db.com/news/detail/20151029-deutsche-bank-announces-
details-of-strategy-2020?language_id=1 ................................................................6n

U.S. DEPART. STATE, https://www.state.gov/foreign-terrorist-organizations (last
visited Mar. 17, 2022) ..........................................................................................5n

Deutsche Bank Aktiengesellschaft ("Deutsche Bank AG") and Deutsche Bank Trust Company Americas ("DBTCA" together with Deutsche Bank AG, the "Deutsche Bank Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Corrected Amended Complaint (Dkt. No. 38) (the "Amended Complaint" or "AC")[1] pursuant to Federal Rules of Civil Procedure 8, 12(b)(2), and 12(b)(6).

## PRELIMINARY STATEMENT

The terror attacks described in Plaintiffs' Amended Complaint are abhorrent.  While the Deutsche Bank Defendants unequivocally condemn those heinous acts, they are not, in any way, responsible for them.  Ignoring this, the Amended Complaint seeks to stretch the civil provision of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, far beyond its logical bounds in an attempt to obtain monetary damages from the Deutsche Bank Defendants for terrorist attacks in which they played no role.  In contorting the ATA's terms, the Amended Complaint weaves together broad and conclusory allegations with hundreds of pages of extraneous details in an effort to portray a complex web of international financial transactions that supposedly link the Deutsche Bank Defendants to attacks committed in different regions, at different times, and by different players.  That alleged chain of transactions, however, suffers from gaping holes, which Plaintiffs seek to plug with vague or conclusory allegations that are insufficient to state a claim.

As an initial matter, the Amended Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 8.  During the December 7, 2021 pre-motion conference, this Court suggested that, on its face, Plaintiffs' 590-page Complaint ran afoul of

---

[1]     The Amended Complaint appears to erroneously use duplicative paragraph numbers in separate sections.  In order to avoid any confusion about which paragraph the Deutsche Bank Defendants are referring to, citations to duplicative paragraph numbers are formatted to contain both a paragraph and page number (*e.g.*, AC ¶ xx (p. yy)).

Rule 8.  The Court went on to suggest that Plaintiffs use their amendment as an opportunity to correct that deficiency, including by streamlining their allegations, dropping defendants against whom the Complaint failed to allege substantive wrongdoing, and addressing pleading failures that the Defendants identified in their pre-motion letters.  *See* March 18, 2022 Declaration of Sheila C. Ramesh ("Ramesh Decl."), Ex. 1 (Dec. 7, 2022 Hearing Transcript at 15:18-16:19).  Plaintiffs' Amended Complaint addressed none of those concerns.  Instead, Plaintiffs shuffled around the same flawed allegations and *added* five pages to their almost 600-page complaint.  Courts in this Circuit have not hesitated to dismiss less prolix complaints for violating Rule 8.  Dismissal is particularly appropriate here given the Court's prior caution to Plaintiffs.

Even if this Court chooses to engage in the laborious exercise of analyzing the Amended Complaint, there are several additional and independent bases for dismissal.  Despite devoting hundreds of pages to describing the inner workings of various alleged terrorist group members and operatives, the Amended Complaint's allegations as to the Deutsche Bank Defendants are vague, conclusory, and reliant on impermissible group pleading.  Not only do Plaintiffs repeatedly allege facts against multiple Deutsche Bank entities in the alternative, but they also use conclusory allegations of agency and control in a baseless attempt to blur the lines between separate entities' operations.

Plaintiffs' claims fare no better on the merits.  Plaintiffs have no basis to allege that any of the Deutsche Bank Defendants' customers were so closely intertwined with the alleged violent terrorist activities that the Deutsche Bank Defendants were "generally aware" that they were providing banking services to entities playing any role in unlawful activities from which the attacks were foreseeable.  *See Honickman* v. *BLOM Bank SAL*, 6 F.4th 487, 499 (2d Cir. 2021).  Plaintiffs try to bridge this gap with allegations benefitting from hindsight and other

2

unsubstantiated reports that Deutsche Bank customers were linked to terrorist operatives.  But their failure to identify each of those specific customers, the precise link between those customers and the terrorist organization, and the basis for inferring that those links would have been clear to Deutsche Bank at the relevant time is striking given the Amended Complaint's superfluous detail in other areas.

Plaintiffs similarly fail to show that the Deutsche Bank Defendants knowingly provided the requisite substantial assistance to anyone who carried out the relevant attacks.  Here, Plaintiffs offer little more than threadbare allegations that money moving through Deutsche Bank customer accounts supposedly made its way to terrorist organizations.  Plaintiffs do not allege that the Deutsche Bank Defendants were aware of or encouraged any attack, nor have they "advance[d] any non-conclusory allegation that" the referenced terrorists "received any of those funds" from accounts at Deutsche Bank or that the bank "knew or intended that" the terrorists "would receive the funds."  *See Siegel* v. *HSBC North American Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019).  Plaintiffs also fail to allege any direct connection between the Deutsche Bank Defendants and any terrorist organization.  Nor do they offer any non-conclusory allegation that Deutsche Bank "knowingly assumed a role in . . . terrorist activities or otherwise knowingly or intentionally supported" the referenced criminal organizations.  *Id.*  What remains is nothing more than a chain of unsubstantiated inferences that is insufficient to establish secondary liability here.

The Amended Complaint should be dismissed.

## FACTUAL BACKGROUND[2]

### A. Parties

Plaintiffs are American military members and civilians who were killed or wounded in Afghanistan between 2011 and 2016, as well as their families. AC ¶ 1. Despite its excessive length, the Amended Complaint is unclear about whether any designated Foreign Terrorist Organization ("FTO") authorized, planned, or committed those attacks. For example, at one point, Plaintiffs allege that al-Qaeda and its affiliates were solely responsible for authorizing, planning, and committing the attacks. AC ¶¶ 89, 95(i), 1098. Elsewhere Plaintiffs claim that "[e]ach of the acts of international terrorism described below was committed by the Taliban, including its Haqqani Network, or jointly committed by the Taliban and al-Qaeda." AC ¶ 1098.

