IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AUGUST WILDMAN, *et al.*, | |
| Plaintiffs, | Case No. 1:21-cv-04400-KAM-RML |
| v. | |
| DEUTSCHE BANK AKTIENGESELLSCHAFT, *et al.,* | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLACID EXPRESS'S
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

March 18, 2022                                                   *Counsel for Placid Express*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ...........................................................................................................5

I.      THE AMENDED COMPLAINT FAILS TO MEET THE BASIC PLEADING
        STANDARDS OF *IQBAL* AND *TWOMBLY* .......................................................5

II.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR AIDING-
        AND-ABETTING LIABILITY ..........................................................................7

        A.      The Amended Complaint Does Not Allege Facts Sufficient To Infer Placid
                Express Was "Generally Aware" Of Its Alleged Role in Terrorist
                Activities .........................................................................................7

        B.      The Amended Complaint Does Not Allege That Placid Express Provided
                Substantial Assistance To Any FTO That Caused Plaintiffs' Injuries .................12

        C.      The Amended Complaint Does Not Allege That Placid Express
                Proximately Caused Plaintiffs' Injuries .................................................14

        D.      The Amended Complaint Does Not Allege Injuries Caused By Attacks
                Committed, Planned, Or Authorized By An FTO .................................16

CONCLUSION .........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006).................................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................... 1, 5-6, 7, 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................... 1, 5-6, 7

*Burnett v. Al Braka Inv. & Dev. Corp.* (*In re Terrorist Attacks on Sept. 11, 2001*),
  349 F. Supp. 2d 765 (S.D.N.Y. 2005)......................................................................14

*C.D.T.S. v. UBS AG*,
  No. 12-cv-4924, 2013 U.S. Dist. LEXIS 175757 (S.D.N.Y. Dec. 13, 2013) ................. 6-7, 11

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018).........................................................................................6

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001).......................................................................15

*Dubai Islamic Bank v. Citibank, N.A.*,
  256 F. Supp. 2d 158 (S.D.N.Y. 2003)) .....................................................................15

*Freeman v. HSBC Holdings PLC*,
  413 F. Supp. 3d 67 (E.D.N.Y. 2019) ..........................................................................6

*Goldberg v. UBS AG*,
  660 F. Supp. 2d 410 (E.D.N.Y. 2009) ......................................................................14

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ........................................................................7, 8, 15

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010)................................................................................................. 14-15

*Holmes v. Secs. Inv. Prot. Corp.*,
  503 U.S. 258 (1992)............................................................................................14, 15

*Honickman v. BLOM Bank SAL*,
  6 F.4th 487 (2d Cir. 2021) ................................................................................ *passim*

*Linde v. Arab Bank*,
   882 F.3d 314 (2d Cir. 2018)............................................................7, 12, 13, 15

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001).........................................................6

*Ofisi v. BNP Paribas, S.A.*,
   No. 15-2010, 2018 U.S. Dist. LEXIS 4859 (D.D.C. Jan. 11, 2018)......................................14

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*,
   714 F.3d 118 (2d Cir. 2013)...........................................................16

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013).............................................................6

*Phipps v. City of New York*,
   No. 17-cv-6603, 2019 U.S. Dist. LEXIS 154315 (S.D.N.Y. Sept. 9, 2019) ............................5

*In re Platinum-Beechwood Litig.*,
   453 F. Supp. 3d 645 (S.D.N.Y. 2020).........................................................15

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013).......................................................1, 14, 15, 16

*Siegel v. HSBC N. Am. Holdings Inc.*,
   933 F.3d 217 (2d Cir. 2019)........................................................7, 13-14

*SPV OSUS, Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)...........................................................15

*Weiss v. Nat'l Westminster Bank PLC*,
   453 F. Supp. 2d 609 (E.D.N.Y. 2006) ...........................................................14

## STATUTES AND RULES

18 U.S.C. § 2333(d) .............................................................1, 5, 12, 16

Fed. R. Civ. P. 8(a) ..................................................................1, 5

Fed. R. Civ. P. 12(b)(6)..............................................................1, 6

## OTHER U.S. SOURCES

U.S. Dep't of State, *Foreign Terrorist Organizations*, *available at* https://www.state.gov/foreign-terrorist-organizations/ (last visited Mar. 18, 2022) .................................................................1

