UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUGUST WILDMAN, et al.,<br><br>                Plaintiffs,<br><br>     v.<br><br>DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK TRUST COMPANY AMERICAS, STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, STANDARD CHARTERED BANK LIMITED, STANDARD CHARTERED BANK (PAKISTAN) LIMITED, DANSKE BANK A/S, DANSKE MARKETS INC., PLACID NK CORPORATION d/b/a PLACID EXPRESS, and WALL STREET EXCHANGE LLC,<br><br>                Defendants. | 1:21 Civ. 4400 (HG) (RML) |

**MEMORANDUM OF LAW IN SUPPORT OF DEUTSCHE BANK AG AND DEUTSCHE BANK TRUST COMPANY AMERICAS' MOTION TO DISMISS PLAINTIFFS' <u>CORRECTED AMENDED COMPLAINT</u>**

David G. Januszewski
Sheila C. Ramesh
Sesi V. Garimella
Isabella Abelite
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
(212) 701-3000
djanuszewski@cahill.com
sramesh@cahill.com
sgarimella@cahill.com
iabelite@cahill.com

*Attorneys for Defendants Deutsche Bank Aktiengesellschaft and Deutsche Bank Trust Company Americas*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.      PLAINTIFFS' AMENDED COMPLAINT VIOLATES RULE 8 ................................. 2

    II.     PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO SECTION 2333(d) ....... 5

        A.    Plaintiffs' Allegations Do Not Give Rise to an Inference That the Deutsche Bank Defendants Were Generally Aware That They Were Playing a Role in Acts of International Terrorism ........................................................................................... 5

        B.    Plaintiffs Fail to Adequately Allege that the Deutsche Bank Defendants Knowingly Provided Substantial Assistance to Anyone Who Carried Out the Attacks .................... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atchley* v. *AstraZeneca UK Ltd.*,
  22 F.4th 204 (D.C. Cir. 2022)..........................................................................................5n

*Berdeaux* v. *OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021)................................................................................4

*Burke* v. *Dowling*,
  944 F. Supp. 1036 (E.D.N.Y. 1995) ..................................................................................2

*Freeman* v. *HSBC Holdings PLC*,
  465 F. Supp. 3d 220 (E.D.N.Y. 2020), *recons. denied* 2020 WL 4481944
  (E.D.N.Y. Aug. 4, 2020)....................................................................................................9

*Harnage* v. *Lightner*,
  916 F.3d 138 (2d Cir. 2019)...............................................................................................2

*Honickman* v. *BLOM Bank SAL*,
  6 F.4th 487 (2d Cir. 2021) .............................................................................................6, 8

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021)...............................................................................................6

*Rothstein* v. *UBS AG*,
  708 F.3d 82 (2d Cir. 2013)...............................................................................................10

*Salahuddin* v. *Cuomo*,
  861 F.2d 40 (2d Cir. 1988).................................................................................................2

*Siegel* v. *HSBC North American Holdings, Inc.*,
  933 F.3d 217 (2d Cir. 2019).............................................................................................10

*Smith* v. *Fischer*,
  2016 WL 3004670 (W.D.N.Y. May 23, 2016)..................................................................2

*Wynder* v. *McMahon*,
  360 F.3d 73 (2d Cir. 2004).................................................................................................2

*In re Zinc Antitrust Litigation*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016)................................................................................4

**Rules**

Fed. R. Civ. P. 8................................................................................................................ 1-2

Fed. R. Civ. P. 12(b)(2)............................................................................................................1

Fed. R. Civ. P. 12(b)(6)............................................................................................................1

**Statutes**

18 U.S.C. 2333(d) ...............................................................................................................5, 5n

Deutsche Bank Aktiengesellschaft ("Deutsche Bank AG") and Deutsche Bank Trust Company Americas ("DBTCA," together with Deutsche Bank AG, the "Deutsche Bank Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' Corrected Amended Complaint (Dkt. No. 38) (the "Amended Complaint" or "AC")[1] pursuant to Federal Rules of Civil Procedure 8, 12(b)(2), and 12(b)(6).

