IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUGUST WILDMAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK AKTIENGESELLSCHAFT, *et al.,* <br><br> Defendants. | Case No. 1:21-cv-04400-HG-RML <br><br> ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN SUPPORT OF PLACID EXPRESS'S
MOTION TO DISMISS AMENDED COMPLAINT**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

June 3, 2022

*Counsel for Placid Express*

**TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................................2

I. THE OPPOSITION CANNOT OVERCOME THE AMENDED COMPLAINT'S FAILURE TO MEET BASIC PLEADING STANDARDS .................................................2

II. THE OPPOSITION CANNOT OVERCOME THE AMENDED COMPLAINT'S FAILURE TO STATE A CLAIM FOR AIDING-AND-ABETTING LIABILITY ............2

    A. The Opposition Cannot Overcome the Amended Complaint's Failure to Allege Facts Sufficient To Infer Placid Express Was "Generally Aware" Of Its Alleged Role in Terrorist Activities .............................................................2

    B. The Opposition Cannot Overcome The Amended Complaint's Failure To Allege Placid Express Provided Substantial Assistance To Any FTO That Caused Plaintiffs' Injuries........................................................................................6

    C. The Opposition Cannot Overcome Amended Complaint's Failure To Allege That Placid Express Proximately Caused Plaintiffs' Injuries ......................9

    D. The Opposition Cannot Overcome the Amended Complaint's Failure to Allege Injuries Caused By Attacks Committed, Planned, Or Authorized By An FTO ..............................................................................................................10

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 1, 2

*Atchley v. Astrazeneca UK Ltd.*,
    22 F.4th 204 (D.C. Cir. 2022) ............................................................................................. 7, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 1, 2, 3

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018) ...................................................................................................... 7

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) ....................................................................................... 9

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
    974 F.2d 270 (2d Cir. 1992) ...................................................................................................... 9

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ............................................................................................... 6, 9

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ................................................................................ 1, 2-3, 4, 7, 9

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021) ...................................................................................................... 3

*Linde v. Arab Bank*,
    882 F.3d 314 (2d Cir. 2018) ...................................................................................................... 9

*Siegel v. HSBC N. Am. Holdings Inc.*,
    933 F.3d 217 (2d Cir. 2019) ......................................................................................... 7-8, 8-9

*SPV OSUS, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ...................................................................................................... 9

*U.S. ex rel. Siegel v. Roche Diagnostics, Corp.*,
    988 F. Supp. 2d 341 (E.D.N.Y. 2013) .................................................................................. 4, 5

## OTHER U.S. SOURCES

U.S. Dep't of Treasury, *Treasury Sanctions Individuals and Entities as Members of the Altaf Khanani Money Laundering Organization, available at*
https://home.treasury.gov/news/press-releases/jl0574 (Oct. 11, 2016) ....................................5

Despite its exaggerations and rhetoric, the Opposition cannot point to one allegation of conduct by Placid Express to state an ATA claim. The Opposition makes clear that Plaintiffs' case rests on vague allegations that a non-designated (i) "front" (Al Zarooni Exchange) for a money launderer (Khanani) "claimed a relationship" with Placid Express, (ii) entity (Prime Currency) with *no* alleged ties to terrorism "used" Placid Express to transact funds "to Pakistan," and (iii) "partner company" to Placid Express had "share[d]" phone numbers with a company owned by Khanani "family members" (with no alleged ties to terrorism). *See, e.g.*, Opp. 4-5. The Opposition admits Plaintiffs' allegations against Placid Express are "narrower than the allegations against the bank defendants" (Opp. 7), "less detailed than the facts supporting knowledge for" the other Defendants (*id*. at 16), and "short on details regarding specific transactions" (*id*.). Even those descriptions are generous: the Opposition (which does not mention Placid Express until page four) cannot point to *any* well-pleaded factual allegations to support a plausible inference that Placid Express substantially assisted any FTO with the requisite knowledge and awareness.

