**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---

AUGUST WILDMAN, *et al.*,

        Plaintiffs,

        -v.-

DEUTSCHE BANK
AKTIENGESELLSCHAFT, *et al*.,

        Defendants.

No. 1:21-CV-04400 (HG) (RML)

---

**STANDARD CHARTERED DEFENDANTS'
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

 

Andrew J. Finn (finna@sullcrom.com)
Bradley P. Smith (smithbr@sullcrom.com)
Nicole L. Spaetzel (spaetzeln@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004

*Attorneys for Standard Chartered Bank,
Standard Chartered PLC, and Standard
Chartered Bank (Pakistan) Limited*

June 3, 2022

## **TABLE OF CONTENTS**

                                                                Page

INTRODUCTION .................................................................................................................... 1

    A.    The Opposition Fails To Identify Any Act by Any SCB Defendant That Aided the Persons Who Caused Plaintiffs' Injuries, as JASTA Requires .............. 1

    B.    The Opposition Points to No Allegation Suggesting the SCB Defendants Were Aware They Were Playing Any Role in Terrorism...................................... 3

    C.    The Amended Complaint Fails To Establish Substantial Assistance or Proximate Causation ............................................................................................ 7

    D.    The Opposition Confirms That This Court Lacks Personal Jurisdiction Over SC PLC or SCB Pakistan ............................................................................ 9

CONCLUSION......................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Atchley* v. *AstraZeneca UK Ltd.*,
    22 F.4th 204 (D.C. Cir. 2022)..................................................................................................10

*Bowman* v. *HSBC Holdings PLC*,
    465 F. Supp. 3d 220 (E.D.N.Y. 2020) .......................................................................................7

*Charles Schwab Corp.* v. *Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018).......................................................................................................10

*Halberstam* v. *Welch*,
    705 F.2d 472 (D.C. Cir. 1983)...................................................................................................2

*Honickman* v. *BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ................................................................................................ passim

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021)............................................................................................. passim

*Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013).................................................................................................9, 10

*Linde* v. *Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018).................................................................................................3, 8

*Lotes Co., Ltd.* v. *Hon Hai Precision Industry Co.*,
    753 F.3d 395 (2d Cir. 2014).......................................................................................................4

*O'Sullivan* v. *Deutsche Bank AG*,
    2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ...........................................................................7

*Pension Benefit Guar. Corp.* v. *Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013) ......................................................................................................3

*Rothstein* v. *UBS AG*,
    708 F.3d 82 (2d Cir. 2013).........................................................................................................8

*Rush* v. *Savchuk*,
    444 U.S. 320 (1980)...............................................................................................................4, 7

*Siegel* v. *HSBC Holdings, PLC*,
    2018 WL 501610 (S.D.N.Y. Jan. 19, 2018) ..............................................................................9

## **TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Siegel* v. *HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019)..................................................................................................4, 7

*Strauss* v. *Credit Lyonnais, S.A.*,
    175 F. Supp. 3d 3 (E.D.N.Y. 2016) ...........................................................................................6

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)....................................................................................................10

*Waldman* v. *Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)....................................................................................................10

*Weiss* v. *Nat'l Westminster Bank, PLC*,
    176 F. Supp. 3d 264 (E.D.N.Y. 2016) ......................................................................................9

**Statute**

18 U.S.C. § 2333................................................................................................................................1, 3

**INTRODUCTION**

The Opposition to the Standard Chartered Defendants' Motion to Dismiss (the "Opposition") only confirms that the Amended Complaint should be dismissed because Plaintiffs do not allege any SCB Defendant had any role in the acts of terrorism that injured Plaintiffs or that any SCB Defendant interacted with anyone who committed, planned, or authorized those acts. In addition to containing neither a "short" nor "plain statement of" any claim for relief against any Standard Chartered Defendant (collectively the "SCB Defendants"), as Rule 8(a) of the Federal Rules of Civil Procedure requires,[1] the prolix Amended Complaint also fails to plead the fundamental elements of an aiding-and-abetting claim under JASTA, as defined by the Second Circuit. *See*, *e.g.*, *Honickman* v. *BLOM Bank*, 6 F.4th 487, 494 (2d Cir. 2021).

