**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUGUST WILDMAN, *et al.*, | |
| Plaintiffs, | |
| v. | **21 Civ. 4400 (HG) (RML)** |
| DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK TRUST COMPANY AMERICAS, STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, STANDARD CHARTERED BANK (PAKISTAN) LIMITED, DANSKE BANK A/S, DANSKE MARKETS INC., PLACID NK CORPORATION d/b/a PLACID EXPRESS, and WALL STREET EXCHANGE LLC, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE DANSKE DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Brian T. Frawley
Amanda Shami
Andrew M. Kaufman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
frawleyb@sullcrom.com
shamia@sullcrom.com
kaufmana@sullcrom.com
Telephone:   (212) 558-4000

*Attorneys for Defendants Danske Bank A/S*
*and Danske Markets Inc.*

June 3, 2022

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................1

I.     Plaintiffs' Complaint Fails Under Federal Rule of Civil Procedure 8. ..............................1

II.    Plaintiffs Fail to Allege Any ATA Claim Against Danske Bank. .......................................2

        A.    The Opposition Fails to Establish Any Contemporaneous Awareness
               by Danske Bank of Its Supposed Role in Terrorism. ..................................................3

               1.    Plaintiffs do not allege that Danske Bank played a role in
                       terrorist violence through the Mazaka Trading transactions. ......................3

               2.    The ATA provides no cause of action for AML deficiencies. .....................5

               3.    Plaintiffs' VAT fraud allegations are meritless. ..........................................7

        B.    Plaintiffs' Opposition Fails to Establish Any Knowing
               and Substantial Assistance by Danske Bank. ...........................................................8

III.    Plaintiffs' Nonsensical RICO Claim Is Legally Deficient. ...............................................10

IV.    Plaintiffs Fail to Allege Personal Jurisdiction Over Danske Bank. ..................................10

CONCLUSION ....................................................................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Banyan* v. *Sikorski*,
    2021 WL 2156226 (S.D.N.Y. May 27, 2021) ...........................................................7

*Brown* v. *Nat'l Bank of Palestine*,
    2022 WL 1155905 (S.D.N.Y. Apr. 19, 2022)....................................................5, 10

*Cabrera* v. *Black & Veatch Special Projects Corps.*,
    2021 WL 3508091 (D.D.C. July 30, 2021)........................................................2, 10

*City of Brockton Ret. Sys.* v. *Avon Prod., Inc.*,
    2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) .........................................................5

*Freeman* v. *HSBC Holdings PLC*,
    465 F. Supp. 3d 220 (E.D.N.Y. 2020) .................................................................6, 9

*Honickman* v. *BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ........................................................................... *passim*

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021)..........................................................................6, 7, 9

*Linde* v. *Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018).......................................................................4, 9, 10

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) .............................................................................2

*Peacock* v. *Suffolk Bus Corp.*,
    100 F. Supp. 3d 225 (E.D.N.Y. 2015) ....................................................................5

*Siegel* v. *HSBC N. Am. Holdings Inc.*,
    933 F.3d 217 (2d Cir. 2019)......................................................................... *passim*

*VTech Holdings Ltd.* v. *PriceWaterhouseCoopers, LLP*,
    2003 WL 21756623 (S.D.N.Y. July 30, 2003) .......................................................1

*Weiss* v. *Nat'l Westminster Bank, PLC*,
    993 F.3d 144 (2d Cir. 2021).......................................................................3, 4, 6, 10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ................................................................................1

## TABLE OF ABBREVIATED TERMS

| Abbreviated Term | Full Term |
|---|---|
| AC or Complaint | Plaintiffs' Corrected Amended Complaint, ECF No. 38 |
| AML | Anti-money laundering |
| ATA | Anti-Terrorism Act, 18 U.S.C. § 2333(d) |
| Danske Bank or Bank | Danske Bank A/S |
| DMI | Danske Markets Inc. |
| Estonia Branch | Danske Bank Estonia Branch |
| FinCEN | Financial Crimes Enforcement Network |
| FTO | Foreign Terrorist Organization |
| JASTA | Justice Against Sponsors of Terrorism Act, 18 U.S.C. § 2333(d)(2) |
| Mazaka Trading | Mazaka General Trading |
| Mem. or Memorandum | Memorandum of Law in Support of the Danske Defendants' Motion to Dismiss the Amended Complaint, ECF No. 44 |
| Mem. Ex. | Exhibit to the Declaration of Brian T. Frawley, dated March 18, 2022,  ECF No. 45 |
| OFAC | U.S. Department of the Treasury, Office of Foreign Assets Control |
| Opp. or Opposition | Plaintiffs' Opposition to the Danske Defendants' Motion to Dismiss the Amended Complaint, ECF No. 58 |
| RICO | Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-68 |
| SDN | Specially Designated National |
| VAT | Value-Added Tax |

## PRELIMINARY STATEMENT

Plaintiffs' Opposition fails to address the many fatal defects in their claims, which require dismissal of this action under well-settled Second Circuit law.