Plaintiffs assert two claims against all Defendants for aiding and abetting acts of international terrorism committed by the "Syndicate," pursuant to the Anti-Terrorism Act of 1992, 18 U.S.C. § 2333(d), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, § 4(a), 130 Stat. 854 (2016) ("JASTA").[3] While the Complaint initially defines the "Syndicate" as "[collectively] a terrorist syndicate led by al-Qaeda and the Haqqani Network, the most extreme faction of the Taliban," (AC ¶ 1), Plaintiffs' invocation of it and references to it

---

[2]     The facts alleged by Plaintiffs are taken as true for purposes of this motion only. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Jeffrey M. Dressel, D.D.S., P.C.* v. *Hartford Insurance Co. of the Midwest, Inc.*, 2021 WL 1091711, at *2 (E.D.N.Y. Mar. 22, 2021) (Matsumoto, J.).

[3]     Plaintiffs bring both claims under 18 U.S.C. § 2333(d) and caption Count I as being based on an "attack predicate" while Count II is based on a "RICO predicate." It is not clear what the basis of Plaintiffs' "RICO predicate" claim is given that the Amended Complaint does not allege a RICO claim and the ATA does not provide for violations of the RICO statute to serve as a predicate clam under the ATA. Regardless, Plaintiffs' failure to adequately plead the elements of an aiding and abetting claim under the ATA renders irrelevant the issue of what labels they apply to the alleged predicate acts of terrorism.

are inconsistent throughout the Amended Complaint.  *Compare id.*, *with* AC ¶ 89 (using the term

"Syndicate" to refer to an al-Qaeda-led joint venture of terrorists, consisting of the Taliban,

Lashkar-e-Taiba, Jaish-e-Mohammad, and D-Company). [4]

     Plaintiffs originally brought claims against Deutsche Bank AG, "Deutsche Bank UK,"

"Deutsche Bank AG, Dubai Branch," "Deutsche Bank AG, New York Branch," and Deutsche

Bank Trust Company Americas ("DBTCA").  Despite a number of public documents that

describe the relationship among Deutsche Bank affiliates and subsidiaries, as well as pre-

amendment discussions with counsel for the Deutsche Bank Defendants, the Amended

Complaint's references to Deutsche Bank entities, including the simple question of which

entities are defendants in this action, are hopelessly confused.

     First, because Deutsche Bank AG's branches are not separate and distinct legal entities

from Deutsche Bank AG, Plaintiffs voluntarily dismissed claims against "Deutsche Bank UK",

"Deutsche Bank AG, Dubai Branch", and "Deutsche Bank AG, New York Branch" on October

10, 2021.  (Dkt. No. 10.)  The Amended Complaint nonetheless continues to refer to those

entities as defendants.  *See, e.g.*, AC ¶¶ 21-22, 25-26.

     Second, Plaintiffs conflate Deutsche Bank AG and Deutsche Bank Securities Inc.

("DBSI").  AC ¶ 22.  DBSI is a wholly-owned subsidiary of Deutsche Bank AG.  DBSI is not

listed as a defendant in the caption of either the Complaint or the Amended Complaint.  Plaintiffs

have never attempted to serve a summons or complaint on DBSI, and DBSI has not appeared in

---

[4]     Nowhere do Plaintiffs specify those groups' alleged involvement in each attack.
Moreover, only al-Qaeda, Lashkar-e-Taiba, and Jaish-E-Mohammed were designated FTOs at
the time of the attacks.  AC ¶ 89.  The Taliban and D-Company have never been designed as
FTOs by the United States government, and the Haqqani Network was not designated as an FTO
until September 2012.  *Foreign Terrorist Organizations*, U.S. DEPART. STATE,
https://www.state.gov/foreign-terrorist-organizations (last visited Mar. 17, 2022).

this action.  The Amended Complaint nonetheless repeatedly refers to DBSI as a defendant and wrongly claims that DBSI functions as Deutsche Bank AG's New York Branch.  AC ¶ 22.

Third, in 2015, Deutsche Bank AG announced its "Strategy 2020" to implement long-term performance improvements, which included "leverag[ing] the partnership between [Deutsche Bank's] Private & Business Clients business division and Wealth Management business."[5]  Without any justification, Plaintiffs attempt to use this "One Bank" strategy as the basis to conflate the conduct of DBSI with Deutsche Bank AG during the period from 2011 to 2016.  *See* AC ¶¶ 1, 30-39.  Similarly, Plaintiffs allege that DBTCA and DBSI, both wholly-owned subsidiaries of Deutsche Bank AG, somehow controlled or directed the conduct of their *corporate parent's* branches in Moscow, London, Dubai, and elsewhere.  *See, e.g.*, AC ¶ 39 (alleging that Deutsche Bank AG, including its branches and other subsidiaries "**acted under some degree** of control of Deutsche Bank Securities, Inc. and DBTCA each of whom regularly exercised a certain amount of control Deutsche Bank, DB London, DB Dubai, and DB Moscow including such DB Defendants' branches and affiliates in Germany, the U.K., and the U.A.E.") (emphasis in original).

## B.  The Syndicate Operations

Given the Amended Complaint's length, Plaintiffs' theory of wrongdoing is difficult to parse.  Plaintiffs appear to allege that the Deutsche Bank Defendants aided and abetted acts of international terrorism by providing financial services to individuals or entities with nebulous ties to the Syndicate:  (1) Altaf Khanani and the Khanani Money Laundering Organization ("MLO"); (2) Samir Azizi and the Azizi Cell; (3) Imran Yakub Ahmed and the Ahmed Cell; (4)

---

[5]     DEUTSCHE BANK, *Deutsche Bank announces details of Strategy 2020* (Oct. 29, 2015), https://www.db.com/news/detail/20151029-deutsche-bank-announces-details-of-strategy-2020?language_id=1.