## PRELIMINARY STATEMENT

On the most vague and conclusory of allegations, the Amended Complaint (ECF No. 38) seeks to impose liability on Placid Express, a licensed money services business in the United States, for numerous attacks committed in Afghanistan between 2011 and 2016.  The attacks were allegedly committed by various groups, including al Qaeda, the Haqqani Network, Lashkar-e-Taiba, and Jaish-e-Mohammad, which are designated Foreign Terrorist Organizations ("FTOs"), and the Taliban and D-Company, which are not FTOs (*see Foreign Terrorist Organizations*, U.S. Dep't of State, https://www.state.gov/foreign-terrorist-organizations/ (last visited Mar. 18, 2022)). Am. Compl. ¶¶ 1, 89.  Plaintiffs lump the FTO and non-FTO groups together in what Plaintiffs coin a "Syndicate" (*id*.), a definition that obscures the lack of FTO involvement in many of the attacks at issue, a required element of Plaintiffs' claims.  Although the Amended Complaint attempts to plead aiding-and-abetting claims against Placid Express (and other defendants) under the civil-liability provisions of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(d), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 854 (2016) ("JASTA"), each fails for a multitude of reasons.

*First*, Plaintiffs' meager allegations against Placid Express fail to meet the basic pleading standards of Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure, as explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Despite the Amended Complaint's 2,208 paragraphs, only thirty-nine paragraphs (Am. Compl. ¶¶ 6, 68-70, 76, 79, 81, 277 (2nd),[1] 562-571, 595, 931-45, 1015, 1023, 1092-94) even mention Placid Express.  Those passing references consist almost entirely of legal conclusions that parrot

---

[1] The Amended Complaint repeats paragraph numbers 247-409.  Placid Express responds to the Amended Complaint as written.  When there is duplicate numbering, Placid Express repeats the duplicate paragraph number followed by the designation ("1st") or ("2nd").

the statutory language and are entirely insufficient to state any claim against Placid Express.

At the December 7, 2021 pre-motion conference, the Court advised Plaintiffs to give "careful thought" to dropping claims where they are "not [] able to state facts against certain of the Defendants that are necessary to state claim." Tr. 16:3-8.  Placid Express falls squarely in the category of Defendants against which Plaintiffs have no factual allegations to state a claim.  The Court also admonished Plaintiffs during the pre-motion conference that their original 590-page Complaint "on its face almost, violates Rule 8" of the Federal Rules of Civil Procedure.  *Id*. 5:2-3.  And the Court instructed Plaintiffs to "shorten the allegations, focus on the factual deficiencies that are identified for you, add those facts, [and] take out everything that is not absolutely relevant and material to your claim."  *Id*. 15:20-25.  Instead, Plaintiffs returned with an even longer Amended Complaint that preserves (and adds to) hundreds of paragraphs of irrelevant information and unsupported conclusions, while still failing to allege any facts necessary to state a claim against Placid Express.

The allegations against Placid Express are so scant and deficient that Placid Express appears to be little more than an afterthought in Plaintiffs' mega-complaint.  The Amended Complaint alleges that an individual, Altaf Khanani ("Khanani") and his money laundering organization ("Khanani MLO"), through various "fronts," "received, moved, concealed, and repatriated Syndicate funds to and from Afghanistan."  Am. Compl. ¶ 7.  Plaintiffs allege those funds were "used to finance terrorist violence against Americans in Afghanistan."  *Id*. ¶ 13.  But the most that Plaintiffs can muster to tie Placid Express to this theory are vague allegations that (1) an entity named Al Zarooni Exchange, allegedly a "front" for Khanani (*id*. ¶ 250 (2nd)), "claimed a relationship with" Placid Express (*id*. ¶ 564); and (2) another entity, Prime Currency Express Ltd. ("Prime Currency") "us[ed] Placid Express and other unnamed money changers" to

remit funds "to Pakistan" (*id.* ¶ 565).  Plaintiffs allege nothing to support a plausible inference that Placid Express knew these entities had any link to terrorism or provided any entity with anything but routine services.  Nor do Plaintiffs allege facts about any transactions allegedly made using Placid Express, much less facts that any funds transacted through Placid Express reached any FTO.