## **PRELIMINARY STATEMENT**[2]

Despite its inordinate length, the Amended Complaint is conspicuously lacking in any non-conclusory allegations that could plausibly link specific Deutsche Bank entities to any of the FTOs or terrorist attacks from which the Plaintiffs' claims arise. Unable to remedy these fundamental flaws, Plaintiffs instead double down on assumptions, generalizations, group pleading, and conclusory allegations in an effort to save their claims. Plaintiffs' theory of liability is essentially that Deutsche Bank: (1) provided financial services to unidentified individuals or entities (Deutsche Bank's customers), (2) which were in turn fronts for or agents for *other* individuals and entities (Khanani, Azizi, etc.), (3) who at some point became known as affiliates or agents for FTOs (members of the "Syndicate"), and (4) because Deutsche Bank engaged in large financial transactions at step one, large sums of money must have flowed to the FTOs, and finally (5) those funds were most likely used to support terror attacks, including the ones that killed or injured Plaintiffs.

---

[1] The Amended Complaint appears to erroneously use duplicative paragraph numbers in separate sections. In order to avoid any confusion about which paragraph the Deutsche Bank Defendants are referring to, citations to duplicative paragraph numbers are formatted to contain both a paragraph and page number (*e.g.*, AC ¶ xx (p. yy)).

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Deutsche Bank's memorandum of law in support of its motion to dismiss. Dkt. No. 48 ("DB Moving Br.").

If a string of allegations like this were to be sufficient to establish JASTA liability, there would be no limit to the statute's application. Rather than grapple with that problem, Plaintiffs try to obscure it among hundreds of pages of irrelevant allegations and defined terms that conflate FTOs with non-FTOs, Deutsche Bank customers with affiliates of those customers, and funds that passed through Deutsche Bank at some point with funds that FTOs may have received years later. None of this achieves what is required: that Plaintiffs demonstrate a sufficiently direct connection between Deutsche Bank and any relevant attack or attacker. For that reason, as well as the reasons articulated herein and in Deutsche Bank's moving brief, the Amended Complaint should be dismissed as against Deutsche Bank.

## ARGUMENT

### I. PLAINTIFFS' AMENDED COMPLAINT VIOLATES RULE 8

Plaintiffs suggest that the bar for complying with Rule 8 is merely that the pleading not be utterly incomprehensible. Dkt. No. 59 ("Pl. DB Opp.") at 9. Even if that were true, Plaintiffs do not meet even that low bar. Four of the cases on which they rely to justify their own jumbled verbosity involved pleadings by *pro se* plaintiffs, which courts construe more liberally. *See* Pl. DB Opp. at 9 (citing *Salahuddin* v. *Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *Smith* v. *Fischer*, 2016 WL 3004670, at *3-4 (W.D.N.Y. May 23, 2016); *Burke* v. *Dowling*, 944 F. Supp. 1036, 1049 (E.D.N.Y. 1995); and *Harnage* v. *Lightner*, 916 F.3d 138, 142 (2d Cir. 2019)). Plaintiffs here are not *pro se*. In fact, they are represented by sophisticated counsel, well-versed in litigating claims under the ATA. *See* Pl. DB Opp. at 10 n.3. In the fifth case on which Plaintiffs rely, *Wynder* v. *McMahon*, the defendants did not even challenge the complaint under Rule 8. *See* 360 F.3d 73, 80 n.12 (2d Cir. 2004).

Regardless, a handful of decisions declining to dismiss lengthy complaints in unrelated cases does not help Plaintiffs to demonstrate that their complaint here passes muster. Despite

2

more than 600 pages of allegations, Plaintiffs fail to connect Deutsche Bank to any terror attack. They attempt to hide the absence of substantive allegations in a jumble of irrelevant claims, which include a lengthy, academic discussion of terror operations. The reader is left to wade through this hodgepodge of information in order to attempt to discern whether particular attacks are alleged to have been committed, planned, or authorized by al-Qaeda, the Taliban, al-Qaeda *and* the Taliban, or some other member of Plaintiffs' self-defined "Syndicate" for terrorist violence, which includes a number of entities that have never been designated as FTOs. Plaintiffs also endeavor to blur the line between the Taliban, which has never been designated as an FTO, and the Haqqani Network, which is an FTO. This sloppy attempt to muddy the waters cannot sustain Plaintiffs' claims.[3]