The Opposition does not even try show Plaintiffs' scant, conclusory allegations meet the basic pleading standards of *Iqbal* and *Twombly*. Nor can the Opposition show the Amended Complaint meets the "threshold requirement" for an ATA aiding-and-abetting claim, explained in *Honickman*, of plausibly alleging Placid Express was aware of any alleged customer's link to any FTO. The Opposition concedes (at 11, 16) there are no public sources connecting any alleged customer to any FTO, and the alleged customers were "fronts" used to conceal ties to Khanani. The Opposition identifies no allegations to support its argument that Placid Express had "relationships" with any "Khanani entity," or processed transactions for any customer, on which to infer awareness of any customer's alleged FTO ties based on alleged non-public information. And the Opposition — which concedes (at 18) Plaintiffs do not allege Placid Express processed

any funds that reached any FTO — identifies no plausible allegation of assistance to any FTO. The Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**I. THE OPPOSITION CANNOT OVERCOME THE AMENDED COMPLAINT'S FAILURE TO MEET BASIC PLEADING STANDARDS**

The Opposition's argument (at 5-9) that the Amended Complaint satisfies Rule 8(a) because it is not "so rambling that it is incomprehensible" misses the point. The Amended Complaint's sheer length obscures its failure to plead any conduct by Placid Express to support a plausible ATA claim for aiding and abetting. As Placid Express explained (Mem. 1), only thirty-nine of the Amended Complaint's 2,208 paragraphs even mention Placid Express. These few mentions consist almost entirely of unsupported legal conclusions that do not meet the basic pleading standards of *Iqbal* and *Twombly*. *See* Mem. 6-7. Yet the Opposition ignores *Iqbal* and *Twombly*, instead piling new baseless speculation on unsupported inferences and conclusions. The Opposition's request (at 9) for yet another opportunity to amend ignores Judge Matsumoto's instruction that Plaintiffs "will not be given leave to replead." Tr. 10:24-11:5. Placid Express explained Plaintiffs' pleading deficiencies in detail in its pre-motion letter in October 2021 (ECF No. 25) and Plaintiffs had months to attempt to cure those deficiencies. Plaintiffs failed to cure those defects and the Amended Complaint should now be dismissed.

**II. THE OPPOSITION CANNOT OVERCOME THE AMENDED COMPLAINT'S FAILURE TO STATE A CLAIM FOR AIDING-AND-ABETTING LIABILITY**

**A. The Opposition Cannot Overcome the Amended Complaint's Failure to Allege Facts Sufficient To Infer Placid Express Was "Generally Aware" Of Its Alleged Role in Terrorist Activities**

The Opposition (at 10) acknowledges that *Honickman* sets the pleading requirements for aiding-and-abetting liability, but cannot point to even one factual allegation supporting a plausible inference that Placid Express was aware that any alleged customer was connected with an FTO.

–2–

*See* Mem. 7-12. The *Honickman* and *Kaplan* courts evaluated this "threshold requirement" by examining allegations of public sources connecting the defendant banks' customers with FTOs. *Honickman*, 6 F.4th at 501; *Kaplan*, 999 F.3d at 864. But the Opposition concedes (at 11-12) that the Amended Complaint fails to allege any contemporaneous public source connecting any alleged Placid Express customer with any FTO. *See* Mem. 9-10. The Opposition also concedes (at 16) the alleged customers were "fronts" used to "conceal" their connections to terrorism, which "undermines the plausibility of Plaintiffs' theory" that Placid Express understood its customers had alleged links to any FTO. *See* Mem. 11 (quoting *Honickman*, 6 F.4th at 502).

With no public sources, the Opposition (at 11-12) speculates that Placid Express may have had general awareness based on non-public information about "its customers and their transactions." The Opposition exaggerates Plaintiffs' few allegations and tries to insert new facts, but cannot show Placid Express had information from which to plausibly infer awareness of any alleged customer's ties to any FTO. *See Twombly*, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

In particular, the Opposition asserts (at 12-14) Placid Express had "relationships" with "Khanani affiliates," and these "connections" can "support an inference that Placid Express was colluding with or working alongside" Khanani. The Opposition even claims (at 16) Placid Express was "*inside* of the front" used by Khanani. But the Amended Complaint does not plausibly allege any "relationship" that could support such a theory. The Opposition points to three vague allegations about supposed "relationships," but concedes (at 13) each could be "innocent or coincidental." Nothing in the Amended Complaint supports a plausible inference otherwise.

The Opposition further asserts (at 12) that Placid Express had "relationships" with "multiple affiliates including Al Zarooni Exchange." But the Amended Complaint (¶ 564) alleges

only that Al Zarooni "claimed" an unspecified "relationship with" Placid Express, alleging *nothing* else about that relationship. This vague allegation cannot support an inference that Placid Express had insider knowledge of Al Zarooni or was "working alongside" Khanani. And the Amended Complaint alleges no "relationship" with any other alleged Khanani affiliate.