**A.  The Opposition Fails To Identify Any Act by Any SCB Defendant That Aided the Persons Who Caused Plaintiffs' Injuries, as JASTA Requires.**

JASTA extends liability only to a "person who aids and abets . . . *the person who committed*" the act of terrorism, 18 U.S.C. § 2333(d)(2) (emphasis added). The Opposition points to no fact alleged that plausibly suggests any SCB Defendant aided anyone, directly or indirectly, who "perform[ed] a wrongful act that caused" Plaintiffs' injuries, as JASTA requires. *Honickman*, 6 F.4th at 494. Instead, Plaintiffs argue that unspecified "SCB defendants" must have "aided" a "Syndicate" of terrorist organizations generally based on vague allegations that certain SCB affiliates "provided access" to U.S. Dollars to certain customers around the world who allegedly

---

[1] Plaintiffs contend they "cut[] about 100 pages of materials from the original complaint." (Opp. at 15.) This is highly misleading, as the Amended Complaint is now even longer, spanning 595 pages. (*See*, *e.g.*, AC ¶¶ 246-97 (pages 84-102); 488-90 (adding new disjointed allegations).) Moreover, Plaintiffs have no answer for the Amended Complaint's improper group pleading of the "SCB Defendants" despite the fact that the Amended Complaint identifies each defendant as a separate entity incorporated and/or operating in different jurisdictions around the world. (*See* Opp. at 14-15; *but see* AC ¶¶ 40 (SCB), 42 (SC PLC), 46 (SCB Pakistan).)

supported terrorism (or whose businesses were allegedly used by terrorists), which "enabled the Syndicate's violence in Afghanistan" because terrorists generally used U.S. Dollars to finance their activities. (Opp. at 17-18.) In doing so, Plaintiffs selectively quote language from the Second Circuit's decisions in *Kaplan* v. *Lebanese Canadian Bank*, 999 F.3d 842 (2d Cir. 2021) and *Honickman*, which held that a claim may arise where a "'defendant's acts aided and abetted the principal' who committed the wrongful act" by giving assistance to an "'intermediary' of the principal." 999 F.3d at 856; 6 F.4th at 495-96. (Opp. at 17.) Neither *Kaplan* nor *Honickman* adopted the unbounded intermediary theory of liability asserted in the Amended Complaint here.

To the contrary, the Second Circuit in *Kaplan* found this element satisfied because the bank-defendant's *customers* "were part of H[e]zbollah," which carried out the at-issue attacks. 999 F.3d at 865. And in *Honickman*, the same element was satisfied because the bank-defendant's customers were intermediary fund raising organizations set up directly by Hamas, which carried out the relevant attacks. 6 F.4th 491-93. There is no allegation here that any SCB Defendant customer was part of al-Qaeda or its affiliates, opened an account at the direction of that organization, or was otherwise an intermediary as in *Kaplan* and *Honickman*.

*Halberstam*, which Congress said provides the proper legal framework for a JASTA claim, also is instructive. *See Honickman*, 6 F.4th at 494. There, the defendant lived for many years with the man who committed the principal crime (killing someone during a burglary). *Halberstam* v. *Welch*, 705 F.2d 472, 475-76 (D.C. Cir. 1983). The defendant provided indirect aid (*e.g.*, secretarial services) that enabled the man to commit the injury-causing act, rather than direct aid (*e.g.*, providing the gun), but the court held her liable for aiding and abetting the man's acts. *Id.* Again, here there are no alleged facts suggesting that any SCB Defendant provided any services to the persons who committed the attacks in Afghanistan, directly or indirectly.

This deficiency is particularly apparent with respect to Plaintiffs' allegations concerning services that the SCB Defendants' allegedly provided to certain Iranian entities and groups. (*E.g.*, AC ¶¶ 246-97 (pages 84-102); 488-90.) These allegations all relate to entities with alleged indirect links to Hezbollah, but there are no allegations that Hezbollah, or any of its intermediaries, "committed, planned, or authorized" any attacks here. *See* 18 U.S.C. § 2333(d)(2).