*First*, the Opposition confirms plaintiffs' failure to comply with Rule 8.  Indeed, plaintiffs admit that their undifferentiated pleading fails to allege any claim against DMI (Opp. 1, 9), and they confirm throughout their Opposition that the Complaint co-mingles allegations concerning unconnected events, against unrelated defendants, relating to disparate time periods.  If anything, the Opposition shows that plaintiffs adopted this blunderbuss pleading tactic to mask the defects in their claims, since plaintiffs rest their Opposition wholly on the idea that their ATA claim is adequately pled because terrorism supposedly has an inevitable connection to AML failures.

*Second*, the Opposition ignores both binding Second Circuit law and the complete temporal and factual disconnects in plaintiffs' claims against Danske Bank.  Without one shred of factual or legal support, plaintiffs attempt to convert the ATA into a strict liability statute, where any AML failure amounts to a knowing and intentional aid of any marginally contemporaneous terrorist act.  Yet, courts in this Circuit routinely have dismissed those claims where, as here, plaintiffs allege only AML defects or suspicious money transfers that are factually and temporally removed from the alleged terrorists and terrorism.  Plaintiffs here offer only speculation and innuendo, but plead no facts establishing a plausible claim.

## ARGUMENT

## I.      Plaintiffs' Complaint Fails Under Federal Rule of Civil Procedure 8.

The Opposition serves only to demonstrate why the 595-page, 2,205 paragraph Complaint fails to set forth a short and plain statement of plaintiffs' claims as Rule 8(a) requires. *See VTech Holdings Ltd.* v. *PriceWaterhouseCoopers, LLP*, 2003 WL 21756623, at *1 (S.D.N.Y. July 30, 2003) (dismissing "verbose and repetitious" complaint that is nevertheless

"quite conclusory").  After acknowledging that they never had any basis to sue DMI, plaintiffs concede that their meandering pleading rests on theories rather than facts (Opp. 4), and they declare their ATA claim adequately pled based on nothing more than the assertion that Danske Bank had deficient AML controls "in a high-risk jurisdiction like Estonia" (Opp. 6).  Plaintiffs thus acknowledge that their Compliant contains hundreds of pages of irrelevant allegations, much pasted wholesale from other ATA litigations and having nothing to do with Danske Bank. *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("unnecessary prolixity places an unjustified burden on the court and the responding party").

## II.     Plaintiffs Fail to Allege Any ATA Claim Against Danske Bank.

The Opposition concedes that plaintiffs' effort to plead some connection between Danske Bank and terrorism rests exclusively on two theories, but no facts.  Plaintiffs cite 115 terrorist attacks allegedly carried out by seven sets of terrorist organizations between 2011 and 2016.  Yet plaintiffs' aiding-and-abetting claim rests wholly on (a) a trickle of transactions *during four months in 2014* involving a Danske Bank customer's counterparty, Mazaka Trading, a Dubai company that was *later* reported to be affiliated with a money launderer, Altaf Khanani, and (b) a VAT fraud *during 2009 or 2010*, which plaintiffs say was first reported in *2014 or 2019* to possibly have had some connection to some terrorists, the proceeds of which passed through a Swedish payment platform operator that had an account at Danske Bank.  (Opp. 16–18, 21–22.) These allegations do not establish any plausible claim that Danske Bank "knowingly and substantially assisted the principal act of international terrorism, and [that] the defendant was generally aware of [its] role in the principal act when [it] provided the assistance." *Cabrera* v. *Black & Veatch Special Projects Corps*., 2021 WL 3508091, at *24 (D.D.C. July 30, 2021).