Mamoun Darkazanli and Mamdoubh Mahmud Salim (together, the "Hamburg Cell"); and (5) Iranian Terrorist Sponsors.  AC ¶¶ 179-80, 432-34.  Most of Plaintiffs' attempts to connect the Deutsche Bank Defendants to these individuals or entities is based on rank speculation or otherwise conclusory allegations.[6]

### C.  Allegations Regarding Altaf Khanani and the Khanani Money Laundering Organization

Plaintiffs devote a large portion of their Amended Complaint to describing Altaf Khanani, his Money Laundering Organization ("MLO"), and their ties to Syndicate terrorism. Specifically, Plaintiffs allege that "*[t]hrough a web of companies spanning the globe*, Khanani received, moved, concealed, and repatriated Syndicate funds to and from Afghanistan" and that "[i]t is a matter of public record that Defendants did business with Khanani's organization, helping the Syndicate acquire *at least* tens of millions of dollars during the relevant time period." AC ¶ 7 (emphasis added).  Plaintiffs generally allege that Deutsche Bank AG's branches operated or facilitated money-laundering operations ("laundromats") connected to Syndicate members.  *See, e.g.*, AC ¶ 354 (p. 180), ¶ 404 (p. 196).  But the exact nature of that alleged misconduct remains unclear.

For example, Plaintiffs allege that Deutsche Bank AG operated a "Russian Laundromat" between 2000 and 2016.  AC ¶ 354 (p. 180).  While the Amended Complaint describes the

---

[6]     For example, in the 33 pages that the Amended Complaint devotes to describing Deutsche Bank's alleged assistance to the Syndicate, at least 22 allegations are "on information and belief."  *See, e.g.*, AC ¶ 406 (p. 197) ("On information and belief, Khanani used Deutsche Bank to conduct the trades necessary for the Khanani MLO to collectively repatriate at least $100,000 per month to the Syndicate throughout the duration of the Moldovan Laundromat from 2008 through 2016"); ¶ 431 ("On information and belief, the U.S. government also concluded that Deutsche Bank knowingly aided the transactions with Ahmed and the Ahmed Cell that enabled the Syndicate's VAT Finance Scheme."); ¶ 432 ("On information and belief, Deutsche Bank, DB Dubai, DB London, and DBTCA, regularly facilitated NIOC and NITC transactions in the same manner as the [Standard Chartered Bank] Defendants . . . .").

Russian Laundromat as being "custom built" for Khanani and the Russian Mafia to convert al-Qaeda's and the Taliban's Rubles from Russian opium sales into U.S. currency (AC ¶ 356 (p. 181)), Plaintiffs concede in a footnote to the same paragraph that they *believe* that, through discovery, they will be able establish Khanani's connection to the so-called Russian Laundromat. AC ¶ 356 n.283 (p. 181).  At this time, however, they offer no plausible allegation connecting Khanani to the supposed Russian Laundromat, only unfounded legal conclusions.

Next, Plaintiffs allege that Deutsche Bank used a Frankfurt-based "laundromat" to raise funds for the Syndicate in some unspecified manner.  AC ¶ 359 (p. 182).

Finally, Plaintiffs allege that unidentified "al-Qaeda and Haqqani Network operatives work[ed] hand-in-hand with" unidentified "Deutsche Bank personnel to defraud European governments" in unspecified ways.  *See, e.g.*, AC ¶ 360 (pp. 182-83).[7]

**D. Allegations Regarding the VAT Fraud Scheme as to the Ahmed and the Azizi Cells**

Plaintiffs' next set of allegations relate to VAT (value-added-tax) fraud schemes, through which al-Qaeda and the Taliban were alleged to have raised funds by seeking to fraudulently obtain VAT refunds.  *See* AC ¶ 280 (p. 155).  In most places, Plaintiffs offer only conclusory allegations that the Deutsche Bank Defendants "intentionally aided the Azizi and Ahmed Cells' terrorist financing VAT fraud schemes."  AC ¶ 409 (p. 197).

1. The Ahmed Cell Allegations

The Amended Complaint's sole allegation seeking to connect the Deutsche Bank Defendants with Imran Yakub Ahmed and the Ahmed Cell is that:  "On information and belief, the U.S. government . . . concluded that Deutsche Bank knowingly aided the transactions with

---

[7]     The Amended Complaint also describes these "laundromats" as having provided "end-to-end terrorist finance services to the Syndicate" without any further detail on what conduct that allegation is meant to encompass.  AC ¶ 353 (p. 180); ¶ 355 (p. 181); ¶ 360 (p. 182-83).

Ahmed and the Ahmed Cell that enabled the Syndicate's VAT Finance Scheme."  AC ¶ 431.

This single sentence is insufficient to plausibly allege the Deutsche Bank Defendants are subject

to secondary liability pursuant to JASTA as Plaintiffs offer no indication of general awareness or

substantial assistance by the Deutsche Bank Defendants.  Rather, the Complaint exclusively

relies on an unidentified and unsubstantiated government finding amounting to a conclusory

allegation in the place of sufficient pleading.

2.   The Azizi Cell Allegations

Plaintiffs next allege that the Deutsche Bank Defendants "deliberately" aided the flow of

VAT fraud funds to the Azizi Cell, "likely supplying al-Qaeda and the Taliban" with U.S.

currency between 2009 and 2015.  AC ¶¶ 410, 791-96.  Specifically, the Amended Complaint

alleges that Deutsche Bank AG would "buy up the certificates from various front companies,

export them, and put them back into the system . . .  [and make] the accounts available to the

fraudulent companies."  AC ¶ 415.  Plaintiffs seek to support this conclusion by reference to the

"Final Azizi Memo," a supposedly "complete, 'final' version of the confidential investigative

summary" prepared by an unidentified Western law enforcement agency "that had direct access

to Samir Azizi himself, and his bank records."  AC ¶¶ 3, 420.