*Second*, the Second Circuit's decision in *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021), mandates dismissal here because Plaintiffs' paltry allegations do not meet the "threshold requirement" of plausibly alleging that Placid Express served any customer with knowledge of the purported customer's connections with the FTO that caused Plaintiffs' injuries. 6 F.4th at 501.  Plaintiffs allege no contemporaneous public information connecting Al Zarooni Exchange or Prime Currency to any FTO, nor do they allege that Placid Express otherwise had any basis to know of those entities' alleged connections with terrorist organizations.  Plaintiffs make no allegation that Al Zarooni Exchange (Am. Compl. ¶ 564) was designated as a terrorist by the U.S. government or was an open and notorious terrorism supporter.  To the contrary, Plaintiffs allege that Al Zarooni Exchange served as a "front" for Khanani and the Khanani MLO (*e.g.*, *id.* ¶ 250 (2nd)), nullifying any conclusory allegation that Placid Express was aware of Al Zarooni Exchange's alleged connections to any FTO.  Plaintiffs do not allege that Prime Currency (*id.* ¶ 565) was linked to any FTO, much less that Placid Express knew of any such connection.

Plaintiffs' only other factual allegation is that Placid Express "has a partner company" that "shares multiple phone numbers with a U.S.-sanctioned company directly owned by multiple Khanani family members."  *Id.* ¶ 566.  But Plaintiffs do not allege shared knowledge nor do they allege that Placid Express is liable for the supposed "partner" company's conduct.  In any event, Plaintiffs do not explain the significance, if any, of shared phone numbers with an unidentified company, nor do they allege that the unnamed company or the unnamed "family members" had

–3–

any connection to any FTO.  The Amended Complaint thus fails to satisfy the "threshold requirement" of general awareness.  *See Honickman*, 6 F.4th at 501.

*Third*, the Amended Complaint fails to plausibly allege that Placid Express provided any assistance to any FTO, let alone "substantial assistance" for the attacks at issue.  *See id*. at 494.  Plaintiffs have only vague and conclusory allegations that Placid Express "helped Khanani wash and transfer hundreds of thousands of U.S. Dollars" by "facilitat[ing] transactions involving known *or suspected* Syndicate *fronts*, operatives, *and/or* agents in Afghanistan, Pakistan, *or* the U.A.E., which in turn facilitated Syndicate terrorist logistics, terrorist finance, *or* terrorist fundraising." Am. Compl. ¶¶ 568-69 (emphases added).  Plaintiffs' lack of factual allegations on *who* was involved in the transactions, *where* they were located, *when* they occurred, and *what* the unknown recipients did with the funds is fatal to their claims.  Moreover, Plaintiffs do not link any supposed transaction facilitated by Placid Express to the "Syndicate."  In fact, there are no factual allegations that Placid Express processed any funds that were sent from, or received by, any FTO.

Plaintiffs allege that Al Zarooni Exchange "claimed a relationship" with Placid Express (*id*. ¶ 564), but do not allege that Placid Express ever processed any transactions for Al Zarooni Exchange, never mind processed funds that reached any FTO.  Plaintiffs do not allege facts about any transactions for which Prime Currency (*id*. ¶ 565) "us[ed]" Placid Express to execute, nor do they allege that any such transactions were anything but routine.  They allege no facts about the recipients of any alleged transactions, much less connect those recipients to any FTO.  They do not allege the dates, amounts, or number of transactions, alleging only that Prime Currency remitted funds "using Placid Express *and other unnamed money changers*" over a four-year period.  *Id.* (emphasis added).  As to Placid Express's supposed "partner company" (*id*. ¶ 566), the Amended Complaint does not allege any transactions or other conduct involving this entity.

Plaintiffs make no other factual allegations to support their conclusory statements about transfers supposedly made using Placid Express: they do not allege where or when any purported transfers took place, the amounts transferred, the number of transactions, who sent or received the supposed funds, or how the funds were used.

Fourth, Plaintiffs make no factual allegation that any FTO received funds allegedly transferred or "washed" through Placid Express, let alone used those funds to cause Plaintiffs' injuries here.  Plaintiffs thus also fail to plausibly allege that any assistance allegedly provided by Placid Express was the proximate cause of Plaintiffs' injuries, as required to establish ATA liability.  *See Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013).