Similarly unavailing is Plaintiffs' bizarre attempt to claim that they complied with Judge Matsumoto's instruction to shorten and sharpen their complaint. Tr. 15:20-25 ("I would really, really hope . . . that you would try very hard to shorten the allegations, focus on the factual deficiencies that are identified for you, add those facts, take out everything that is not absolutely relevant and material to your claim. . . ."). Despite the fact that their Amended Complaint is five pages *longer* than their original complaint, Plaintiffs claim to have "cut approximately 100 pages of material from the original complaint." Pl. DB Opp. at 14. That math does not add up.

In response to Deutsche Bank's group pleading and personal jurisdiction arguments (*see* DB Moving Br. at 12-14), Plaintiffs argue that their defined term "DB New York," which conflates the conduct of three separate Deutsche Bank entities (only two of which are defendants here), is sufficient to provide Deutsche Bank AG and DBTCA with notice of the claims against

---

[3]   Confusingly, Plaintiffs argue that Deutsche Bank waived these arguments while at the same time conceding that Deutsche Bank raised these issues in its opening brief. *See* Pl. DB Opp. at 16 n.4. Plaintiffs cannot seriously contest that Deutsche Bank raised these issues in its moving papers. *See* DB Moving Br. at 5 n.4.

3

them.  In support of this misguided claim, Plaintiffs argue that Deutsche Bank's public disclosures described a "One Bank" strategy, which emphasized cooperation among various Deutsche Bank subsidiaries and affiliates.  *See* AC ¶ 35.  This is not a sufficient basis to disregard the Deutsche Bank Defendants' separate corporate forms.  *See* DB Moving Br. at 6.  Plaintiffs also argue that courts in this Circuit have held that "jurisdiction lies over banks that executed funds transfers in New York, either through their New York branch or a correspondent account they maintained in their own name."  Pl. DB Opp. at 13 (citation and internal quotation marks omitted).  This argument, again, does not provide a basis to disregard the Deutsche Bank Defendants' separate corporate forms.  DBTCA and DBSI (which is not a named Defendant here) are not *branches* of Deutsche Bank AG.  They are entities legally distinct from Deutsche Bank AG, and it is well settled that Plaintiffs are required to establish personal jurisdiction with respect to *each* defendant.  *Berdeaux* v. *OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021); *see also* DB Moving Br. at 14.  Plaintiffs use some variation of the term "DB New York" or "DB Defendants" almost 50 times throughout the Amended Complaint.  *See, e.g.*, AC ¶ 1027 ("[T]he DB Defendants' conduct involved sending dollars from or through DB New York to Deutsche Bank accounts in Germany, Russia, Pakistan, or Dubai, or USD-linked currency exchanges at DB New York, to facilitate Syndicate logistics flow or terrorist finance."); AC ¶ 1038 ("DB New York therefore played an essential role in both triggering the red flags these transactions raised and knowingly ignoring them to allow the transactions to proceed.").  By doing so, they have made it impossible to identify the relevant allegations against each Deutsche Bank entity, which they are required to do.  As a result, the Amended Complaint should be dismissed for improper group pleading as to DBTCA and Deutsche Bank AG, and for lack of personal jurisdiction as to Deutsche Bank AG.  *In re Zinc Antitrust Litigation*, 155 F. Supp. 3d

337, 384 (S.D.N.Y. 2016) (allegations in the form of a group pleading are insufficient, even for affiliated corporate entities); *see also* DB Moving Br. at 14.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO SECTION 2333(d)[4]

Plaintiffs' argument that JASTA "reach[es] persons who provide support for international terrorism directly or *indirectly*" misses the point. Pl. DB Opp. at 17 (emphasis in original; internal quotation marks omitted). Deutsche Bank does not argue that JASTA liability is limited to direct aid. Nor does it argue that there is any set threshold for the number of links in the causal chain that can support aiding and abetting liability under JASTA. Instead, what Deutsche Bank explained in its moving brief, and what numerous courts in this district have recognized, is that the long and convoluted causal chain that Plaintiffs allege links Deutsche Bank to any FTO is far too attenuated to support either the general awareness or the knowing substantial assistance prongs of the statute.