The Opposition's assertion that Placid Express "remitted substantial funds for Prime Currency to Pakistan" fares no better. Alleging that Placid Express processed routine transactions for an entity that Plaintiffs do not even allege was *itself* a Khanani "front" cannot support a plausible inference that Placid Express was "inside" a front. Contrary to the Opposition (at 4, 12), routine transactions "to Pakistan," without more (and Plaintiffs allege no more), are not "inherently suspicious." And "more" cannot be that Pakistan writ large — with a population of 229 million — is a "hothouse for anti-American terrorism" (at 12). The Opposition states (at 12-13) Prime Currency was "*previously* owned" by Khanani's brother and routed transactions through KKI "*before* shifting to Placid Express" (emphases added). But Plaintiffs do not allege Placid Express knew this information, which still does not connect Prime Currency to any FTO at the time of the alleged service. *See Honickman,* 6 F.4th at 501. And the Amended Complaint makes no allegation about Prime Currency routing transactions through KKI. *See U.S. ex rel. Siegel v. Roche Diagnostics, Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (holding plaintiff "may not amend" complaint through brief and refusing to consider new allegations).

The Opposition next asserts (at 13) that "Placid Express's Middle Eastern office 'shares multiple phone numbers with'" an unnamed U.S.-sanctioned company owned by "Khanani family members," and makes the impermissible leap that this "suggest[s] that Placid Express and the Khanani MLO entity were either the exact same people, or at least working together in the same space" (Opp. 13). This wild speculation has no basis in the Amended Complaint's allegations,

which the Opposition exaggerates. The Amended Complaint's allegation (¶ 566) involves not "Placid Express's Middle Eastern office," as the Opposition asserts, but a so-called Placid "partner company" (a separately formed LLC). The Opposition does not contest that the Amended Complaint fails to allege Placid Express shared knowledge with its alleged "partner" company or bears liability for its conduct. *See* Mem. 3. This dooms the Opposition's argument that this vague allegation can support a plausible inference that *Placid Express* was generally aware of the unnamed U.S.-sanctioned company's alleged connection to an FTO, much less that *Placid Express* and the unnamed company were "the same exact people" or "working together in the same space."

Nor does the Amended Complaint allege the unnamed company or the unnamed "family members" who owned it were connected to the Khanani MLO or terrorism. *See* Mem. 3-4. The Opposition attempts (at 13 n.4) to add new facts about the name of the company, but Plaintiffs cannot amend their pleading through their brief. *See Roche Diagnostics*, 988 F. Supp. 2d at 343. Besides, the company Plaintiffs identify was not sanctioned for terrorism. *See* U.S. Dep't of the Treasury, *Treasury Sanctions Individuals and Entities as Members of the Altaf Khanani Money Laundering Organization* (Oct. 11, 2016), https://home.treasury.gov/news/press-releases/jl0574 (designating individuals and entities for association with TCO).

*Second*, the Opposition argues (at 14) that transactions "Al Zarooni and other Khanani entities undertook with Placid Express" were "suspicious," and speculates that Placid Express "knew" these transactions were "for money laundering." But the Opposition does not identify one allegation showing Placid Express processed any such transactions or had such knowledge. Instead, the Opposition argues (*id.*) that Placid Express was "exposed to substantially similar information"— "*i.e.*, details of Al Zarooni's accounts and transactions, and about Al Zarooni itself through its customer diligence processes" — as Standard Chartered, another Defendant, which

–5–

was allegedly "able to discern" Al Zarooni's "connection to Khanani, money laundering, and terrorism" based on that information. The Opposition claims (*id.*) "it is a fair inference" that Placid Express "reached the same conclusions." But the Amended Complaint contains no basis to extract such inference. It does not allege Al Zarooni Exchange was a customer of Placid Express, made any transaction through Placid Express, or held an account with Placid Express. *See* Mem. 4, 10-11. Nor does it make any nonconclusory allegation that Placid Express processed transactions for any other "Khanani entity." The Amended Complaint thus fails to plausibly allege Placid Express was exposed to information about "suspicious" transactions from which it could have discerned Al Zarooni Exchange, or any other entity, was connected to the Khanani MLO, let alone any FTO.

> **B.   The Opposition Cannot Overcome The Amended Complaint's Failure To Allege Placid Express Provided Substantial Assistance To Any FTO That Caused Plaintiffs' Injuries**

The Opposition likewise cannot point to any well-pleaded factual allegation to support a plausible inference that Placid Express provided any assistance to any FTO. Long on conclusory statements but admittedly "short" on facts, the Opposition cannot overcome that each *Halberstam* factor points to dismissal.