### B. The Opposition Points to No Allegation Suggesting the SCB Defendants Were Aware They Were Playing Any Role in Terrorism.

The Opposition likewise confirms that the Amended Complaint does not allege facts suggesting any SCB Defendant knew that by providing banking services to a customer it was "itself assuming a role in terrorist activities" "at the time that [it] provide[d] the assistance." *Linde v. Arab Bank*, 882 F.3d 314, 329 (2d Cir. 2018) (internal quotation marks omitted). The Opposition seeks to avoid pleading this element by arguing that *Kaplan* pronounced some "lenient" or "permissive standard" that permits claims to proceed even "on fairly tenuous inferences." (Opp. at 19-21.) That is not the law.[2]

> The Second Circuit in *Honickman* confirmed that to plead general awareness:
>
> [T]he complaint must plausibly allege: (1) as a threshold requirement, that [the bank defendant] was aware of [its customers'] connections with [the terrorist organization that committed the attacks] before the relevant attacks; and (2) the [customers] were so closely intertwined with [that terrorist organization's] violent terrorist activities that one can reasonably infer [the bank] was generally aware of its role in unlawful activities from which the attacks were foreseeable while it was providing financial services to [the relevant customers].

*Honickman*, 6 F.4th at 501 (citing *Kaplan*, 999 F.3d at 860)).

---

[2] Even so, the Opposition points only to conclusory allegations for "inferences of 'general awareness.'" (*See* Opp. at 19.) These are insufficient as a matter of law. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013) (noting that the court is "not bound to accept as true" conclusory allegations "couched as a factual allegation").

Contrary to the Opposition's bare assertion that "SCB's customers were more closely intertwined with terrorism than the entities in *Kaplan*" (Opp. at 20), there are no allegations that any SCB Defendant was aware of any customer's connection to al-Qaeda or its affiliates (which committed the attacks), and that the customer was so closely intertwined with those terrorists to infer any awareness that any banking services had a role in al-Qaeda's unlawful terrorist activities. In particular:

*Mustafa Ahmed al-Hisawi, Abdul Baqi Bari, and Viktor Bout.* Plaintiffs concede that the SCB Defendants ceased doing business with these three individuals *years* before the attacks (which occurred between 2011 and 2016), (AC ¶¶ 496, 499, 501-02), "mak[ing] it implausible under the circumstances that [the SCB Defendants] had knowingly assumed a role in the [a]ttacks." *Siegel* v. *HSBC N. Am.*, 933 F.3d 217, 224 (2d Cir. 2019). (*See* MTD at 7-8.) Recognizing this deficiency, Plaintiffs suggest that *Siegel* is no longer good law after *Honickman*, and there need be no temporal connection between a bank's awareness of its customer's role in terrorist activities and when the at-issue attacks occurred. (Opp. at 24.) To the contrary, as set forth above, *Honickman* confirmed that the timing of a bank's awareness of its customer's role in terrorist activities is crucial to pleading a plausible claim. 6 F.4th at 501.[3]

*Hikmatullah Shadman.* The Opposition does not address the Amended Complaint's acknowledgement that SCB and SCB Pakistan ceased doing business with Shadman, a U.S. military subcontractor, in November 2012, years before the Amended Complaint suggests any alleged connection between Shadman and terrorists became public in 2015. (AC ¶¶ 315 (page

---

[3] In any event, the panels in *Honickman* (or *Kaplan*) could not have overruled the *Siegel* decision. *Lotes Co.* v. *Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014).

-4-

166) 481, 483; *see also* MTD at 8.) Thus, there are no allegations that SCB or SCB Pakistan was aware of any connection between Shadman and terrorists when providing banking services.