**A.    The Opposition Fails to Establish Any Contemporaneous Awareness by Danske Bank of Its Supposed Role in Terrorism.**

**1.    Plaintiffs do not allege that Danske Bank played a role in terrorist violence through the Mazaka Trading transactions.**

The Opposition does not address—and thus concedes—the most glaring defect in their theory regarding Mazaka Trading:  Plaintiffs do not allege that Danske Bank (or anyone else) was aware of a connection between Mazaka Trading and Khanani *prior to the 2014 transfers*. Plaintiffs assert that Mazaka Trading was "notoriously linked to Khanani" (AC ¶ 538), but that alleged "link" *first arose* on October 11, *2016*, when OFAC designated Mazaka Trading as an SDN.  (Mem. 7.)  As the Second Circuit has ruled, this failure alone defeats plaintiffs' claim. *Honickman* v. *BLOM Bank SAL*, 6 F.4th 487, 502 (2d Cir. 2021) (rejecting claim where bank customers' ties to Hamas were not "public knowledge during the relevant period").[1]

Plaintiffs instead offer only an unpled argument that Danske Bank's knowledge of Mazaka Trading's ties to terrorist financing can be shown because a *different* bank concluded in 2014 that a *different* company, Al Zarooni Exchange, which was a customer of that bank for many years, presented a money laundering risk.  (Opp. 18–19; AC ¶ 463–66.)  This is nonsense. There is no allegation—none—that then-existing public information or anything about Danske Bank's customer's transfers in 2014 with Mazaka Trading revealed some connection to the specific terrorists here.  *Even if* this argument did relate to the same entity and *even if* Mazaka Trading was a customer of Danske Bank—neither of which is the case—claims "that its banking customer '*was believed by some* to have links to . . . terrorist organizations' 'are insufficient to

---

[1]    Plaintiffs also ignore the separate, fundamental defect in their theory that Khanani himself was first associated with terrorists by OFAC in 2015.  (Mem. 13.)  Their claim that Khanani was indicted (and exonerated) in Pakistan in 2008 for money laundering—not terrorism—and that a separate Pakistani money exchange connected to his family had money laundering connections as early as 2001 does not plausibly support plaintiffs' allegation that a Danish bank knew about Khanani's connections to terrorism in 2014.  (*Id.*)

state a claim for aiding-and-abetting liability under JASTA.'"  *Weiss* v. *Nat'l Westminster Bank, PLC*, 993 F.3d 144, 166 (2d Cir. 2021) (citations omitted) (emphasis in the original).

Beyond this, plaintiffs "fail to advance any plausible, factual, non-conclusory allegations that [Danske Bank] *knew or intended* that those funds would be sent to [al-Qaeda] or to any other terrorist organizations.  *This forecloses their JASTA claim*."  *Siegel* v. *HSBC N. Am. Holdings Inc.*, 933 F.3d 217, 224–25 (2d Cir. 2019) (emphasis added).  Instead, plaintiffs offer only an *ipse dixit* citation to their arguments about Khanani's role laundering money for terrorists (and non-terrorists alike).  (Opp. 16; Mem. 6.)  This misses the point entirely.  "[T]o plead adequately the 'general-awareness' element, a plaintiff must plausibly allege that the defendant was 'aware that, by assisting the principal, it is itself assuming a role in terrorist activities.'"  *Siegel*, 933 F.3d at 224 (quoting *Linde* v. *Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)).  But Plaintiffs do not even suggest that Danske Bank knew "it was . . . playing a role in the violent or life-endangering activities."  *Id.* at 224; *Weiss*, 993 F.3d at 166 (affirming dismissal where "no evidence that the charities funded terrorist attacks or recruited persons to carry out . . . attacks").

Plaintiffs cannot resuscitate their claims with an unpled assertion that Mazaka Trading was actually a Danske Bank customer.  Plaintiffs' claim that the Complaint makes this allegation (Opp. 18) is inaccurate.  Instead, the Complaint quotes various news outlets, each of which in turn merely repeats a report from the Danish newspaper *Berlingske Tidende* regarding the FinCEN files leaked in 2020.  (AC ¶ 541 n.352.)  As the article plaintiffs quote makes clear, "the *leaked documents show*, that a customer of Danske Bank's branch, which according to the newspaper has hidden owners," transacted with Mazaka Trading.  (*Id.* (emphasis added)).