Plaintiffs claim the Final Azizi Memo confirms that the Deutsche Bank Defendants

"facilitated the flow of enormous volumes of untraceable mobile phones sourced by the Azizi

Cell because the Azizi Cell operationalized its VAT fraud scheme by regularly purchasing

mobile phones in the United States and then reexporting them to Afghanistan," (AC ¶ 420), and

that the Deutsche Bank Defendants "facilitated the regular delivery of thousands, if not tens of

thousands, of untraceable American and Chinese cell phones that the Azizi Cell purchased, on

information and belief, in the United States," (AC ¶ 421); *see also* AC ¶¶ 796-809.  Plaintiffs do

not, however, allege any direct purchase or sale of the cell phones by the Deutsche Bank

9

Defendants.  Rather, Plaintiffs attempt to connect the Deutsche Bank Defendants to the scheme through transactions that are at least one step removed from the Azizi Cell's alleged purchase and sale of cell phones to Syndicate members.  *See, e.g.*, AC ¶ 425 (describing Deutsche Bank Defendants' alleged role in the VAT fraud as enabling Syndicate "fundraising" through regular financial trades, such as those related to carbon).

### E.  Allegations Regarding the Hamburg Cell

Plaintiffs allege that the Frankfurt and New York branches of Deutsche Bank AG provided financial services to Mamoun Darkazanli and Mamdoubh Mahmud Salim between 1995 and at least 2001.[8]  AC ¶ 437.  Plaintiffs then suggest that by transacting with these individuals for routine financial transactions the Deutsche Bank Defendants were, by implication, transacting with al-Qaeda.  *Id.*

### F.  Allegations Regarding the Iranian Terrorist Sponsors

Rather than allege any connection between the Deutsche Bank Defendants and alleged Iran Terrorist Sponsors, NIOC and NITC, Plaintiffs merely reference the allegations they assert against the Standard Chartered Bank Defendants.  AC ¶ 432.  Without offering any additional details, the Complaint asserts, "[o]n information and belief," that the Deutsche Bank Defendants and various Deutsche Bank entities "regularly facilitated NIOC and NITC transactions."  AC ¶¶ 432-34.

### LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. 662

---

[8]      Plaintiffs' relevant period in this portion of the Amended Complaint is inconsistent—in some portions, it is between 1995 and at least 2001 (AC ¶ 437), while others cite the relevant period as between 1995 and at least September 2003 (AC ¶ 443).

at 678 (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility

standard requires more than a "sheer possibility."  *Id.*  A plaintiff cannot cross the threshold from

"possible" to "plausible" by pleading only "facts that are 'merely consistent with' a defendant's

liability."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Instead, a plaintiff must plead facts that are

"suggestive of" wrongdoing.  *Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic*

*Medical Centers Retirement Plan* v. *Morgan Stanley Investment Management Inc.,* 712 F.3d 705,

719 (2d Cir. 2013) (quoting *N.J. Carpenters Health Fund* v. *Royal Bank of Scotland Group,*

*PLC*, 709 F.3d 109, 121 (2d Cir. 2013)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).

## ARGUMENT

## I.   PLAINTIFFS' AMENDED COMPLAINT VIOLATES RULE 8

Clocking in at nearly 600 pages and more than 2,000 numbered paragraphs, Plaintiffs'

Amended Complaint runs afoul of Rule 8.  Fed. R. Civ. P. 8(a)(2) (pleadings must contain "a

short and plain statement of the claim").  Rule 8(a)(2) mandates a short and plain statement

because "unnecessary prolixity in a pleading places an unjustified burden on the court and the

party who must respond to it because they are forced to select the relevant material from a mass

verbiage."  *Salahuddin* v. *Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks

omitted); *see also Infanti* v. *Scharpf*, 2008 WL 2397607, at *1-2 (E.D.N.Y. June 10, 2008)

(dismissing a complaint that "span[ned] 90 pages [and] consist[ed] of 500 numbered paragraphs"

for failure to comply with Rule 8); *Grimes* v. *Fremont General Corp.*, 933 F. Supp. 2d 584, 595

(S.D.N.Y. 2013) (dismissing complaint that was "over 300 pages long and contain[ed] over 1000

specifically numbered paragraphs and hundreds of additional un-numbered paragraphs").  Those

meandering and verbose allegations are little more than a transparent attempt to obscure the

Amended Complaint's many pleading deficiencies.  As described in further detail below, the Amended Complaint makes no attempt to connect the Deutsche Bank Defendants to specific attacks alleged to have injured each of the 487 individual plaintiffs.  Nor do Plaintiffs connect the Deutsche Bank Defendants directly to each of the FTOs alleged to have planned, authorized, or committed those attacks.  Instead, Plaintiffs seek to link the Deutsche Bank Defendants to those FTOs via a lengthy and circuitous chain of individuals and transactions operating at different times and in different regions.  Ultimately, the Amended Complaint's immense size is a physical manifestation of the length and convoluted nature of the link that Plaintiffs are attempting to manufacture.

In addition to its length, the Amended Complaint also continues to engage in improper group pleading.  The Amended Complaint is rife with allegations which Plaintiffs fail to connect to a specific Deutsche Bank entity or that lump the conduct of entities that are a party to this action with that of non-parties.  *See, e.g.*, AC ¶ 385 (p. 190) ("***On information and belief***, one or more officers, directors, attorneys, employees, and/or agents of Deutsche Bank, Deutsche Bank Securities, Inc. [DBSI], DBTCA, and DB London each provided pre-authorizations, or otherwise knew such pre-authorizations had been provided, to DB Moscow and Mr. Wiswell in furtherance of the mirror trading scheme.") (emphasis added); ¶ 387 (p. 191) (alleging that "*[o]ne or more* officers, directors, employees, and/or agents of Deutsche Bank, Deutsche Bank Securities, Inc., DBTCA, ***and/or*** DB London" authorized trades necessary to operation of mirror trading scheme) (emphasis added).