Fifth, Plaintiffs do not allege that all the attacks at issue were committed, planned, or authorized by a designated FTO, a baseline requirement for ATA aiding-and-abetting liability.  *See* 18 U.S.C. § 2333(d)(2).  Claims based on attacks committed solely by the Taliban, or by the Haqqani Network before its designation, must be dismissed.

All told, the Amended Complaint fails on every element required to state an ATA claim under Second Circuit precedent and so should be dismissed with prejudice as to Placid Express.

## ARGUMENT

## I.   THE AMENDED COMPLAINT FAILS TO MEET THE BASIC PLEADING STANDARDS OF *IQBAL* AND *TWOMBLY*

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," which a 2,208-paragraph, 595-page complaint is not.  *See, e.g.*, *Phipps v. City of New York*, No. 17-cv-6603, 2019 U.S. Dist. LEXIS 154315, at *4-5 (S.D.N.Y. Sept. 9, 2019) (dismissing 1,689-paragraph complaint "because it is neither short nor plain").

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The facial plausibility standard is met only when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This test demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. And "factual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555-56.

The Court may consider only well-pled factual allegations and must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" of the elements of a cause of action or "'naked assertion[s]' devoid of 'further factual enhancement'" will not do. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (other citations omitted). The Court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions . . . presented as factual allegations." *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 77 (E.D.N.Y. 2019) (alteration in original) (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001)). Plaintiffs cannot "merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). Nor do general lumping allegations against "all Defendants" suffice to establish general awareness of a specific Defendant; "[s]cienter must be separately pled and individually supportable as to each defendant," and "is not amenable to group pleading." *C.D.T.S. v. UBS AG*, No. 12-cv-4924, 2013 U.S. Dist.

LEXIS 175757, at *17 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Funds v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015).

Nearly all of the Amended Complaint's paragraphs relating to Placid Express are bare conclusions unsupported by well-pleaded facts. *See* Am. Compl. ¶¶ 562-63, 567-71, 595, 931-45, 1015, 1023, 1092-94. Even if credited, Plaintiffs' few pertinent factual allegations against Placid Express (*id*. ¶¶ 564-66) do not permit a "reasonable inference" that Placid Express, with requisite knowledge, provided any assistance to any FTO that injured Plaintiffs. Because the Amended Complaint lacks factual allegations sufficient to state a claim against Placid Express, Plaintiffs' claims must be dismissed. *Iqbal*, 556 U.S. at 679; *accord Twombly*, 550 U.S. at 557.

## II. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR AIDING-AND-ABETTING LIABILITY

In the ATA context, aiding-and-abetting liability requires that:

> '(1) the party whom the defendant aids must perform a wrongful act that causes an injury' (the 'aiding party who causes injury' element); '(2) the defendant must be *generally aware* of his role as part of an overall illegal or tortious activity at the time that he provides the assistance' (the 'general awareness' element); '(3) the defendant must *knowingly and substantially assist* the principal violation' (the 'substantial assistance' element).

*Honickman*, 6 F.4th at 494 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)); *see also Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 224 (2d Cir. 2019) (same); *Linde v. Arab Bank*, 882 F.3d 314, 329 (2d Cir. 2018) (same). The Amended Complaint does not contain factual allegations sufficient to support these critical elements as to Placid Express. *See* Am. Compl. ¶¶ 562-571, 931-45, 1015, 1023.

### A. The Amended Complaint Does Not Allege Facts Sufficient To Infer Placid Express Was "Generally Aware" Of Its Alleged Role in Terrorist Activities

The Second Circuit's recent decision in *Honickman* sets forth the requirements to sufficiently allege the "general awareness" element of an ATA aiding-and-abetting claim.

Application of *Honickman* mandates dismissal of the claims against Placid Express here.  First, "as a threshold requirement," the complaint must plausibly allege the defendant was aware of the purported customers' connections with the FTO that caused the plaintiffs' injuries when it provided the alleged assistance.  6 F.4th at 501.  Second, the complaint must plausibly allege the customers were "so closely intertwined with [the FTO's] violent terrorist activities that one can reasonably infer [the defendant] was generally aware of its role in unlawful activities from which the attacks were foreseeable while it was providing financial services to the [customers]." *Id*.  The Amended Complaint, which alleges no facts to support an inference of Placid Express's purported knowledge and awareness, fails to make either showing.