### A. Plaintiffs' Allegations Do Not Give Rise to an Inference That the Deutsche Bank Defendants Were Generally Aware That They Were Playing a Role in Acts of International Terrorism

Plaintiffs' primary argument that they have adequately pled Deutsche Bank's general awareness of its role in an act of terrorism is that Deutsche Bank "provided highly irregular services . . . to suspicious customers." Pl. DB Opp. at 20. Even if Plaintiffs had sufficiently pled that allegation (which they have not), it does not satisfy the standard for general awareness,

---

[4]   Plaintiffs claim that Deutsche Bank failed to separately respond to Count II of their Amended Complaint, which asserts violations of RICO as the predicate to JASTA liability. *See* Pl. Opp. at 16. As Deutsche Bank explained in its moving brief, however, there is no basis for RICO predicate liability under JASTA. *See* DB Moving Br. at 4 n.3; *see also* 18 U.S.C. 2333(d). Indeed, the D.C. Circuit, in *Atchley* v. *AstraZeneca UK Ltd.* declined to address a substantially similar RICO theory proffered by the same plaintiffs' law firm, finding that it was duplicative of plaintiffs' aiding and abetting claim. 22 F.4th 204, 217 (D.C. Cir. 2022). Plaintiffs' only support for this theory of liability is their conclusory claim that "[v]iolations of RICO plainly can qualify as acts of international terrorism under the statutory definition of that term." Pl. DB Opp. at 16.

5

which requires that Plaintiffs allege that Deutsche Bank's customer "'w[as] so closely intertwined with [the terrorist attacker's] violent terrorist activities that one can reasonably infer that [the bank] was generally aware *while it was providing banking services to those entities* that it was playing a role in unlawful activities from which [the terrorist] attacks were foreseeable.'" *Honickman* v. *BLOM Bank SAL*, 6 F.4th 487, 499 (2d Cir. 2021) (quoting *Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F.3d 842, 860-61 (2d Cir. 2021)) (emphasis added). Here, Plaintiffs have not established that Deutsche Bank provided *any* services to an FTO or someone it knew to be associated with an FTO. Even if Plaintiffs could draw a link between Deutsche Bank customers and an FTO, timing is everything. Despite citing hundreds of news articles and academic sources throughout the amended complaint, Plaintiffs fail to provide any non-conclusory allegation that Deutsche Bank could have contemporaneously linked any of those customers to terrorist activities. *See Honickman*, 6 F.4th at 502 (rejecting allegations against defendant because, *e.g.*, they did not involve "public knowledge during the relevant period" and occurred "after the relevant period").

Plaintiffs further claim that the facts they have alleged against Deutsche Bank are more detailed than those that the Second Circuit "blessed" in *Kaplan*. Pl. DB Opp. at 21. This is simply not true. In fact, *Kaplan* underscores the deficiencies in the Amended Complaint. In *Kaplan*, Plaintiffs pleaded with the requisite detail that the defendant bank's direct customers, Bayt al-Mal, Yousser, and Shahid Martyrs, were integral parts of Hizbollah. 999 F.3d at 864. Hizbollah had been designated as an FTO long before the events giving rise to the *Kaplan* complaint, and there were multiple public and specific statements in the years leading up to the attacks that connected the bank's customers to Hizbollah. *See id.* ("[T]he statements were alleged to have to have been made in a particular time period . . . and were specific as to the

6

status of the speaker ('senior Hizbollah officials'), the circumstances in which the statements were made ('press conferences and news media interviews'), and the other specific media in which they were made (Hizbollah's own 'official websites,' its 'official television station, Al-Manar,' and its 'official radio station, Al-Nour'"). Such detailed allegations are glaringly absent from the Amended Complaint.