As the Opposition acknowledges (at 17), the first factor, nature of the act assisted, "requires assessing whether the alleged aid (facilitating the transfer of millions of dollars to the [defendant bank's] customers) . . . would be important to the nature of the injury causing act ([the FTO's] terrorist attacks)." *Honickman*, 6 F.4th at 500 (quoting *Halberstam*, 705 F.2d at 484). Contrary to the Opposition, there is no conflict with this holding and Placid Express's argument (Mem. 13) that the Amended Complaint fails because Plaintiffs do not allege Placid Express "was aware of or encouraged the terrorist attacks, or knowingly provided any funds to any FTO for their violent activities." As Placid Express explained (*id.*), the Amended Complaint does not establish that Placid Express provided any "alleged aid" (i.e., "provided any funds") to any FTO that would be

–6–

"important to" the attacks at issue. The Opposition's argument (at 17-18) that "any money provided to the organization may aid its unlawful goals," only highlights Plaintiffs' admitted failure (*see* Opp. 18) to allege Placid Express transferred any funds that reached any FTO.

The Opposition acknowledges the second factor, amount of assistance, turns on "the amount and type" of alleged aid, which must be "significant." Opp. 18-19 (quoting *Honickman*, 6 F.4th 500; *Atchley*, 22 F.4th at 222). But the Opposition cannot point to one factual allegation showing Placid Express provided any assistance to any FTO, let alone "significant" assistance. The Opposition concedes (at 18) the Amended Complaint "lacks details" about the alleged transactions. In fact, the Amended Complaint makes *no* factual allegations about *any* transactions. The Opposition complains that Plaintiffs are not required to "trace the assistance" from Placid Express to any FTO (and concedes Plaintiffs cannot do so). But this misses the point: the law requires Plaintiffs to plausibly allege the "amount and type" of assistance, and this they cannot do. The Opposition cannot overcome the Amended Complaint's failure to allege facts about the amount of assistance by "plop[ping] upon information and belief" in front of their unsupported conclusions. *See* Mem. 6 (quoting *Citizens United*, 882 F.3d at 384). Nor can Plaintiffs skirt this requirement by arguing "small amounts of money" can fund terrorist attacks; the Amended Complaint fails to plausibly allege Placid Express provided *any* assistance.

The Opposition's argument (at 19) that the fourth factor, relationship with the tortfeasor, does not demand a "direct relationship" with an FTO also misses the point: the Amended Complaint does not plausibly allege "any relationship with any FTO." Mem. 13. And the Opposition ignores *Honickman*'s holding that "the relationship between the defendant and the FTO should not be so attenuated as in *Siegel*," where the defendant's "'relation to the principal' was several steps removed: it allegedly had a commercial relationship with *another bank* that was

linked to *various terrorist organizations* including the FTO that caused the plaintiffs' injuries." 6 F.4th at 501. Plaintiffs' allegations are even more attenuated: entities claiming a relationship with Placid Express were "fronts" for an organization operated by an individual linked to a "Syndicate," composed of various FTOs and non-FTOs, some of which caused some of Plaintiffs' injuries.

The Opposition (at 19) mischaracterizes Placid Express's position as arguing the fifth factor, defendant's state of mind, requires "specific intent." Placid Express made no such argument, but did make clear the Amended Complaint fails on this factor because "it does not allege facts supporting a plausible inference that Placid Express 'knowingly assumed a role' in the attacks or any FTO's activities, or otherwise supported any FTO." Mem. 13. The Opposition concedes "general awareness" is required to meet this factor, but cannot point to any well-pleaded factual allegation to establish knowledge and awareness.

The Opposition concedes (at 20) that the duration of the assistance (sixth factor) is "unknown." The Opposition asserts Placid Express "began providing assistance in 2008," but that assertion is not supported by any well-pleaded fact. The Amended Complaint does not allege Placid Express provided any assistance to Al Zarooni Exchange, or any alleged Khanani MLO front, for any period. *See* Mem. 13. As to Prime Currency, the Opposition insists (at 20) "four years is a significant duration," again missing the point: an alleged "four-year *routine-services* relationship with Prime Currency" (Mem. 13 (emphasis added)), which the Amended Complaint does not link to any FTO, does not support an inference of assisting an FTO over any period.