*U.A.E. Currency Exchanges*. The Opposition relies on allegations about an individual named Altaf Khanani and his alleged support for al-Qaeda, but the Amended Complaint does not allege that any SCB Defendant knowingly facilitated transactions for Khanani. Rather, without specifying what services were provided, the Amended Complaint alleges that SCB's New York and Dubai branches, "SCB London," and SCB Pakistan "provided financial services" to two U.A.E. currency exchanges: Al Zarooni Exchange and Mazaka General Trading, (AC ¶ 458), which Plaintiffs allege were "front" companies for Khanani, who in turn engaged in money laundering that benefited al-Qaeda's and the Haqqani Network's agents. (*Id.* ¶¶ 277 (page 154), 460-62.) Plaintiffs, however, do not allege that any SCB Defendant was aware that either currency exchange customer was a mere "front" for Khanani at the time it provided banking services to that customer. Nor are there allegations that any SCB Defendant was aware that transactions on behalf of either currency exchange were for the benefit of Khanani (let alone terrorists).

The Opposition's reliance on allegations that an unnamed "compliance employee" claimed at some unspecified time that "the bank" was "carry[ing] out USD money-laundering transactions for the Khanani MLO" is misplaced. (Opp. at 20.) There is no allegation that these "transactions" involved either currency exchange.[4] The Amended Complaint acknowledges that Khanani used "a web" of front companies, "spanning the globe," not just Al Zarooni Exchange or Mazaka General Trading, making it entirely speculative to infer SCB or SCB Pakistan was aware

---

[4] The Opposition points only to an insufficient conclusory allegation that "each SCB Defendant knew" of transactions for "Al Zarooni Exchange, which was a Khanani front" (Opp. at 5 (citing ¶ 472)), and the Amended Complaint otherwise simply asserts without factual support that Al Zarooni and Mazaka were among "notorious Khanani-related fronts" (AC ¶ 250).

-5-

those exchanges were engaging in money laundering for the benefit of Khanani or terrorists. (AC ¶ 7; *see also id.* ¶ 250.) Even if the Amended Complaint had alleged that an SCB Defendant had "knowingly provid[ed] material support to" a terrorist organization through its customer—and the Amended Complaint does not do so—this "does not as a matter of law satisfy the general awareness element." *Kaplan*, 999 F.3d at 860; *see also Strauss* v. *Credit Lyonnais*, 379 F. Supp. 3d. 148, 164 (E.D.N.Y. 2019) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement.") *aff'd*, 842 F. App'x 701 (2d Cir. 2021).[5]

***Pakistan Fertilizer Companies.*** The Amended Complaint alleges that SCB and SCB Pakistan provided routine "foreign exchange and export finance services" and "letters of credit" that "enabled" two Pakistani fertilizer companies (Fatima and Pakarab) to do business. (AC ¶¶ 505, 525, 527, 1076.) The Opposition relies heavily on allegations that a U.S. military officer visited SCB's New York branch in 2013 to "communicate" that terrorists were misusing the fertilizer product of those two customers, (Opp. at 8 (citing AC ¶ 529)), and that in 2012 and 2013 members of Congress and others accused Fatima and Pakarab of not doing enough to prevent their products from being misused by terrorists (*see* Opp. at 22). However, there are no allegations that the United States government ever sanctioned Fatima or Pakarab, or designated either fertilizer company as a terrorist organization or front.

In short, Fatima and Pakarab are not alleged to have been so "closely intertwined with [al-Qaeda's] violent terrorist activities" to infer SCB or SCB Pakistan knew that by providing

---

[5] For this same reason, allegations about a German individual (Samir Azizi) fail. The Opposition claims "SCB collaborated" with Azizi, (Opp. at 5), but there are no factual allegations tying Samir Azizi to the attackers or attacks in Afghanistan, let alone any allegations supporting an inference that an SCB Defendant was aware of unlawful activities of terrorists from which attacks were foreseeable by "facilitat[ing]" unspecified "value transfers" for Azizi. (AC ¶ 474.)