Recognizing their allegations about Danske Bank's lack of knowledge of—and lack of direct connection to—Mazaka Trading defeats their case (Mem. 12–13), plaintiffs improperly seek to distance themselves from their own pleading with an altered translation of a German

news article of the same date.  This is both improper,[2] and of no help to plaintiffs.  The referenced German article repeats the same *Berlingske Tidende* report concerning the FinCEN files.  And even if Mazaka Trading were plausibly alleged to have been a customer of Danske Bank—and it is not—the Complaint fails entirely to allege (a) the "threshold requirement, that [the bank] was aware of [its customers'] connections with [the FTO] before the relevant attacks," *or* (b) the separate requirement that the customers "were so closely intertwined with [the FTO's] violent terrorist activities that one can reasonably infer [the Bank] was generally aware of its role in unlawful activities from which the attacks were foreseeable."  *Honickman*, 6 F.4th at 501.

Finally, plaintiffs "do[] not advance any non-conclusory allegation that [an FTO] received any of those funds."  *Siegel*, 933 F.3d at 225.  These 2014 fund transfers in all events cannot possibly support claims for attacks prior to 2014 (101 of the 115 attacks, *see* Mem. Ex. 1), *Brown* v. *Nat'l Bank of Palestine*, 2022 WL 1155905, at *4 (S.D.N.Y. Apr. 19, 2022), and their allegations about how Khanani sometimes processed funds for terrorists says nothing about specific funds transacted by Mazaka Trading.  Moreover, the fact that Danske Bank terminated the Estonia business (AC ¶ 542) further undercuts any argument for general awareness because the decision "not to provide banking services . . . makes it implausible under the circumstances that [the Bank] had knowingly assumed a role in the" terrorist attacks.  *Siegel*, 933 F.3d at 224.

## 2.  The ATA provides no cause of action for AML deficiencies.

Tellingly, plaintiffs argue repeatedly that the existence of a bank with AML deficiencies "in a high-risk jurisdiction" such as Estonia (or, apparently among others, Germany, U.A.E.,

---

[2]     *See City of Brockton Ret. Sys.* v. *Avon Prod., Inc.*, 2014 WL 4832321, at *28 (S.D.N.Y. Sept. 29, 2014) ("Because the article does not reveal the identity or position of the person who provided the information, it is impossible to evaluate its reliability."); *Peacock* v. *Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled that a plaintiff 'cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'")

Russia, or U.K. (AC ¶¶ 203, 211, 232, 621)) alone states an ATA claim because that bank "was invariably financing terrorism." (Opp. 6.) Indeed, the Opposition seeks to presume away every aspect of plaintiffs' significant pleading burden by contending that high-risk banking activities "inevitably" or "necessarily" (Opp. 4, 7, 23) give assistance to terrorists because (i) AML deficiencies facilitate money laundering, (ii) some laundered money is the proceeds of crime, and (iii) some crime is terrorism, ergo a bank with AML defects aided each and every terrorist act roughly contemporaneous with those failures (Opp. 15–16). This syllogism fails.

In *Freeman* v. *HSBC Holdings PLC*, 465 F. Supp. 3d 220, 230 (E.D.N.Y. 2020), this Court ruled that "allegations that Defendants knowingly violated laws that were designed principally to prevent terrorist activity do not allege plausibly a general awareness that Defendants had assumed a role in a foreign terrorist organization's act of international terrorism." Indeed, ATA cases routinely and haphazardly are filed against financial institutions following published reports of AML or compliance failures, and courts in this Circuit consistently have rejected similar claims that a failure of policies designed to prevent criminal financing sufficiently pleads that the bank sought to aid specific terrorists and acts of terrorism. *Siegel*, 933 F.3d at 225–26 (allegation that bank helped its customer "violate banking regulations despite knowing that [it] supported terrorist organizations" insufficient); *Weiss*, 933 F.3d at 166.

Unable to plead any facts in support of their claim, plaintiffs instead seek to contort the governing legal standard by arguing that the Second Circuit in *Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), "rejected" this Court's *Freeman* decision (and, apparently, the Second Circuit's own consistent decisions) holding that AML violations do not show general awareness. Not so. In *Kaplan*, the defendant bank provided customized banking services to five customers who were "integral parts of Hizbollah," which the bank knew because Hizbollah "openly, publicly, and repeatedly acknowledged" that was the case. *Id*. at 862. With

that knowledge established, the Circuit found the general awareness prong met through *further*

allegations that the bank "granted special exceptions to its Hizbollah-related [c]ustomers,

allowing them to deposit" huge sums of money "in knowing violation of banking regulations"

and the "existing sanctions on Hizbollah as a designated FTO." *Id*. It was thus these special

dispensations to customers with publicly-avowed membership in Hizbollah on which the *Kaplan*

court relied. *But see Honickman*, 6 F.4th at 499 n.14 ("knowingly donat[ing] money to a terrorist

organization" insufficient to plead plausible claim under "binding" Second Circuit precedent).