As discussed above, *see supra* Factual Background, Part A, DBSI is not a party to this action, nor is there any basis for Plaintiffs' conclusory assertion that DBSI and/or DBTCA, both domestic subsidiaries of Deutsche Bank AG, somehow controlled or directed the conduct of their

corporate parent's foreign branches.  *See, e.g.*, AC ¶ 34 ("Deutsche Bank Securities, Inc. and

DBTCA served as principals in Deutsche Bank's 'One Bank' model.") (emphasis omitted); ¶ 36

("Deutsche Bank, DB London, DB Dubai, and DB Moscow acted with the knowledge and

consent of Deutsche Bank Securities, Inc. and DBTCA.") (emphasis omitted); ¶ 39 ("Deutsche

Bank, DB London, DB Dubai, and DB Moscow including such DB Defendants' branches and

affiliates in Germany, the U.K., and the U.A.E., acted under some degree of control of Deutsche

Bank Securities, Inc. and DBTCA[.]") (emphasis omitted).  By repeatedly grouping all of these

Deutsche Bank entities (several of which are not party to this action) together with conclusory

allegations of control or agency, the Amended Complaint makes it impossible to assess the basis

for allegations against any particular defendant.  *Atuahene* v. *City of Hartford*, 10 Fed. App'x.

33, 34 (2d Cir. 2001) (affirming dismissal of complaint that impermissibly "lump[ed] all the

defendants together in each claim and provid[ed] no factual basis to distinguish their conduct.");

*Ochre LLC* v. *Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387, at *6

(S.D.N.Y. 2012) ("A plaintiff cannot merely 'lump[ ] all the defendants together in each claim

and provid[e] no factual basis to distinguish their conduct.'") (*quoting Simmons* v. *Abruzzo*, 49

F.3d 83, 86 (2d Cir. 1995)).

   Not only does this method of pleading muddy the merits of Plaintiffs' allegations against

specific defendants, but it makes it impossible to identify the specific conduct alleged to have

occurred in or to have been directed to the United States for purposes of evaluating personal

jurisdiction.  Because Deutsche Bank AG is organized in and maintains its principal place of

business in Germany (*see* AC ¶ 20), it is not subject to general jurisdiction in New York.  *See*

*Daimler AG* v. *Bauman*, 571 U.S. 117, 121-22 (2014).  Therefore, Plaintiffs' only mechanism for

asserting personal jurisdiction over Deutsche Bank AG is a theory of specific jurisdiction.  But

because the Amended Complaint repeatedly refers to a variety of independent Deutsche Bank entities as "Deutsche Bank New York," neither this Court nor Defendants can identify those allegations specific to Deutsche Bank AG.  *See* AC ¶ 25 (defining "Deutsche Bank New York" as "Deutsche Bank Securities, Inc., DBTCA, and Deutsche Bank AG's employees and representatives in New York").  This type of group pleading is insufficient to establish personal jurisdiction.  *See Berdeaux* v. *OneCoin*, 2021 WL 4267693, at *6 (S.D.N.Y. Sept. 20, 2021) (plaintiff must establish personal jurisdiction as to each defendant); *In re Zinc Antitrust Litigation*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016)  (allegations in the form of a group pleading are insufficient, even for affiliated corporate entities).

Plaintiffs have already had ample opportunity to correct these flaws, including in response to the Deutsche Bank Defendants' pre-motion letter (Dkt. No. 27) and this Court's comments at the pre-motion conference.  Given that Plaintiffs' response was to ***add*** still more pages to their already overly long and jumbled pleading, there is no reason to believe that a further opportunity to amend would yield a different result.  *See Ashmore* v. *Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (leave to amend is futile where barriers to relief cannot be surmounted by reframing the complaint).  The Amended Complaint should be dismissed with prejudice.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO SECTION 2333(D)

The Amended Complaint should be dismissed as against the Deutsche Bank Defendants because it fails to satisfy JASTA's minimum statutory requirements.  As Judge Cote explained in dismissing substantially similar JASTA claims against financial institutions, "it is particularly important to focus with care in cases like this on each of the necessary elements to a finding that JASTA has been violated," and "[t]hose elements present a substantial hurdle when one financial institution is accused of having violated the ATA by providing assistance to terrorist organizations through engaging in common commercial banking practices. . . ."  *Siegel* v. *HSBC*

14

*Bank USA, N.A.*, 2018 WL 3611967, at *5 (S.D.N.Y. 2018), *aff'd sub nom. Siegel* v. *HSBC North American Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019).   Here, the Amended Complaint falls short with respect to JASTA's threshold statutory elements.   It fails adequately to allege that the Deutsche Bank Defendants provided services to the perpetrators of the Attacks.   It also fails adequately to allege facts that meet JASTA's requirement that Plaintiffs satisfy the *Halberstam* elements of civil aiding-and-abetting, because it does not adequately allege that the Deutsche Bank Defendants were either "generally aware" that they were playing any role in the alleged terrorism or that they "knowingly and substantially assist[ed] the principal violation."   *Linde* v. *Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (quoting *Halberstam* v. *Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)).   At best, the Amended Complaint suggests that the Deutsche Bank Defendants somehow aided and abetted *other* alleged aider-and-abettors.   This attenuated chain of causation is insufficient to state a claim under JASTA.