In *Honickman*, the plaintiffs sued BLOM Bank under the ATA for "allegedly aiding and abetting Hamas's attacks" that injured plaintiffs between December 1, 2001 and August 19, 2003, "by providing financial services to three customers affiliated with Hamas." *Id*. at 491.  The Second Circuit concluded that the first ("threshold") subpart of the general-awareness element was not satisfied:  "Plaintiffs aiding-and-abetting claim fails because the allegations do not support an inference that BLOM Bank was aware of the Three Customers' ties with Hamas prior to the relevant attacks, thereby undermining the second element of general awareness." *Id*. at 501.  The Second Circuit found that "the public sources cited in the complaint do not plausibly support an inference that BLOM Bank had the requisite general awareness at the time that it provided banking services to the Three Customers." *Id.* (citing *Halberstam*, 705 F.2d at 477 (providing general awareness is determined by what defendant knows "*at the time that [it] provides the assistance*") (alteration and emphasis added in *Honickman*)).  In particular, the Second Circuit explained that the press coverage referenced in the complaint to establish the customers' links to Hamas was dated "more than a year after the last relevant attack" or was "undated." *Id*.

The allegations against Placid Express are far weaker even than those the Second Circuit in *Honickman* held could not plausibly allege that BLOM Bank was aware its customers were related to Hamas.  The holding in *Honickman* controls here:  Plaintiffs fail to allege facts to make the "threshold" showing that Placid Express was aware that any alleged customer was a "front" for, or otherwise had any connection to, any FTO.

Consistent with *Honickman*, the Amended Complaint has *no allegation* of any public statement by any FTO before any transactions at issue (or at any other time) identifying any Placid Express customer as an "integral part[] of" any FTO.  *Id*. at 502.  Nor does the Amended Complaint allege that any articles (much less widely available, mainstream articles) published before the attacks connected any Placid Express customer with any FTO.  The Amended Complaint simply offers no basis to plausibly infer that Placid Express had general awareness of the alleged connection between any "front" that allegedly used Placid Express's services and any FTO.  Plaintiffs rely on the same source from a nonprofit organization for their three factual allegations against Placid Express, but that document was published in 2018, *two years after the attacks at issue*.  *See* Am. Compl. ¶¶ 564-66 (each citing C4ADS, *Sandcastles: Tracing Sanctions Evasion Through Dubai's Luxury Real Estate Market* 28 (2018) ("2018 *Sandcastles* Report")).  This after-the-fact report cannot establish general awareness.  *See Honickman*, 6 F.4th at 501 (rejecting allegation of knowledge based on article dated "more than a year after" last attack).  In any event, Plaintiffs' three factual allegations stemming from the 2018 *Sandcastles* report (that Al Zarooni Exchange "claimed a relationship with" Placid Express (Am. Compl. ¶ 564), that Prime Currency "us[ed]" Placid Express and "other unnamed money changers" to remit money "to Pakistan" (*id*. ¶ 565) and that a supposed "partner company" had "share[d]" phone numbers with an unnamed company owned by unnamed "Khanani family members" (*id*. ¶ 566)) do not support a plausible

inference that Placid Express provided services to any of those entities with the requisite contemporaneous knowledge of any connection to any FTO.

The Amended Complaint does not allege that there were any articles, or any other source, before the attacks connecting Prime Currency (*id*. ¶ 565) to any FTO.  Plaintiffs cite only one media report (*id*. ¶ 668 & n.419) connecting Al Zarooni Exchange to any unlawful activity, an Indian television news segment that aired in September 2020, *about four years after the last attack at issue*.  *See Honickman*, 6 F.4th at 501.  And although the Amended Complaint alleges (Am. Compl. ¶ 265(2nd)) that the Treasury Department stated, in its designation of the Khanani MLO on November 12, 2015, as a transnational criminal organization (not a terrorist designation), that Al Zarooni Exchange was "involved in the movement of funds for the Taliban" (not an FTO), Plaintiffs make no factual allegation that Placid Express provided any services to Al Zarooni Exchange after November 12, 2015 (or any other time).  *See Honickman*, 6 F.4th at 502 (holding a single transaction by defendant after customer's *terrorism* designation "insufficient to suggest" general awareness of that customer's connection to FTO).