Here, Plaintiffs allege that between 2009 and 2016, Deutsche Bank transferred funds to or engaged in business with members of Plaintiffs' self-defined "Syndicate": Khanani and the Khanani MLO; Samir Azizi and the Azizi Cell; Imran Yakub Ahmed and the Ahmed Cell; and Mamoun Darkazanli and Mamdouh Mahmud Salim (the Hamburg Cell). AC ¶ 351 (p. 179). Not only are these individuals and entities *not* designated as FTOs, but the Amended Complaint does not even sufficiently allege that they were Deutsche Bank's customers. For example, Plaintiffs claim that Deutsche Bank provided financial services to front companies for Ataf Khanani and his money laundering organization, which in turn, laundered money that was funneled back to "accounts controlled by agents or operatives for al-Qaeda, the Haqqani Network, or another Syndicate group." AC ¶ 393 (p. 193). These allegations do not provide enough information to identify the *number* of actors that separated Deutsche Bank and any FTO during the relevant time period. Nor do Plaintiffs identify any basis by which Deutsche Bank could have contemporaneously connected the Khanani fronts to Khanani himself. While Plaintiffs claim that Khanani was a well-known agent for al-Qaeda and the Taliban, they are conspicuously silent as to when or how Mazaka General Trading and Al Zarooni Exchange (the alleged Khanani front companies) were linked to Khanani.

Elsewhere, Plaintiffs claim that Deutsche Bank offered services to the Russian Mafia and that it was therefore foreseeable that its services were being used by al-Qaeda and the Taliban,

7

which they claim "pursued a close working relationship with the Russian Mafia." AC ¶ 298 (p. 161); *see also* Pl. DB Opp. at 23. But Plaintiffs offer no non-conclusory allegations linking Deutsche Bank to the Russian Mafia. They allege that "DB Moscow's head equities trader . . . met with two known launderers who were notoriously associated with the Russian Mafia." AC ¶ 375. But they do not identify the two alleged launderers, nor do they allege any basis by which Deutsche Bank could have connected those individuals to the Russian Mafia.

As set forth fully in Deutsche Bank's moving brief, Plaintiffs' attempt to link Deutsche Bank to acts of terror through the other individuals or entities listed above suffers from similar flaws. *See, e.g.*, DB Moving Br. at 6-10; 17-22. For example, with respect to Samir Azizi and the Azizi Cell, Plaintiffs do not allege that Azizi was a direct customer of Deutsche Bank. While Plaintiffs allege that Azizi "used Deutsche Bank accounts" to enable the Syndicate's VAT Finance Scheme (AC ¶ 413), they do not identify the account holders or any connection between those accounts and the alleged VAT Fraud.[5]

Rather than bridge these gaps, Plaintiffs rely on generic hand-waving to suggest that it was foreseeable that U.S. Dollar Clearing services in "high risk" jurisdictions could ultimately funnel money to terrorist organizations. *See, e.g.*, AC ¶¶ 357 (p. 181), 436; *see also* Pl. DB Opp. at 21.[6] The Second Circuit has specifically rejected this line of reasoning. *Honickman*, 6 F.4th at

---

[5] Plaintiffs rely instead on vague characterizations of an unidentified "confidential investigative summary," in which Plaintiffs claim that "Azizi directly admitted to using Deutsche Bank as his willing financial partner in the Syndicate's VAT Finance Scheme." AC ¶¶ 3, 414. But this allegation does not explain whether Azizi claimed to have held accounts directly with Deutsche Bank or whether they were held through intermediaries that Deutsche Bank could contemporaneously connect to Azizi. Nor does it explain whether and how Deutsche Bank would have connected the ultimately unidentified customer who received unspecified services to Azizi, the Syndicate's VAT Finance Scheme, a registered FTO, or terrorist activities.