The Opposition (at 20) dismisses cases cited by Placid Express as decided before JASTA's enactment, ignoring that those courts evaluated the "substantial assistance" element in the ATA context. *See* Mem. 13-14. The Opposition's attempt (at 20) to distinguish *Siegel* highlights the Amended Complaint's deficiencies. In *Siegel*, the defendant had "terminated its relationship"

–8–

(Opp. 20) with the customer at issue; here, the Amended Complaint does not plausibly allege a relationship with Khanani in the first place. In *Siegel*, the alleged customers were "multinational banks" (*id.*); here they are "*fronts* for Khanani's MLO," undermining any inference of *knowing* assistance. *See Honickman*, 6 F.4th at 502. And just like the *Siegel* plaintiffs could not "allege that terrorists received any of the money" (Opp. 20), the Opposition concedes (at 18) the Amended Complaint does not allege Placid Express processed transactions "that reached any FTO."

### C. The Opposition Cannot Overcome Amended Complaint's Failure To Allege That Placid Express Proximately Caused Plaintiffs' Injuries

The Opposition (at 21) misstates *Linde* and would have the Court ignore Second Circuit precedent holding proximate causation is incorporated in the tort concept of substantial assistance. *SPV OSUS*, 882 F.3d at 345 ("Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." (quoting *Cromer*, 137 F. Supp. 2d at 470)). The Second Circuit has expressly relied on *Halberstam* in holding "[w]hether the aid rendered is 'enough' to warrant the imposition of liability is essentially a proximate cause inquiry." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992) (citing *Halberstam*, 705 F.2d at 484).

*Linde* expressly recited the *Halberstam* elements, including the substantial-assistance factors that incorporate the concept of proximate causation. 882 F.3d at 330. *Linde* rejected Arab Bank's argument that evidence presented at a trial solely addressing a primary-liability ATA claim could justify dismissal, as a matter of law, of a new secondary-liability ATA claim. 882 F.3d at 331-32 (recognizing that causation inquiries for primary- and secondary-liability theories focus on different relationships). But nothing in *Linde* undermines the longstanding principle that proximate causation is inherent in *Halberstam*'s substantial-assistance analysis. Thus nothing in *Linde* relieves the Amended Complaint from the requirement to allege facts supporting a plausible

inference that Placid Express's alleged conduct substantially assisted — in other words, proximately caused — the attacks that injured Plaintiffs.

### D. The Opposition Cannot Overcome the Amended Complaint's Failure to Allege Injuries Caused By Attacks Committed, Planned, Or Authorized By An FTO

Contrary to the Opposition (at 23-25), the D.C. Circuit's recent *Atchley* decision supports dismissal where the Amended Complaint offers only conclusory allegations that a designated FTO planned or authorized the attacks that caused Plaintiffs' injuries. As the Opposition notes (at 24-25), *Atchley* found Hezbollah's "planning role" in the attacks at issue there, carried out by non-FTO JAM, "'was particularly evident in attacks using' specific forms of weapons." The Opposition (*id.*) tries but fails to establish that al Qaeda's role in planning the attacks here can likewise be supported by allegations of specific weapons. For example, the Opposition (*id.*) emphasizes al Qaeda's alleged role in encouraging, training for, and planning attacks involving suicide bombings and IEDs. But when it comes to the attacks Plaintiffs allege were carried out either by the Haqqani Network (before it was designated) or the Taliban (not an FTO), those "specific weapons" were not used, undermining any connection between the allegations particular to al Qaeda and the attacks as perpetrated. *See, e.g.*, ¶¶ 1107-11, 1159-63, 1303-07, 1321-25, 1567-71, 1604-08, 1686-90, 1740-44, 1806-10, 1868-72, 1873-77, 1944-47, 1954-58. For authorization, the Opposition acknowledges (at 25) that *Atchley* relied on allegations that Hezbollah "exercised personal authority over JAM's leader," and that JAM's fighters "swore fealty to Hezbollah." But the Opposition cannot point to any such allegations here.

## CONCLUSION

For these reasons and those stated in its opening Memorandum of Law In Support of Its Motion to Dismiss the Amended Complaint, Placid Express respectfully requests that the Court dismiss the Amended Complaint against Placid Express with prejudice for failure to state a claim.

–10–

| | |
|---|---|
| Dated: June 3, 2022<br>Washington, DC | Respectfully submitted,<br><br>**WHITE & CASE**<br><br>/s/ *Claire A. DeLelle*<br>Claire A. DeLelle<br>Matthew S. Leddicotte (*pro hac vice*)<br>Michael Mahaffey (*pro hac vice*)<br>WHITE & CASE LLP<br>701 Thirteenth Street, NW<br>Washington, DC 20005<br>Telephone:   + 1 202 626 3600<br>Facsimile:    + 1 202 639 9355<br>cdelelle@whitecase.com<br>mleddicotte@whitecase.com<br>michael.mahaffey@whitecase.com<br>*Counsel for Placid Express* |