routine and lawful banking services, it was taking a role in unlawful activities from which attacks were foreseeable. *Honickman*, 6 F.4th at 501. In fact, the Amended Complaint alleges the opposite—that those companies had a legitimate business of manufacturing fertilizer, a portion of which was calcium ammonium nitrate ("CAN") fertilizer, of which no more than 1% ended up in the hands of persons with "links to [] insurgents." (AC ¶¶ 514-15.) Further, there are no allegations that any trade financing services SCB Pakistan allegedly provided to Fatima or Pakarab were illegal or improper. *Siegel* made clear that such attenuated relationships between a defendant-bank customer and the alleged principal that committed terrorist attacks cannot establish a JASTA claim. 933 F.3d at 220-21, 225. And, although Plaintiffs brush aside the fact that Fatima and Pakarab were engaged in entirely lawful commercial activity (manufacturing fertilizer for legitimate intended usage) (Opp. at 23), the Second Circuit has held such circumstances negate any inference of knowledge that a customer was assisting terrorist attackers. 933 F.3d at 225 ("[P]laintiffs do not allege—even conclusorily—that most, or even many, of [the bank's] services to [its customer] assisted terrorism.").[6]

### C. The Amended Complaint Fails To Establish Substantial Assistance or Proximate Causation.

The Opposition also confirms that the Amended Complaint does not establish the "substantial assistance" element under any of the relevant factors courts consider.

*First*, Plaintiffs argue, tautologically, that the nature of the act the SCB Defendants encouraged here is "terrorism." (Opp. at 25.) However, the only act any SCB Defendant is alleged

---

[6] With respect to Plaintiffs' allegations concerning certain Iranian entities and groups, numerous courts have dismissed substantially similar allegations, even in cases when the attacks were allegedly committed, planned, or authorized by Hezbollah—which is not the case here. *O'Sullivan* v. *Deutsche Bank*, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019); *Bowman* v. *HSBC Holdings*, 465 F. Supp. 3d 220 (E.D.N.Y. 2020). These cases remain good law, despite the Opposition's suggestion otherwise. (*See* Opp. at 24.)

to have engaged in is providing banking services with U.S. Dollars.  There is no allegation that *any* U.S. Dollar that allegedly flowed through any SCB Defendant customer account ever even reached a terrorist organization, let alone assisted in terrorist activities.

*Second*, nothing about the limited allegations concerning the value of U.S. Dollar transactions involving SCB Defendant customers suggests substantial assistance to some terrorist organization. The Opposition simply asserts that somewhere between $13 million and "likely more than $130 million" was "provided" to "al-Qaeda, the Haqqani Network, and their Syndicate allies." (Opp. at 26.)  But the Amended Complaint alleges no fact specifying what any SCB Defendant customer "provided" to any terrorist group from an SCB account.  *See Honickman*, 6 F.4th at 499 (rejecting "fungibility" theory because "aiding and abetting 'requires more than the provision of material support to a designated terrorist organization[.]'" (quoting *Linde*, 882 F.3d at 329)).

*Third*, there is no allegation that any SCB Defendant was present at the time of any attack, or that any SCB Defendant had any relationship with the principal terrorist attackers. *Honickman*, 6 F.4th at 499-500.  Recognizing the attenuated nature of the Amended Complaint's allegations against the SCB Defendants to any terrorist attacker, the Opposition argues "the defendant's conduct need not cause the plaintiff's injury."  (Opp. at 27.)  But this ignores the Second Circuit's ruling that ATA claims include a *proximate* cause limit, such that Plaintiffs' allegations must "plausibly show[] that the moneys [the SCB Defendants] transferred to [their customers] were in fact sent to [al-Qaeda or its affiliates] or that [al-Qaeda or its affiliates] would have been unable to fund the attacks . . . without the cash provided by [the SCB Defendants]." *Rothstein* v. *UBS*, 708 F.3d 82, 96-97 (2d Cir. 2013).  There are no allegations suggesting any of the SCB Defendants' services to its customers were the proximate cause of the attacks, and the Opposition does not point to anything suggesting otherwise.

**D.  The Opposition Confirms That This Court Lacks Personal Jurisdiction Over SC PLC or SCB Pakistan.**

In an attempt to avoid Second Circuit precedents that have found personal jurisdiction over a non-U.S. bank entity in ATA cases only when there are sufficient allegations that entity had "direct dealings with the terrorists that perpetrated the [attacks]" on Americans, *Siegel* v. *HSBC Holdings*, 2018 WL 501610, at *4 (S.D.N.Y. Jan. 19, 2018), Plaintiffs point to three other factors they contend are relevant to pleading jurisdiction over SCB PLC and SCB Pakistan.  None is sufficient.