No similar allegation or theory is pled here. Setting aside that absence of any plausible

allegation that Mazaka Trading was a customer of Danske Bank, plaintiffs' overall theory fails.

Unlike the customer-specific AML policy exceptions given to a customer with known terrorist

ties in *Kaplan*, plaintiffs here allege that the Estonia Branch simply lacked AML controls across

the board, unrelated to any terrorists at issue here. (Opp. 26.) By failing to first show that

Danske Bank "was generally aware of its role in an 'overall illegal activity,'" plaintiffs thus

cannot establish some understanding that "an 'act of international terrorism' was a foreseeable

risk." *Honickman*, 6 F.4th at 498.

### 3.  Plaintiffs' VAT fraud allegations are meritless.

Plaintiffs nowhere address the undisputed fact that their allegations about VAT fraud rely

on long after-the-fact "reports" commenting on VAT fraud engaged in by individuals or entities

during 2009 or 2010.[3] Seeking to double-down on these irrelevant allegations, plaintiffs

bizarrely offer to add more references to a later news report *nine years* after the events. (Opp. 22

n.7.) With or without plaintiffs' extraneous details, these claims are completely meritless.

---

[3]     Because the Opposition does not address the allegations of VAT fraud in 2016—which
were not alleged to be related to terrorists and likewise rely only on years after-the-fact reporting
(Mem. 17–18)—plaintiffs have abandoned that claim. *See Banyan* v. *Sikorski*, 2021 WL
2156226, at *2 (S.D.N.Y. May 27, 2021).

Unable to defend the VAT fraud allegations, the Opposition instead seeks to obfuscate them.  As explained in the Memorandum (Mem. 16–17), the 2009 fraud supposedly was carried out through a Swedish payment platform, Swefin, that was then routed "through several banks," including Danske Bank (AC ¶ 552), but *the fraud is not alleged* to have had any connection to terrorists or terrorism, and the Opposition does not contend otherwise.  The 2010 VAT fraud allegations, even when supplemented improperly by a 2019 foreign language news story (that repeats the 2014 Italian language story in the Complaint (Opp. 22 n.7; AC ¶ 553)), are vacuous.  Plaintiffs do not argue that Danske Bank knew in 2010 of any connection between Swefin and terrorism, or between Swefin and VAT fraud.  The 2019 news article cited in the Opposition does not even contend that any funds that had flowed through Swefin's Danske Bank account *were* connected to terrorists; instead, the article notes that "$CO_2$ VAT fraud" had been used for, "among other things," sometimes financing terrorists.  (*Id*.)

In any event, plaintiffs cannot evade controlling authorities by relying on fund transfers *years before* the first challenged attacks in 2011.  (Mem. 18–19.)  Nor can plaintiffs allege general awareness by Danske Bank of some supposed "role in . . . violent or life-endangering activities," *Siegel*, 933 F.3d at 224, by reference to news reports *after* the alleged transactions. *Honickman*, 6 F.4th at 502 n.18 (rejecting "implausible inference" that defendant was aware of terrorism connection before news reports).  These deficiencies alone defeat this theory.

### B.      Plaintiffs' Opposition Fails to Establish Any Knowing and Substantial Assistance by Danske Bank.

Plaintiffs distort the law regarding knowing and substantial assistance to try to bypass the unavoidable conclusion that their complaint fails as a matter of law to state an ATA claim.  To be liable for aiding and abetting, "the defendant must *knowingly and substantially assist* the principal violation."  *Honickman*, 6 F.4th at 494.  Nothing of this sort is alleged, or argued, here.

Instead, plaintiffs' entire argument is that Danske Bank knowingly or ambivalently "facilitated" *money laundering*. (Opp. 24.) That is not remotely sufficient. *Siegel*, 933 F.3d at 225 (must "advance a[] non-conclusory allegation that" the bank "knew or intended that" the FTO "would receive the funds"); *Freeman*, 465 F. Supp. 3d at 233 (collecting cases). Despite plaintiffs' contention that the Complaint addresses five of the six factors for pleading knowing and substantial assistance (Opp. 24), plaintiffs' arguments are meritless.[4] *See Linde*, 882 F.3d at 329.