### A.  Statutory Framework

In 2016, Congress amended the ATA by enacting JASTA to provide for a narrow means of asserting civil claims on a theory of secondary liability through aiding and abetting or conspiracy claims.  18 U.S.C. § 2333(d)(2).  Plaintiffs seeking to assert claims under JASTA's framework must first plead that their injuries were the result of "an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization . . . as of the date on which such act of international terrorism was committed, planned, or authorized . . . . "  *Id.*; *see also O'Sullivan* v. *Deutsche Bank AG*, 2019 WL 1409446, at *8 (S.D.N.Y. Mar. 28, 2019).[9]

---

[9]     JASTA, Section 219 of the Immigration and Nationality Act defines a "foreign terrorist organization" (or "FTO") as one formally designated by the Secretary of State as being a "[foreign] organization engag[ing] in terrorist activity . . . or retain[ing] the capability and intent to engage in terrorist activity or terrorism."  8 U.S.C. §§ 1189(a)(1), (d)(4).  Further, similar to

The proper framework for determining aiding-and-abetting liability under JASTA is set forth in *Halberstam* v. *Welch*, 705 F.2d 472 (D.C. Cir. 1983).  *See* 18 U.S.C. § 2333 Statutory Note (Findings and Purpose § 5).  *Halberstam* identifies three elements of aiding-and-abetting liability: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."  *Halberstam*, 705 F.2d at 477 (citations omitted); *see also Weiss* v. *National Westminster Bank, PLC*, 993 F.3d 144, 164 (2d Cir. 2021).  Here, the Amended Complaint fails to satisfy any of *Halberstam's* three elements.

### B. Plaintiffs' Allegations Do Not Adequately Plead that the Deutsche Bank Defendants Directly or Indirectly Aided Syndicate Terrorism

In *Honickman*, the Second Circuit explained that to satisfy *Halberstam's* first prong, Plaintiffs must plausibly allege that a "party whom the defendant directly or indirectly aided performed the injury-causing act."  6 F.4th at 495 (complaint satisfied first prong where plaintiffs alleged defendant provided indirect aid to Hamas, which in turn carried out the attacks).  Here, in contrast, the Amended Complaint does not allege that either Deutsche Bank Defendant provided financial services directly to the principal behind the Attacks from which Plaintiffs' injuries arise.  Instead, Plaintiffs attempt to plead a much longer chain of causation, whereby (at best) Deutsche Bank is alleged to have provided benign financial services to intermediaries linked to

---

Section 2333(a), JASTA also incorporates 2331(1)'s definition of "international terrorism."  18 U.S.C. § 2333(d)(2).  As such, JASTA's secondary liability is limited to activities that "involve violent acts or acts dangerous to human life" that would violate federal or states criminal laws and "appear to be intended" with terroristic intent.  18 U.S.C. § 2331(1).  Thus, under JATSA, the plaintiff must allege facts that tie the defendants to an FTO's terroristic, *i.e.*, criminally violent, activities.

*other* intermediaries, somehow linked to the attackers.  This attenuated chain does not satisfy *Halberstam's* first prong.

**C.  Plaintiffs' Allegations Do Not Give Rise to an Inference That the Deutsche Bank Defendants Were Generally Aware They Were Playing a Role in Acts of International Terrorism**

 The Amended Complaint also fails to satisfy the general awareness element, under which a plaintiff must plead and prove, *inter alia*, that the defendant was generally aware of its role as part of an overall illegal or tortious activity.  *Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F.3d 842, 863 (2d Cir. 2021); *see also O'Sullivan* v. *Deutsche Bank AG*, 2020 WL 906153, at *6 (S.D.N.Y. Feb. 25, 2020) ("[A]llegations that Defendants knowingly violated laws that were designed principally to prevent terrorist activity do not allege plausibly a general awareness that Defendants had assumed a role in a foreign terrorist organization's *act* of international terrorism.") (emphasis in original).  In *Linde*, the Second Circuit considered JASTA claims against a financial institution and ultimately found that "the mere provision of routine banking services to organizations and individuals said to be affiliated with terrorists does not necessarily establish causation" as required by the ATA.  882 F.3d at 327 (quotations and citations omitted).[10]

Against this backdrop, JASTA plaintiffs seeking to assert aiding-and-abetting liability against a bank for allegedly providing financial services to customers that, in turn, support terrorist organizations, "must plausibly allege: (1) that [the] Bank was aware of the  . . .

---

[10]      The Second Circuit's recent decision in *Kaplan* does not alter this analysis.  *Kaplan* rejected a specific-intent standard for the general awareness element, reading "the 'generally' modifier" to contain "a connotation of something less than full, or fully focused, recognition." *Kaplan*, 999 F.3d at 863.  But the Second Circuit's decision in *Honickman*, issued nearly two months after *Kaplan*, reaffirmed the *Linde* standard.  2021 WL 3197188, at *8 (explaining that *Linde* "could not have been clearer" that "aiding and abetting 'requires more than the provision of material support to a designated terrorist organization.'") (*quoting Linde*, 882 F.3d at 329).

Customers' connections with [the terrorist organization] before the relevant attacks; and (2) the .

. . Customers were so closely intertwined with [the terrorist organization's] violent terrorist

activities that one can reasonably infer [that the] Bank was generally aware of its role in unlawful

activities from which the attacks were foreseeable while it was providing financial services to the

. . . Customers." *Honickman*, 2021 WL 3197188, at \*10 (citation omitted).  The Amended

Complaint comes nowhere close to meeting this standard here.  *Cf. Freeman* v. *HSBC Holdings*

*PLC*, 2021 WL 76925, at \*8 (E.D.N.Y. Jan. 7, 2021) (Plaintiffs satisfied the second element

where defendant-bank was alleged to have provided financial services directly to the "primary

tortfeasor").