The Amended Complaint tries, and fails, to overcome the lack of contemporaneous sources by asserting (¶¶ 937, 945) that the "nature, counterparties, and sheer volume of transactions" allegedly processed through Placid Express "provided Placid Express general awareness" that "its customers were part of the Khanani money laundering organization," and "were engaged in illegal activity."  But the Amended Complaint alleges no facts about the "nature, counterparties, and sheer volume" of *any* transaction to support this bare conclusion.  As for Al Zarooni Exchange (*id*. ¶ 564), the Amended Complaint does not "note the transactions, if any, [Placid Express] processed for [Al Zarooni Exchange]."  *Honickman*, 6 F.4th at 493.  Indeed, the Amended Complaint does not allege that Placid Express processed any transactions involving Al Zarooni Exchange, in any

amounts, at any time, to any counter-party.  As to Prime Currency (Am. Compl. ¶ 565), Plaintiffs allege nothing about the "nature, counterparties, [or] volume" of any transactions, other than that funds were remitted "to Pakistan" between 2009 and 2013, and that some undefined portion of the funds were remitted through Placid Express (and the rest through "other unnamed money changers").  *See Honickman*, 6 F.4th at 493 (noting "complaint does not specify whether BLOM Bank processed that entire amount or some portion of it").  Nor do Plaintiffs allege facts that any funds were transferred through Placid Express for any unlawful purpose or to any bad actor, FTO or otherwise.

The Amended Complaint also makes clear that Khanani and the Syndicate's members used entities like Al Zarooni Exchange as "fronts" to "conceal" any connection to terrorism.  *See, e.g.*, Am. Compl. ¶ 277 (2nd) (alleging Khanani MLO "helped" Syndicate members "conceal their terrorist finance"); *see also id*. ¶¶ 250 (2nd), 268 (2nd), 400 (2nd), 668, 671 (each alleging Al Zarooni Exchange a "front").  In *Honickman*, the Second Circuit found that the Treasury Department had described the defendant-bank's alleged customers as a "cover."  6 F.4th at 502.  That allegation further "undermines the plausibility of Plaintiffs' theory" that Placid Express understood its customers' alleged links to any FTO or the customers' "true nature and activities from the public record at the time."  *Id*.

Further, the Amended Complaint's generalized, conclusory allegations that all Defendants knew of Al Zarooni Exchange's alleged connections to Khanani and to the "Syndicate" (*see, e.g.*, Am. Compl. ¶¶ 668, 671, 678, 682, 688 (each alleging "Defendants knew" of alleged connection between Al Zarooni Exchange and "Syndicate")) cannot establish general awareness as to Placid Express.  *See C.D.T.S.*, 2013 U.S. Dist. LEXIS 175757, at *17.

Plaintiffs' remaining allegations of purported knowledge or awareness are impermissible legal conclusions and merely parrot the statutory elements. *See, e.g.*, *id.* ¶ 942 ("Placid Express knew its customers, and therefore it knew that it was giving assistance, not in an innocent or inadvertent way, to Khanani and the Khanani MLO, which were in turn working as agents for the Syndicate."); *id.* ¶ 935 (concluding the "nature, counterparties, and sheer volume of transactions" allegedly processed through Placid Express "provided Placid Express general awareness" that it "was playing a role in overall illegal or tortious activity"); *id.* ¶ 939 ("Because Placid Express allowed notorious money launderers to use Placid Express to launder U.S. Dollars, it was foreseeable to Placid Express that Khanani would do so on behalf of and for the benefit of the Syndicate.").

Simply put, *Honickman* mandates dismissal of the Amended Complaint against Placid Express for failure to plead the "threshold" aspect of *Halberstam*'s general-awareness element. The Court need not even reach the remaining elements, but as shown below, Plaintiffs have not satisfied those either.

## B.     The Amended Complaint Does Not Allege That Placid Express Provided Substantial Assistance To Any FTO That Caused Plaintiffs' Injuries

Plaintiffs' aiding-and-abetting claims also fail because the Amended Complaint does not allege facts permitting a reasonable inference that Placid Express provided *any* assistance to any FTO, let alone that it provided *substantial* assistance for the attacks at issue. *See Linde*, 882 F.3d at 320 (explaining JASTA "expands ATA civil liability to reach 'any person who aids and abets, by knowingly providing substantial assistance [to], or conspires with the person who committed such an act of international terrorism'" (alteration in original) (quoting 18 U.S.C. § 2333(d)(2))); *see also Halberstam*, 705 F.2d at 477 (explaining to succeed on a claim for civil aiding-and-

–12–

abetting liability "the defendant must knowingly and substantially assist the *principal violation*" (emphasis added)).