[6] Plaintiffs also argue that Deutsche Bank's "mirror trade system was purpose-built for criminal and capital flight," and that any "person or entity that used it was self-identifying as such." Pl. DB Opp. at 24. This is pure obfuscation and improperly seeks to conflate all

8

498-99; *see also* DB Moving Br. at 21 n.12.  Plaintiffs also claim that "an *inference* of knowledge is permissible" because one of Deutsche Bank's co-defendants "discerned in 2012, based on the same type of information that was available to DB, that a Khanani front was laundering money for terrorists," and that therefore Deutsche Bank could have plausibly identified other Khanani fronts.  Pl. DB. Opp. at 24 (emphasis added).  That argument rests on a chain of unsubstantiated assumptions and conclusory allegations.  Plaintiffs do not identify what front another bank identified as tied to Khanani.  Nor do they explain what information the other bank relied on in order to identify this supposed Khanani front.  *See* AC ¶ 466 (alleging only that a senior compliance officer "uncovered" the information during an audit).  Finally, Plaintiffs argue that certain regulatory investigations concerning mirror trading activity or VAT Fraud demonstrate that Deutsche Bank was generally aware that financial transactions in which it was engaged could be linked to terrorist activities.  But Plaintiffs may not avoid their pleading obligations by relying upon a defendant's prior lapses in internal compliance processes.  *Freeman* v. *HSBC Holdings PLC*, 465 F. Supp. 3d 220, 230 (E.D.N.Y. 2020) (such allegations "do not allege plausibly a general awareness that Defendants had assumed a role in a foreign terrorist organization's *act* of international terrorism") (emphasis in original), *recons. denied* 2020 WL 4481944 (E.D.N.Y. Aug. 4, 2020).

### B. Plaintiffs Fail to Adequately Allege that the Deutsche Bank Defendants Knowingly Provided Substantial Assistance to Anyone Who Carried Out the Attacks

Plaintiffs' failure to plead "substantial assistance" serves as an independent basis for dismissal.  *See* DB Moving Br. at 23-24.  While Plaintiffs argue generally that financial support is essential to terrorist activities (Pl. DB Opp. at 27-28), they advance no non-conclusory allegation to support their claim that funds transferred by Deutsche Bank were, in fact, sent to al-

---

legitimate dollar clearing services with criminal activity.

9

Qaeda or the Haqqani network. Instead, they declare that if they have adequately pleaded general awareness, then they need not show that the funds actually made it to an FTO. Pl. DB Opp. at 29. But that argument ignores the fatal flaw that runs through their entire Complaint: the causal link that they have tried to manufacture is so attenuated and involves so many unidentified players and services that it cannot support either the general awareness or knowing substantial assistance prongs.

The Second Circuit's pre-JASTA decision under the ATA in *Rothstein* v. *UBS AG* is instructive. 708 F.3d 82, 96-97 (2d Cir. 2013). In *Rothstein*, the Court rejected an aiding and abetting claim based on allegations that UBS had provided banking services to Iranian entities that supported terrorist organizations like Hamas and Hezbollah. *Id.* The Second Circuit focused on plaintiffs' failure to plead proximate causation because there was "no nonconclusory allegation in the Complaint that plausibly show[ed] that the moneys [the bank] transferred to Iran were in fact sent to Hizbollah or Hamas or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the cash provided by [the bank]." *Id.* at 97. The Second Circuit's later decision in *Siegel* v. *HSBC North American Holdings, Inc.* further underscores this point by explaining that because the defendant bank's relation to the principal attackers was several steps removed, the *Siegel* plaintiffs could not show substantial assistance. 933 F.3d 217, 225 (2d Cir. 2019); *see also* DB Moving Br. at 24. Plaintiffs' Amended Complaint is premised on that same flaw and should be dismissed on this basis.

## CONCLUSION

The Amended Complaint should be dismissed with prejudice as against the Deutsche Bank Defendants.

Dated:  June 3, 2022

/s/ David G. Januszewski
David G. Januszewski
Sheila C. Ramesh
Sesi V. Garimella
Isabella Abelite
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
212-701-3000
djanuszewski@cahill.com
sramesh@cahill.com
sgarimella@cahill.com
iabelite@cahill.com

*Attorneys for Defendants Deutsche Bank Aktiengesellschaft and Deutsche Bank Trust Company Americas*

11