*First*, Plaintiffs cannot rely on U.S. Dollar clearing services of SCB's New York branch to assert personal jurisdiction over SC PLC or SCB Pakistan.  SC PLC is a bank holding company (AC ¶ 865 n.563; *see also* MTD at 6 & n.5), which by definition does not provide banking services to anyone.  In any case, there are no allegations any clearing services involved "direct dealings" by SC PLC or SCB Pakistan "with the terrorists that perpetrated the [attacks]." *Siegel*, 2018 WL 501610, at *4.  For this reason alone, the Second Circuit's decision in *Licci* and the district court's decision in *Weiss* are entirely distinguishable.[7]  The Opposition points to no allegations that SCB Pakistan (or SC PLC) directly facilitated transactions for any person or group who perpetuated the attacks (*Licci*) or facilitated transactions between a customer and any person or group who perpetuated the attacks (*Weiss*).[8]  Rather, this case is more like *Siegel*.  There, the

---

[7]   In *Licci*, the court exercised jurisdiction over a non-U.S. bank that facilitated transfers through New York *directly* to a terrorist customer. *Licci* v. *Lebanese Canadian Bank*, 732 F.3d 161, 168-74 (2d Cir. 2013).  In *Weiss*, the court exercised jurisdiction over a non-U.S. bank entity that facilitated transactions between a customer and the terrorist group that committed the attacks. *Weiss* v. *Nat'l Westminster Bank*, 176 F. Supp. 3d 264, 271, 280 (E.D.N.Y. 2016).

[8]   The Opposition claims that "SCB provided services directly to terrorist organizations" and that "transactions SCB processed were tantamount to direct support for terrorists" (Opp. at 30), but cites no factual allegations in support.

district court found no basis for jurisdiction over a non-U.S. bank entity that (like SCB here) allegedly facilitated U.S. Dollar transactions in New York for non-U.S. customers who, in turn, aided foreign terrorists. 2018 WL 501610, at *4.

*Second*, Plaintiffs' argument that SC PLC and SCB Pakistan acted as agents for SCB's New York branch relies entirely on lumping together separate entities through their corporate affiliation. As the Supreme Court has held, "the assertion of jurisdiction over [one defendant] based solely on the activities of [another defendant] . . . is plainly unconstitutional." *Rush* v. *Savchuk*, 444 U.S. 320, 331-32 (1980).[9]

*Third*, the Opposition cannot rely on the general effects that terrorist attacks have on the United States to assert blanket jurisdiction over every SCB Defendant. (Opp. at 29.) Indeed, the cases on which Plaintiffs rely acknowledge that a defendant's alleged *indirect* aid to a group that carries out a terrorist attack, even an attack expressly aimed at Americans, is *not* enough to establish that the defendant's conduct was "expressly aimed" at the forum. *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 339 (2d Cir. 2016) (citing *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674-75 (2d Cir. 2013)).

## CONCLUSION

For all the foregoing reasons and those set forth in the SCB Defendants' opening brief, the Amended Complaint fails to state a claim and must be dismissed in its entirety as a matter of law as to each of the SCB Defendants.

---

[9] *See also Charles Schwab* v. *Bank of Am.*, 883 F.3d 68, 84 (2d Cir. 2018) (complaint lumping together entities "insufficiently 'individualized' to make out a prima facie case of personal jurisdiction"). Plaintiffs reliance on *Atchley* v. *AstraZeneca UK*, 22 F.4th 204 (D.C. Cir. 2022), is misplaced because *Atchley* says nothing of jurisdiction based on a parent-affiliate relationship and instead articulates the same standard pronounced by *Licci*. *See* 22 F.4th at 237 (citing *Licci*).

Dated: New York, New York
June 3, 2022

Respectfully submitted,

*/s/ Andrew J. Finn*
Andrew J. Finn (finna@sullcrom.com)
Bradley P. Smith (smithbr@sullcrom.com)
Nicole L. Spaetzel (spaetzeln@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Standard Chartered Bank, Standard Chartered PLC, and Standard Chartered Bank (Pakistan) Limited*