**No Encouragement**. Contrary to plaintiffs' argument (Opp. 24), *Honickman* did not overrule prior Second Circuit authority, but rather held that this factor examines whether the aid was "important to the nature of the injury-causing [terrorist] act." 6 F.4th at 500. Where, as here, it is not established that the bank was aware of its customer's role in terrorist *violence*, allegations of AML control lapses are not important to an FTO's commission of a terrorist attack. *Siegel*, 933 F.3d at 225; *cf. Kaplan*, 999 F.3d at 866 (where customer's role in terrorism was known, policy exceptions tailored to assist sanctions avoidance can be important).

**Any Assistance Was Tangential and Insubstantial.** Rather than support the claim of alleged substantial assistance, the Opposition instead further separates Danske Bank from any act of terrorism, now contending that unspecified funds flowed from Danske Bank through at least four intermediaries, before supposedly landing with unspecified terrorists. (Opp. 25.) Plaintiffs nowhere allege or argue that Danske Bank "recognized the money it transferred to its customers would be received by the FTO," which rules out this factor. *Honickman*, 6 F.4th at 500.

**No Connection to the FTOs or the Attacks**. The Opposition confirms that the third, fourth, and fifth factors defeat plaintiffs' claim. Plaintiffs concede Danske Bank was not "present" (Opp. 25), and the "relation to the principal" prong is not established by a bank

---

[4]     None of plaintiffs' arguments on knowing and substantial assistance relate to their VAT fraud theory. They therefore have abandoned the claim. *See supra*, n.3.

"several steps removed" from the principal. *Honickman*, 6 F.4th at 500. And plaintiffs' claim that the Bank's AML lapses were not "routine" misses the point; because plaintiffs contend that the AML controls in Estonia were universally absent, Danske Bank is thus not alleged—nor can it be—to have bent its rules to aid any terrorists. (Opp. 26.) That is the rock on which plaintiffs' theories founder. Because Plaintiffs' claims rest on a handful of fund transfers in 2014, that the Estonia Branch AML policies were allegedly deficient "for nearly a decade" (*id.*) is irrelevant. *Siegel*, 933 F.3d at 225 (25 years "bespeaks a lengthy [customer] relationship but not necessarily of assistance in terrorism"). Simply, the *challenged transactions* were many steps removed from any alleged terrorism and insignificant in substance and duration. *Weiss*, 993 F.3d at 166 (bank not shown to have assisted FTO merely by assisting intermediary).

**No Intent to Aid Terrorism**. Plaintiffs concede that they pled no specific intent to aid terrorism. (Opp. 26.) Their assertion that intent is inessential is beside the point, as the intent factor looks at the presence of such intent, *Linde*, 882 F.3d at 329 n.10, which is absent here.

## III.    Plaintiffs' Nonsensical RICO Claim Is Legally Deficient.

The Complaint includes an unintelligible claim under the ATA for "Aiding-And-Abetting Liability, RICO Predicate." (AC ¶¶ 2034–43.) Rather than explain the theory or offer any statute or case in support, plaintiffs declare the claim is immune from dismissal because Danske Bank dispensed with this perfunctory claim as lacking statutory support. (Opp. 13–14; Mem. 22 n.5.) But it is plaintiffs' obligation to demonstrate the sufficiency of their claim, and they have not done so. *See Cabrera*, 2021 WL 3508091, at *26 (rejecting similar claim by same counsel).

## IV.    Plaintiffs Fail to Allege Personal Jurisdiction Over Danske Bank.

The lengthy jurisdictional arguments in the Opposition miss the mark. The only question here is whether the Complaint sufficiently alleges contacts by Danske Bank with the United States in connection with the claims pled. It does not. *Brown*, 2022 WL 1155905, at *2-*3.

## <u>CONCLUSION</u>

For the foregoing reasons, the Danske Defendants respectfully request that this Court

dismiss the Complaint with prejudice.


Dated:  June 3, 2022

Respectfully submitted,

 */s/  Brian T. Frawley*
Brian T. Frawley
Amanda Shami
Andrew M. Kaufman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

*Attorneys for Defendants Danske Bank A/S and Danske Markets Inc.*