Plaintiffs do not allege that the Deutsche Bank Defendants provided financial services to

any individual or entity that carried out the Attacks.  Instead, the Amended Complaint attempts

to link the Deutsche Bank Defendants to five Syndicate cells or operatives through a series of

conclusory allegations and unnamed intermediaries.  At best, Plaintiffs allege that the Deutsche

Bank Defendants provided financial services to customers, who *in turn* funneled money to

individuals or entities connected to the Syndicate.  In many instances, Plaintiffs do not identify

the first and necessary link in this supposed chain (*i.e.*, the Deutsche Bank customer).  Where

Plaintiffs do identify those customers, they rely on news reports from outside the relevant period

in order to support their conclusory assertion that the Deutsche Bank Defendants should have

known those customers were connected to violent terror organizations.  *See, e.g.*, AC ¶  668

(relying on a 2020 news report to link Zarooni Exchange and Mazaka General Trading to

Khanani); ¶ 674 (relying on 2020 to link Haqqani and Khanani); *see also Honickman*, 6 F.4th at

501 (news report dated more than a year after the last attack did not plausibly support an

inference that defendant had the requisite general awareness at the time that it provided banking services).

> i.  Khanani and the Khanani MLO

Even assuming the truth of Plaintiffs' allegations concerning mirror trading and the "Russian Laundromat" for purposes of this motion, the Amended Complaint fails to establish that the Deutsche Bank Defendants were contemporaneously aware that they were providing any financial services linked to terrorist attacks.  As an initial matter, apart from the Amended Complaint's conclusory allegation that the "Russian Laundromat" was "custom buil[t]" for Khanani and the Russian Mafia (AC ¶ 356, p. 181), Plaintiffs do not connect Khanani or his MLO to any purported "laundromat."  Instead, Plaintiffs explain in a footnote that they *believe* that, through discovery, they will be able establish Khanani's connection to that "laundromat." AC ¶ 356 n.283 (p. 181).

Next, Plaintiffs allege that Khanani acted "as al-Qaeda's, the Taliban's, and the Haqqani Network's agent [who] regularly laundered the Syndicate's overseas income, including opium-related profits, through Deutsche Bank, DB Frankfurt, DB New York, DB Dubai, and DB Moscow accounts."  AC ¶ 393 (p. 193).  The Amended Complaint then vaguely refers to unidentified transactions between certain Deutsche Bank entities and "Khanani-related accounts."  AC ¶ 393 (p. 181); *see also* AC ¶ 400 (p. 195) (alleging that Khanani operated through Al Zarooni Exchange and Mazaka General Trading).  Plaintiffs make no attempt, however, to explain their basis for concluding that those accounts were tied to Khanani or his MLO.  Nor do Plaintiffs explain how the Deutsche Bank Defendants would have connected those accounts to Khanani or his MLO.[11]

---

[11]    The Khanani MLO appears to be a term that Plaintiffs constructed themselves.  Nowhere do they identify a list of organizations that they allege fall within the scope of the MLO.  While

Plaintiffs provide no other (or clearer) allegations to demonstrate the purportedly complex connection between the Deutsche Bank Defendants and the Syndicate.  Nonetheless, Plaintiffs baselessly conclude that this alleged monetary conversion then "directly resulted in more Syndicate terrorist attacks."  AC ¶ 356 (p. 181).  Plaintiffs' failure to establish a clear and discernible connection between the Deutsche Bank Defendants and Khanani's alleged terrorist financing is insufficient to plausibly allege that the Deutsche Bank Defendants were "generally aware" of its alleged role in illegal activity for the purposes of secondary liability under JASTA.

ii.   Ahmed Cell and Iranian Terrorist Sponsors

The Amended Complaint's allegations concerning the Ahmed Cell and the Iranian Terrorist Sponsors are similarly insufficient to satisfy the general awareness prong.  As discussed, *supra* Part II.C, the Amended Complaint fills nearly 600 pages, but devotes only a handful of paragraphs to attempting to connect Deutsche Bank to these organizations.  *See* AC ¶ 431 ("On information and belief, the U.S. government also concluded that Deutsche Bank knowingly aided the transactions with Ahmed and the Ahmed Cell that enabled the Syndicate's VAT Finance Scheme."); ¶¶ 432-34 (alleging "[o]n information and belief," that various Deutsche Bank entities "regularly facilitated NIOC and NITC transactions.").  "A court is not obligated to accept a plaintiff's 'conclusory allegations or legal conclusions masquerading as factual conclusions.'"  *Giachetto* v. *Patchogue-Medford Union Free School District*, 413 F.

---

the Amended Complaint purports to list a number of "notorious Khanani-related fronts" upon which the MLO relied, the Amended Complaint does not allege that most of those fronts were Deutsche Bank customers.  Nor does the Amended Complaint provide any non-conclusory allegations (such as contemporaneous news reports) that Deutsche Bank would have connected those "fronts" to Khanani, the MLO, or Syndicate terrorism during the relevant period.  *See, e.g.*, AC ¶ 682 (setting forth bare allegation that Defendants "knew" that Al Zarooni Exchange, Mazaka General Trading were controlled by the Khanani MLO).

Supp. 3d 141, 143–44 (E.D.N.Y. 2016) (citing *Faber* v. *Metropolitan Life Insurance Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

But even if the Court were inclined to credit these allegations (which it should not), these types of vague allusions to regular banking transactions by the Deutsche Bank Defendants are insufficient to plausibly allege secondary liability under JASTA. *See, e.g.*, *Weiss* v. *National Westminster Bank PLC*, 381 F. Supp. 3d 223, 239 (E.D.N.Y. 2019) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."), *aff'd sub nom. Weiss*, 993 F.3d 144.

### iii.   Hamburg Cell

Plaintiffs suggest that Deutsche Bank AG should have been aware as early as 1995 that financial services it provided to Mamoun Darkazanli and Mamdoubh Mahmud Salim were tied to international acts of terror committed by al-Qaeda.  As an initial matter, Darkazanli and Salim are alleged to have opened an account with Deutsche Bank at least four years before al-Qaeda was designated as an FTO.  AC ¶ 436.  Thus, any supposed financial provisions offered prior to al-Qaeda's FTO designation do not satisfy JASTA's general awareness standard as the Deutsche Bank Defendants could not have known ***contemporaneously*** that they were providing financial services to individuals with such alleged ties to an FTO.