On its face, the Amended Complaint fails to satisfy the *Halberstam* factors adopted by the Second Circuit to assess substantial assistance:  "(1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance."  *Siegel*, 933 F.3d at 225 (quoting *Linde*, 882 F.3d at 329).

The Amended Complaint does not allege that Placid Express was aware of or encouraged the terrorist attacks, or knowingly provided any funds to any FTO for their violent activities (first factor).  The Amended Complaint does not allege facts supporting a plausible inference that Placid Express provided *any* assistance to any FTO, via customers allegedly connected to an FTO or otherwise: there are no allegations that Placid Express processed any transactions for Al Zarooni Exchange or Prime Currency that reached any FTO, much less allegations that identify specific transaction amounts, dates, recipients, or any details at all (second factor).  The Amended Complaint does not allege Placid Express was "present" at the time of the attacks (third factor).  Nor does the Amended Complaint allege facts supporting a plausible inference that Placid Express had any relationship with any FTO (fourth factor).  The Amended Complaint does not allege facts supporting a plausible inference that Placid Express "knowingly assumed a role" in the attacks or any FTO's activities, or otherwise supported any FTO (fifth factor).  The Amended Complaint does not allege that Placid Express had a "relationship" with Al Zarooni Exchange for any period, and the allegation of a four-year routine-services relationship with Prime Currency (sixth factor) does not support "an inference of aiding and abetting" any FTOs (who are not alleged to be accountholders), let alone the terrorist attacks at issue.  *See Siegel*, 933 F.3d at 225-26 (affirming

dismissal of ATA aiding-and-abetting claims for failure to allege defendant "substantially assisted" FTO in "terrorist activities," specifically attacks at issue); *see also Ofisi v. BNP Paribas, S.A.*, No. 15-2010, 2018 U.S. Dist. LEXIS 4859, at *11-13 (D.D.C. Jan. 11, 2018) (finding no clear error in dismissing aiding-and-abetting claims under *Halberstam* where "plaintiffs failed to plausibly allege that BNPP directly funded any terrorist group, had knowledge of Sudan's use of BNPP-provided funds to sponsor terrorist activities, or knew that BNPP's conduct actually enabled the attacks"); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 621 (E.D.N.Y. 2006) ("The mere maintenance of a bank account and the receipt or transfer of funds do not [] constitute substantial assistance."); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 425-26 (E.D.N.Y. 2009) (holding even where bank purportedly "had knowledge of the designation of its client" as a Specially Designated Global Terrorist, allegations the bank "transferred funds to institutions that were part of Hamas's financial infrastructure" were insufficient to show "substantial assistance" to Hamas suicide bombers); *Burnett v. Al Braka Inv. & Dev. Corp. (In re Terrorist Attacks on Sept. 11, 2001)*, 349 F. Supp. 2d 765, 800-01 (S.D.N.Y. 2005) (holding allegations of indirect funding for al Qaeda not "sufficiently close to the terrorists' illegal activities to satisfy *Halberstam*").

## C.   The Amended Complaint Does Not Allege That Placid Express Proximately Caused Plaintiffs' Injuries

Plaintiffs asserting ATA claims must allege facts supporting the plausible inference that the "defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause" of plaintiffs' injuries. *Rothstein*, 708 F.3d at 95 (quoting *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 267-68 (1992)) (analyzing primary-liability claims and dismissing for lack of proximate cause). Proximate cause requires that "the alleged violation led *directly* to the plaintiff's injuries." *Id.* at 91-92 (emphasis added) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). This directness requirement demands "'some direct relation between the injury asserted

and the injurious conduct alleged.'  A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient."  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 271, 274).  Proximate cause also requires that Plaintiffs allege facts supporting a plausible inference that Placid Express's purported conduct was "*a substantial factor in the sequence of responsible causation*."  *Rothstein*, 708 F.3d at 91-92 (citation omitted).