Nevertheless, Plaintiffs suggest that Deutsche Bank AG should have picked up on "red flags," such as certain customers' failure to shake hands with a woman or their having traveled from "high risk" geographies.  *Id.*[12]  Plaintiffs next claim that both individuals "were involved in transnational financial crime" and "engaged in a pattern of transactions and travel that lacked a

---

[12]   Plaintiffs suggest further that because money is fungible, transactions tied to these "high risk" jurisdictions could ultimately be funneled back to terrorist groups.  The Second Circuit expressly rejected that theory of liability in *Honickman*.  6 F.4th at 499.

legitimate business purpose" but fail to offer details as to either allegation, (*id.*), including what information would have been reasonably available to Deutsche Bank at the relevant time.  *See Honickman*, 6 F.4th at 501; *see also Halberstam*, 705 F.2d at 477 ("[T]he defendant must be generally aware of [its] role . . . at the time that [it] provides the assistance.").

iv.   Azizi Cell

Plaintiffs' allegations concerning the Azizi Cell rest on the content of the "Final Azizi Memo," which is neither public nor identified with sufficient detail in order for this Court to credit its allegations.  AC ¶¶ 3-4 (merely referring to the memo as a "complete, 'final' version of the confidential investigative summary prepared by an elite Western law enforcement agency that had direct access to Samir Azizi himself, and his bank records"); 3 n.2 (noting that any reference made to the memo is "Plaintiffs paraphras[ing] the substance" of it).  Setting aside the memo's reliability, neither the Memo nor the Amended Complaint appears to allege any direct purchase or sale of cell phones by the Deutsche Bank Defendants.  Rather, Plaintiffs attempt to create a connection to the Deutsche Bank Defendants through transactions that are at least one step removed from the Azizi Cell's alleged purchase and sale of cell phones to Syndicate members.  *See e.g.*, AC ¶ 425 (describing Deutsche Bank Defendants' alleged role in the VAT fraud as enabling Syndicate "fundraising" through regular financial trades, such as those related to carbon).  As a result, the connection Plaintiffs attempt to establish, even if unbroken, is insufficient to plausibly allege the Deutsche Bank Defendants' secondary liability, as Plaintiffs have failed to demonstrate how the Deutsche Bank Defendants were "generally aware" that such transactions amounted to "substantial assistance" for acts of international terrorism.

**D. Plaintiffs Fail to Adequately Allege that the Deutsche Bank Defendants Knowingly Provided Substantial Assistance to Anyone Who Carried Out the Attacks**

Plaintiffs' JASTA claim fails for the additional and independent reason that the Amended Complaint does not plausibly allege that the Deutsche Bank Defendants "knowingly provid[ed] substantial assistance" to the "person who committed" the Attacks, as required under § 2333(d)(2). *Halberstam* identifies six factors relevant to determining "how much encouragement or assistance is substantial enough" to satisfy the requirement that the defendant "must knowingly and substantially assist the principal violation." *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 487). Those are: (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance. *Id.* (citing *Halberstam*, 705 F.2d at 483-84). No factor is dispositive and the weight accorded to each is determined on a case-by-case basis. *Honickman*, 6 F.4th at 500.

Plaintiffs do not allege that either Deutsche Bank Defendant encouraged any attack, was present at the time of the attack, or had a direct relationship with any of the groups that carried out the Attacks. Moreover, the Amended Complaint does not, and cannot, identify any assistance that the Deutsche Bank Defendants provided to any terrorist attack, let alone specify the amount of such assistance. Instead, Plaintiffs simply estimate a dollar amount of financial transactions for persons and companies that allegedly had some connection to the Deutsche Bank Defendants. This is insufficient. Providing routine banking services to a non-terrorist (even if that person is allegedly a front for or supporter of terrorist groups) does not constitute assistance to the principal violation of the terror attacks at issue in this case. *See id*. at 501.

Not only do Plaintiffs fail to plead a direct relationship between either Deutsche Bank Defendant and an FTO, but Plaintiffs fail to plead sufficient information with which to identify

23

the alleged *links* between either Deutsche Bank Defendant and the FTO.  For example, with respect to the Khanani MOL, the Ahmed Cell, and the Iranian Terrorist Sponsors, the Amended Complaint does not even attempt to identify most of the customers that actually held accounts with the Deutsche Bank Defendants.  Instead, the Amended Complaint relies on allegations that Deutsche Bank provided services to "Khanani-related accounts"  (AC ¶ 393 (p. 193)), that services to unidentified customers "enabled the Syndicate's VAT Finance Scheme" (AC ¶ 413), or that "[o]n information and belief, Deutsche Bank, DB Dubai, DB London, and DBTCA regularly facilitated NIOC and NITC transactions" (AC ¶ 432).  This falls short of even the chain of causation that the Second Circuit rejected in *Siegel*, where defendant-bank's "relation to the principal" was several steps removed.  *See* 933 F.3d at 220–21.  There, the defendant bank allegedly had a commercial relationship with *another* bank that was linked to various terrorist organizations including the FTO that caused the plaintiffs' injuries.  *Id.*  Here, Plaintiffs do not even plead enough information to draw *that* connection.

## <u>CONCLUSION</u>

The Amended Complaint should be dismissed with prejudice as against the Deutsche Bank Defendants.

Dated:  March 18, 2022

/s/ David G. Januszewski
David G. Januszewski
Sheila C. Ramesh
Sesi V. Garimella
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
212-701-3000
djanuszewski@cahill.com
sramesh@cahill.com
sgarimella@cahill.com

*Attorneys for Defendants Deutsche Bank
Aktiengesellschaft and Deutsche Bank Trust
Company Americas*

25