The proximate-causation requirement applies equally to ATA aiding-and-abetting claims. The Second Circuit held as recently as 2018 — on the same day that court decided *Linde* — that proximate causation is incorporated in the tort concept of substantial assistance, a core element of the *Halberstam* framework that JASTA expressly endorsed:  "Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated."  *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (quoting *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)); *see also In re Platinum-Beechwood Litig.*, 453 F. Supp. 3d 645, 650 (S.D.N.Y. 2020) ("[E]mbedded in the substantial assistance element [of aiding and abetting] is the concept of proximate causation, which requires a showing that 'a defendant's participation [was] the proximate cause of plaintiff's injury.'" (second alteration in original) (quoting *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 167 (S.D.N.Y. 2003))).  Consistent with that precedent, *Linde* explained that "aiding and abetting focuses on the relationship between the act of international terrorism" (here the attacks that injured Plaintiffs) "and the secondary actor's alleged supportive conduct" (here Placid Express's money remitting services).  882 F.3d at 331 (citing *Halberstam*, 705 F.2d at 488 (explaining that aiding and abetting requires proof that defendant "knowingly and substantially assist the principal violation")).

In *Rothstein*, the Second Circuit held that allegations that the defendant (UBS) transferred U.S. currency to Iran, a designated state sponsor of terrorism, could not establish proximate cause absent allegations that the funds reached an FTO.  708 F.3d at 97.  The allegations against Placid Express (i.e., a "claimed [] relationship" with an entity alleged to be a "front" for the Khanani MLO, and the provision of unspecified but apparently routine services to an entity with no alleged connection to terrorism) are even more removed from any FTO that allegedly perpetrated the attacks at issue.  The Amended Complaint, like the complaint in *Rothstein*, fails to allege facts supporting the plausible inference of any direct link between Placid Express's purported "substantial assistance" and Plaintiffs' injuries.  Indeed, there are no factual allegations about any recipient of any funds processed or "washed" using Placid Express, let alone allegations those funds were given to any FTO that committed, planned, or authorized the attacks at issue.  *See id.* ("[The Complaint] does not allege that U.S. currency UBS transferred to Iran was given to Hizbollah or Hamas."); *see also, e.g.*, *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting allegation that "providing routine banking services to organizations and individuals said to be affiliated with al Qaeda" proximately caused attacks or plaintiffs' injuries).

### D.   The Amended Complaint Does Not Allege Injuries Caused By Attacks Committed, Planned, Or Authorized By An FTO

In addition to all of the above deficiencies, Plaintiffs' claims also fail where they do not allege their injuries were caused by "an act of international terrorism committed, planned, or authorized by" an organization designated as an FTO on the date of the attack, as the ATA requires.  18 U.S.C. § 2333(d)(2).  The Amended Complaint concedes (¶¶ 86-87) that certain attacks were "committed only by the Taliban," which is not an FTO, and others were committed by the Haqqani Network before it was designated on September 19, 2012.  For these attacks committed by non-

FTOs, "Plaintiffs allege that those attacks were authorized and planned by the FTO al-Qaeda." *Id*. ¶ 87. This "threadbare recital" of the ATA elements, "supported by merely conclusory statements," cannot state a claim. *Iqbal*, 556 U.S. at 678 (citation omitted). Claims based on attacks allegedly committed solely by the Taliban (¶¶ 1107-11, 1159-63, 1303-07, 1321-25, 1533-36, 1567-71, 1604-08, 1686-90, 1740-44, 1806-10, 1868-72, 1944-47) or by the Haqqani Network before its designation (¶¶ 1873-77, 1954-58) must be dismissed.

*     *     *

Despite having had the opportunity to replead the claims in view of the deficiencies detailed in Placid Express's pre-motion letter, Plaintiffs' ATA claims fail upon every element and must be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Placid Express respectfully requests that the Court dismiss with prejudice the Amended Complaint against Placid Express for failure to state a claim.

Dated:   March 18, 2022
      Washington, DC

Respectfully submitted,

**WHITE & CASE**

/s/ *Claire A. DeLelle*
Claire A. DeLelle
Matthew S. Leddicotte (*pro hac vice*)
Michael Mahaffey (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:    + 1 202 626 3600
Facsimile:     + 1 202 639 9355
cdelelle@whitecase.com
mleddicotte@whitecase.com
michael.mahaffey@whitecase.com
*Counsel for Placid Express*

–17–