**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUGUST WILDMAN, *et al.*,<br><br>                Plaintiffs,<br><br>    v.<br><br>DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK TRUST COMPANY AMERICAS, STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, STANDARD CHARTERED BANK (PAKISTAN) LIMITED, DANSKE BANK A/S, DANSKE MARKETS INC., PLACID NK CORPORATION d/b/a PLACID EXPRESS, and WALL STREET EXCHANGE LLC,<br><br>                Defendants. | **21 Civ. 4400 (HG) (RML)**<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF WALL STREET EXCHANGE**
**LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Stephen M. Baldini (sbaldini@akingump.com)
Erica E. Holland (eholland@akingump.com)
David Giller (dgiller@akingump.com)
One Bryant Park
New York, NY 10036-6745
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

*Counsel for Defendant Wall Street Exchange LLC*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

      A.    Wall Street Exchange ...........................................................................2

      B.    Plaintiffs' Amended Complaint ............................................................2

      C.    Service of Process ................................................................................6

ARGUMENT .........................................................................................................................7

    I.    WSE SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS ..........................................................................................................7

    II.    THE COURT LACKS PERSONAL JURISDICTION OVER WSE ...................12

      A.    New York's Long-Arm Statute Does Not Provide Personal Jurisdiction ............................................................................................12

      B.    Exercising Jurisdiction Over WSE Would Violate Due Process ...............14

    III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED ON THE MERITS ..............................................................................................................16

      A.    The Amended Complaint Fails Basic Pleading Standards .........................16

      B.    The Amended Complaint Fails To State A Claim .....................................17

          i.    *Plaintiffs' Amended Complaint cannot establish aiding and abetting liability.* .........................................................................18

              a.    *Plaintiffs fail to establish WSE was generally aware it was playing a role in terrorist activities.* .......................18

              b.    *Plaintiffs fail to plausibly allege that WSE knowingly provided substantial assistance to anyone who committed the attacks.* .......................................................20

          ii.    *Plaintiffs fail to plausibly link WSE to any attack or FTO.* ...........24

CONCLUSION .....................................................................................................................25

# TABLE OF AUTHORITIES

## CASES:

*Ahluwalia v. St. George's Univ., LLC*,
 63 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).............................................................................17, 25

*Associations Inc. v. Associa Menasa Inc.*,
 No. 3:16-cv-3480, 2017 WL 11617417 (N.D. Tex. July 21, 2017)........................................11

*Atchley v. AstraZeneca UK Ltd.*,
 22 F.4th 204 (D.C. Cir. 2022)........................................................................18, 20

*Averbach v. Cairo Amman Bank*,
 No. 19-CV-4 (GHW) (KHW), 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020).........21, 22, 23, 24
 No. 19-CV-0004-GHW-KHP, 2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022) ...........18, 19, 22

*Bernhardt v. Islamic Republic of Iran*,
 47 F.4th 856 (D.C. Cir. 2022)........................................................................19, 23

*Brady v. Basic Rsch., L.L.C.*,
 101 F. Supp. 3d 217 (E.D.N.Y. 2015) ...................................................................12

*Brill v. Chevron Corp.*,
 No. 15-CV-4916 (JD), 2018 WL 3861659 (N.D. Cal. Aug. 14, 2018) ................................21

*Bugliotti v. Republic of Arg.*,
 952 F.3d 410 (2d Cir. 2020)............................................................................9

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985).................................................................................15

*Cabrera v. Black & Veatch Spec. Projects Corps.*,
 No. 19-CV-3833-EGS-ZMF, 2021 WL 3508091 (D.D.C. July 30, 2021) .................22, 23, 24

*Copeland v. Twitter, Inc.*,
 352 F. Supp. 3d 965 (N.D. Cal. 2018) ...................................................................24

*Dickerson v. Napolitano*,
 604 F.3d 732 (2d Cir. 2010)............................................................................7

*Eyeking, LLC v. JSS, LLC*,
 321 F. Supp. 3d 326 (E.D.N.Y. 2018) ...................................................................12

*Freeman v. HSBC Holdings PLC*,
 465 F. Supp. 3d 220 (E.D.N.Y. 2020) ...............................................................20, 21

*Giusto v. Rose & Womble Realty Co., LLC,*
    No. 15-cv-5249, 2016 WL 4544038 (E.D.N.Y. Aug. 31, 2016) ............................................14

*Goldman v. Belden,*
    754 F.2d 1059 (2d Cir. 1985)........................................................................................................19

*Gmurzynska v. Hutton,*
    257 F. Supp. 2d 621 (S.D.N.Y. 2003)........................................................................................16
    355 F.3d 206 (2d Cir. 2004)........................................................................................................16

*Group One Ltd. v. GTE GmbH,*
    523 F. Supp. 3d 323 (E.D.N.Y. 2021) ........................................................................................7

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983)........................................................................................18, 21, 22

*Honickman for Est. of Goldstein v. BLOM Bank SAL,*
    432 F. Supp. 3d 253 (E.D.N.Y. 2020) ........................................................................................21, 23

*Honickman v. BLOM Bank SAL,*
    6 F.4th 487 (2d Cir. 2021) ........................................................................................19, 20, 22

*In re Terrorist Attacks on Sept. 11, 2001,*
    464 F. Supp. 2d 335 (S.D.N.Y. 2006)........................................................................................17
    538 F.3d 71 (2d Cir. 2008)........................................................................................................15, 16
    714 F.3d 659 (2d Cir. 2013)........................................................................................................16

*Jazini v. Nissan Motor Co., Ltd.,*
    148 F.3d 181 (2d Cir. 1998)........................................................................................................16

*Jiggetts v. District of Columbia,*
    319 F.R.D. 408 (D.D.C. 2017)........................................................................................................17

*Kalderon v. Finkelstein,*
    495 F. App'x 103 (2d Cir. 2012) ........................................................................................16

*Kaplan v. Lebanese Canadian Bank, SAL,*
    999 F.3d 842 (2d Cir. 2021)........................................................................................................21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    732 F.3d 161 (2d Cir. 2013)........................................................................................................12, 14

*Linde v. Arab Bank, PLC,*
    882 F.3d 314 (2d Cir. 2018)........................................................................................................18, 22

*Nabulsi v. Nahyan,*
    No. 06-cv-2683, 2009 WL 1658017 (S.D. Tex. June 12, 2009)........................................10, 11

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*,
    No. 10-cv-1777, 2011 WL 381612 (E.D.N.Y. Feb. 2, 2011) ................................................16

*O'Sullivan v. Deutsche Bank AG*,
    No. 17 CV 8709-LTS-GWG, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ........................17

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987)............................................................................................................................7

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008)............................................................................................14

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988)..............................................................................................17

*Samantar v. Yousuf*,
    560 U.S. 305 (2010)........................................................................................................15

*Sidik v. Royal Sovereign Int'l, Inc.*,
    No. 17-cv-7020, 2020 WL 5441306 (E.D.N.Y. Sept. 10, 2020) ............................................12

*Siegel v. HSBC N. Am. Holdings, Inc.*,
    2018 WL 501610 (S.D.N.Y. Jan. 19, 2018) ..................................................................13
    933 F.3d 217 (2d Cir. 2019)...................................................................19, 22, 23, 24

*Singer v. Bank of Palestine*,
    No. 19-cv-006, 2021 WL 4205176 (E.D.N.Y. Apr. 30, 2021)................................................14

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006)............................................................................................13

*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014) ...............................................................................17, 19

*Tung v. Hemmings*,
    No. 19-cv-5502, 2021 WL 4147419 (E.D.N.Y. Sept. 13, 2021) ............................................9

*United States v. John*,
    No. 18-cv-5045, 2020 WL 4915371 (E.D.N.Y. Aug. 21, 2020) ............................................10

## STATUTES:

8 U.S.C.
    § 1189..............................................................................................................................18

18 U.S.C.
    § 2333(d) ..........................................................................................................................2
    § 2333(d)(2) ...............................................................................................................17, 24

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 854
(2016).................................................................................................................................2, 18

**OTHER AUTHORITIES:**

FED. R. CIV. P.
    4.................................................................................................................................7, 11
    4(f).............................................................................................................................7, 8
    4(f)(2)(A)........................................................................................................................8
    4(f)(2)(B)........................................................................................................................8
    4(f)(2)(C)........................................................................................................................8
    4(h).............................................................................................................................7, 8
    4(h)(2)..............................................................................................................................7
    4(k).........................................................................................................................14, 15
    8............................................................................................................................16, 17
    8(a)(2)............................................................................................................................16
    8(d)(1)............................................................................................................................16
    12(b)(2)..........................................................................................................................12
    12(b)(5)............................................................................................................................7
    12(b)(6)..........................................................................................................................17
    44.1...................................................................................................................................9

N.Y. C.P.L.R.
    § 302...............................................................................................................................12

U.S. Dep't of State, *Foreign Terrorist Organizations* (last visited Oct. 20, 2022) ........................4

## INTRODUCTION

Wall Street Exchange Centre LLC ("WSE")[1] unequivocally condemns the heinous acts of violence committed against American service members and civilians described in Plaintiffs' Corrected Amended Complaint (ECF No. 38) (the "Amended Complaint" or "AC").  WSE's present motion is in no way intended to deny the suffering of Plaintiffs, their families, and all those who have suffered at the hands of terrorists.  Plaintiffs' desire to hold someone accountable for the harm done to them and their families is understandable, but their lawsuit against WSE is misplaced. WSE had nothing to do with the attacks against Plaintiffs and cannot be held responsible for Plaintiffs' pain and suffering.  WSE has never aided or abetted any terrorist or act of terrorism and does not knowingly sponsor, finance, or support terrorism in any way.

Plaintiffs' misplaced pursuit of relief is evidenced by the lack of factual allegations that tie WSE to any misconduct traceable to Plaintiffs injuries.  The Amended Complaint is all but impossible to follow, riddled with inconsistent claims as well as vague and conclusory allegations that fall short of any viable theory of liability against WSE.  The paltry allegations made directly against WSE are predicated on the following theory:  an international money laundering organization—obscuring its identity and conduct to support terrorists—utilized unnamed individuals and made undescribed transactions allegedly using WSE's services at unknown locations on unknown dates.  Plaintiffs list dozens of individuals and organizations to build an attenuated chain of connections, none of which reach WSE.

Plaintiffs' claims against WSE should be dismissed with prejudice for three independent reasons:  (1) Plaintiffs have not properly served WSE; (2) this Court lacks personal jurisdiction

---

[1] The Amended Complaint refers to Wall Street Exchange LLC, however; the correct name is Wall Street Exchange Centre LLC.

1

over WSE; and (3) Plaintiffs have failed to state a viable claim for aiding and abetting under the Anti-Terrorism Act.

## FACTUAL BACKGROUND

### A.   Wall Street Exchange

The factual allegations against WSE make up a very small portion of the Amended Complaint.  WSE is a licensed UAE-based money remitter that helps consumers easily transfer funds to friends and family around the world.  Though WSE processes these funds, it is not a bank and does not hold accounts for any customer.  WSE processes approximately 1.5 million transactions each year, about 3,700 transactions daily.  These transactions amount to approximately 7 million AED processed on a daily basis and 2.6 billion AED annually.  Hundreds of thousands of individuals and businesses utilize WSE's services.  The Amended Complaint alleges merely that WSE is a "licensed U.A.E.-based money transmitter that focuses its business on facilitating U.S. Dollar transactions between the United States and customers in mostly high-risk geographies overseas."  AC ¶ 71.

WSE is headquartered in Dubai and wholly owned, through the Emirates Post Group, by the UAE government.  Declaration of Amit Kumar Choudhary ¶¶ 2-3 ("Choudhary Decl."); *see also* AC ¶ 72.  WSE has no branch, other place of business, or employees in the United States. Choudhary Decl. ¶¶ 6-7.  Among other things, WSE routes U.S. dollars through a number of different locations around the world.  *See id.* ¶ 5.

### B.   Plaintiffs' Amended Complaint

Plaintiffs are American service members and civilians (or their families) who were killed or wounded in Afghanistan between 2011 and 2016 in various terrorist attacks.  AC ¶ 1.  They assert two claims against all Defendants for aiding and abetting terrorist attacks in violation of the Anti-Terrorism Act of 1992 ("ATA"), 18 U.S.C. § 2333(d), as amended by the Justice Against

Sponsors of Terrorism Act, Pub. L. No. 114-222, § 4(a), 130 Stat. 854 (2016) ("JASTA").[2]  But because Plaintiffs make hundreds of imprecise and vague allegations against "Defendants," it is all but impossible to determine which allegations make up those claims—never mind which relate specifically to WSE.  Plaintiffs appear to allege that WSE (as well as various other Defendants) aided and abetted al-Qaeda, the Haqqani Network, the Taliban, Lashkar-e-Taiba, Jaish-e-Mohammed, D-Company, Altaf Khanani, and Atlaf Khanani's money laundering organization. AC ¶¶ 277 (p. 154), 574-90, 949-63, 1024.

In an effort to satisfy the requirement that the acts complained of were committed, planned, or authorized by a designated foreign terrorist organization ("FTO"), Plaintiffs allege WSE aided and abetted acts of international terrorism committed by an alleged "Syndicate," a "terrorist syndicate led by al-Qaeda and the Haqqani Network, the most extreme faction of the Taliban."  AC ¶ 1.[3]  In a series of inconsistent allegations, Plaintiffs broadly claim that the attacks in which they were injured were committed by some varying array of Syndicate members.  For instance, they allege that "most" attacks were committed "directly" by al-Qaeda working "either alone or in joint cells with other Syndicate members."  AC ¶ 85.  But at other times, they allege that each "act of international terrorism" was committed by "the Taliban, including its Haqqani Network, or jointly committed by the Taliban and al-Qaeda."  AC ¶ 1098.  Then, in enumerated paragraphs describing specific attacks against each Plaintiff, the Amended Complaint mentions only the Haqqani Network, al-Qaeda, Lashkar-e-Taiba, the Kabul Attack Network, or the Taliban.  AC ¶¶ 1101-2024.

---

[2] Count I is captioned as "attack predicate" and Count II is captioned as "RICO predicate."  Plaintiffs, however, do not allege a RICO claim and the RICO statute does not serve as a basis for an ATA claim.  Although Plaintiffs fail to describe the nature of their claim based on the "RICO predicate," both Counts fail because Plaintiffs do not adequately plead the elements of an aiding and abetting claim under the ATA.

[3] Plaintiffs also define the Syndicate as a joint venture of terrorists led by al-Qaeda that includes al-Qaeda, the Taliban, Lashkar-e-Taiba, Jaish-e-Mohammad, and D-Company.  AC ¶ 89.

Consequently, the Amended Complaint ties only three FTOs to a specific attack:  (i) the Haqqani Network, designated on September 19, 2012; (ii) al-Qaeda, designated on October 8, 1999; and (iii) Lashkar-e-Taiba, designated on December 26, 2001.  U.S. Dep't of State, *Foreign Terrorist Organizations*, https://www.state.gov/foreign-terrorist-organizations/ (last visited Oct. 20, 2022).  Yet even in that regard, the Amended Complaint alleges attacks committed solely by the Haqqani network before it was designated as an FTO and attacks by joint cells of FTO and non-FTO organizations.  As to other entities mentioned in the Amended Complaint, the Taliban has never been designated an FTO.  Plaintiffs also never tie Jaish-e-Mohammed (designated an FTO on December, 26, 2011 and named as a member of the Syndicate) or D-Company (a non-FTO named as a member of the Syndicate) to a specific attack against any named Plaintiff.  *See* AC ¶¶ 1101-2024.  Similarly, Plaintiffs allege summarily that WSE "aided" Jaish-e-Mohammed and D-Company since 2008.  AC ¶ 1024.  WSE was not involved with these groups or any of the alleged attacks on Plaintiffs.

Plaintiffs also tie several organizations and individuals to the Syndicate, AC ¶¶ 83, 288-97 (pp. 157-61), 348 (p. 177),[4] but do not allege that WSE conducted financial transactions for these entities.  Nor do they allege that WSE was connected in any way to the vast majority of the alleged terrorist schemes, including the VAT (value-added-tax) fraud schemes;  the Russian, Moldovan, and Azeri money laundering schemes;  and the fertilizer bomb plots.  AC ¶¶ 175, 354-58 (pp. 180-82), 505-32.  Instead, Plaintiffs' only specific allegations directed at WSE state that WSE laundered money for Altaf Khanani and the Khanani Money Laundering Organization ("Khanani MLO"), and thereby facilitated transactions involving "known or suspected Syndicate fronts, operatives and/or agents," which in turn facilitated the Syndicate's terrorist acts.  AC ¶¶ 574-78,

---

[4] Because the paragraphs in the Amended Complaint are mis-numbered, WSE uses page numbers for numbered paragraphs that are duplicated.

581-82.  They do not allege, however, that Khanani, the Khanani MLO, or any Khanani-related front is an FTO, and therefore do not allege that WSE conducted financial transactions for any FTO.  Plaintiffs allege that through the Khanani MLO, WSE "aided al-Qaeda, the Taliban, Lashkar-e-Taiba, Jaish-e-Mohammed, and D-Company since at least 2008" and "provided essential services that directly benefited the Syndicate from at least 1995 through 2016."  AC ¶¶ 574, 1024.  There are no allegations as to the date, location, or dollar amount of any particular transaction or details as to the nature of the "essential financial services" WSE allegedly provided to benefit the Syndicate or any FTO.

Plaintiffs provide only a single example of an alleged tie between WSE and the Khanani MLO—that an agent of the Khanani MLO, Farzam Mehdizadeh, was allegedly in possession of "evidence of international wire transfers via Wall Street Exchange."  AC ¶ 947.  Plaintiffs provide no detail as to where the money was allegedly transferred from or to, how much money was transferred, when the transfers were made, or how many transfers occurred.  Plaintiffs also do not state whether Mehdizadeh personally made the alleged transfer, and they rely on unidentified or vague sources that were published years after the injury-causing attacks occurred.  *See, e.g.*, AC ¶¶ 579-80 (citing to statements made by unidentified Australian official at an unidentified time); AC ¶¶ 947-48 (referencing, without sources, information that (if true) would not have been publicly available until 2016 or later).

Plaintiffs allege that WSE was "generally aware" of the role it played in the unlawful activities of the Syndicate and "knowingly" allowed the Khanani MLO to launder money to assist the Syndicate.  AC ¶¶ 952, 959, 1016.  Those allegations, however, are derived not from specific facts, but from the "nature, counterparties, and sheer volume of transactions," AC ¶ 953; *see*

AC ¶¶ 954-55 ("[T]he Khanani MLO's transfers . . . were inherently illegal in and of themselves, so [WSE] knew of its role in an illegal activity."), or rest on information and belief, AC ¶ 956.

Plaintiffs allege that WSE "had a culpable mental state because it knew that Khanani and the Khanani MLO was using Wall Street Exchange facilities to launder money." AC ¶ 1016. However, Plaintiffs provide no specific examples showing that WSE knew during the relevant time period that any FTO used WSE's services. Indeed, they instead allege that the entities connected to FTOs went to great lengths to use "fronts," "agents," and "covers" to conceal their identities and terroristic purposes. *See, e.g.*, AC ¶ 250 (p. 142), 269 (p. 150), 688. Plaintiffs do not specifically allege that WSE held accounts for these groups, nor do they allege any false names or identities used for any purported transaction.

Plaintiffs also allege that Defendants, generally, provided substantial assistance by routing at least several million U.S. dollars in terrorist finance to the Syndicate from 2008 through 2016. AC ¶ 582, 980. Though Plaintiffs allege that the amount of money, and concealment of the same, were significant, AC (p. 395), they provide just one example of an individual possibly using WSE's services at an unspecified time to transfer an unspecified amount of money, AC ¶ 947.

## C. Service of Process

On April 8, 2022—more than eight months after bringing suit—Plaintiffs filed what purports to be an affidavit of service, signed by "Mr. Bilal Tahir Malik" in his capacity as a "Process Server." ECF No. 39, at 1. The affidavit claims (by checking various generic boxes) that WSE was "Served Successfully" in the UAE on September 28, 2021, and names the "Person Served" as "Shajahan (Last name refused)." *Id.* However, on October 5, 2021—prior to filing this affidavit, but after the date of alleged service—Plaintiffs represented to the Court in a "Stipulation and [Proposed] Order Regarding Service and Preliminary Scheduling Matters" that

"defendant Wall Street Exchange LLC has not been served with the Complaint."  ECF No. 15-1, at 2 (alteration in original).

**ARGUMENT**

**I.    WSE SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS**

As a threshold matter, WSE should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(5) because Plaintiffs have failed to effectuate proper service.  Although Plaintiffs filed what purports to be a proof of service on the docket (ECF No. 39), that document is *facially* deficient and does not constitute prima facie evidence that WSE was properly served.  *See, e.g.*, *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (emphasizing that properly filed affidavit of service "must aver facts that, 'if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant,'" and that plaintiff may not rely on "conclusory statements"); *see also Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) ("[P]laintiff bears the burden of proving adequate service.").  Accordingly, this Court should dismiss the Amended Complaint as to WSE under Rule 12(b)(5).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  The procedure for service on foreign entities like WSE (located in the UAE) is set forth in Rule 4(h), which provides that service outside the United States may occur "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  FED. R. CIV. P. 4(h)(2); *see also Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 (E.D.N.Y. 2021) ("In deciding a motion to dismiss pursuant to Rule 12(b)(5), a court considers whether the plaintiff has complied with Rule 4 of the Federal Rules of Civil Procedure, which governs the content, issuance and service of a summons.").  Rule 4(f), in turn, provides that, in the absence of an international agreement concerning service (which does not exist between the

UAE and the United States) or a court order providing relief on service (which Plaintiffs have

never sought), service must be effectuated by one of the following means:

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

> (C) unless prohibited by the foreign country's law, by:

>> ***

>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt . . .

FED. R. CIV. P. 4(f)(2)(A)-(C) (omitting personal delivery provision, per Rule 4(h)).

Here, Plaintiffs' affidavit of service (which is contradicted by a stipulation Plaintiff filed

approximately one week after the affidavit's date of purported service) claims that WSE was

"Served Successfully" at its UAE office on September 28, 2021, by a "Process Server."  ECF No.

39, at 1.  Obviously, such service does not fall within the provisions of Rule 4(f) relating to letters

rogatory or forms of mail addressed and sent by the Clerk of Court (if even permitted by UAE

laws).  Consequently, Plaintiffs must show that their chosen method of service is "prescribed by

the [UAE's] law for service in that country in an action in its courts of general jurisdiction."  FED.

R. CIV. P. 4(f)(2)(A).

Plaintiffs' conclusory affidavit of service does not even attempt to demonstrate consistency

with UAE law.  Most notably, while the affidavit identifies the "Process Server" as "Mr. Bilal

Tahir Malik," ECF No. 39, at 1, it does not provide any information establishing that such an

individual is an authorized process server under UAE law.  As explained in the declaration of

Dr. Faraj A. Ahnish of Hadef and Partners LLC, Article 3 of Cabinet Resolution No. 57 of 2018

(the "2018 Regulations")—which replaced Article 5 of the original Federal Law No. 11 of 1992—

8

restricts the persons or entities that may serve process to:  (i) public officials appointed by a

competent authority; (ii) the litigant or his agent when specifically authorized by a relevant UAE

court; or (iii) a company or private office that holds a contract with the UAE Ministry of Justice.

*See* Declaration of Dr. Faraj A. Ahnish ¶¶ 10-14, 17-19 ("Ahnish Decl."); *see also* Fed. R. Civ. P.

44.1 ("In determining foreign law, the court may consider any relevant material or source,

including testimony, whether or not submitted by a party or admissible under the Federal Rules of

Evidence."); *see Bugliotti v. Republic of Arg.*, 952 F.3d 410, 413-14 (2d Cir. 2020) (discussing

operation of Rule 44.1).  Plaintiffs' affidavit of service does not provide any basis for concluding

that Mr. Malik falls into any of those categories, and in Dr. Ahnish's considered view, no such

basis exists.  *See* Ahnish Decl. ¶¶ 15-16, 19, 36-37, 40.

Plaintiffs' affidavit of service also suggests several other fundamental deficiencies under

UAE law.  For example, under the 2018 regulations, a process server must obtain "[t]he name of

the person" accepting service, including "his surname, signature, seal or fingerprint as

acknowledgment of receipt"—none of which Plaintiffs have provided.  *Id*. ¶¶ 21-27, 38.  On its

face, the affidavit indicates that the process server failed to obtain Shajahan's "Last name" because

that information was "refused."  ECF No. 39, at 1.  In addition, there is *no* explanation for the

conclusory assertion that "Shajahan (Last name refused)" was an "Authorized Agent" of WSE,

which under UAE law would be the company's general manager/chief operating officer (neither

of whom is named "Shajahan") or an individual with a duly notarized power of attorney.  *See*

Ahnish Decl. ¶¶ 31, 38.  "Courts in this circuit consistently decline to find affidavits adequate to

establish service on a corporate defendant when the individual served is not identified and the

affidavit fails to explain the basis for the affiant's conclusion that the individual served was

authorized to accept service for the corporation."  *Tung v. Hemmings*, No. 19-cv-5502, 2021 WL

4147419, at *3 (E.D.N.Y. Sept. 13, 2021); *see United States v. John*, No. 18-cv-5045, 2020 WL 4915371, at *2 (E.D.N.Y. Aug. 21, 2020) ("[A]n affidavit may be insufficient proof when it fails to explicitly indicate how the process server knows . . . that the individual being served has authority to accept service.").

Further still, UAE law requires service of process to be effected in Arabic, whereas here the purportedly served documents are in English—a "clear violation of Article 4 of the Civil Procedures Law." Ahnish Decl. ¶¶ 28, 38, 40. The affidavit of service is also suspect in light of the fact that the notary public, Hassan Ali Mater Al Reyami of the law firm of Hassan Al Reyami Advocates and Legal Consultants, is not listed on the Dubai Court website as a recognized notary. *See id.* ¶ 32. And although Mr. Malik's affiliation is unknown, to the extent he is connected to Hassan Al Reyami Advocates and Legal Consultants, the UAE Ministry of Justice has stated in a "2010 Circular" that "it is strictly prohibited for Legal Consultants Offices to receive judicial documents or notices coming from abroad or deliver the same to the nationals of the State or the residents in the State." *Id.* ¶¶ 33-34, 40. "Such Judicial documents or notices should be sent through the Diplomatic Channels or through the Ministry of Justice." *Id.*

Notably, at least two U.S. courts have found service in the UAE to be insufficient for many of the same reasons. In *Nabulsi v. Nahyan*, a process server "filed a return of service stating that he had '[l]eft copies [of the summons and complaint] at the defendant's usual place of business . . . at Pearl Properties, Oud Medha Road at 10th Street, First Floor, Dubai, UAE.'" No. 06-cv-2683, 2009 WL 1658017, at *6 (S.D. Tex. June 12, 2009) (alterations in original). In an affidavit of service running at least fourteen paragraphs, the process server averred that although the defendant was absent at his business address, an assistant in defendant's employ agreed to accept service on behalf of the defendant. *Id.* The court nonetheless found service to be insufficient for

two independent reasons and dismissed the complaint.  First, the plaintiffs "failed to submit any evidence showing that [the process server] or his company has been authorized to serve process in the U.A.E."  *Id.* at *7-9.  Second, the process server "failed to provide a 'notification document' required under U.A.E. law for service of process" that states the "full name of the person to whom notice is delivered and his signature, seal, or thumb print . . . to acknowledge receipt."  *Id.* at *9.

The court in *Associations Inc. v. Associa Menasa Inc.*, No. 3:16-cv-3480, 2017 WL 11617417 (N.D. Tex. July 21, 2017), reached the same conclusions.  In that case, a process server provided proofs of service "indicat[ing] a copy of the summons and complaint were delivered to a receptionist, named Cecilia, at [defendant] Gulf International's office in the Fairmont Hotel in Dubai."  *Id.* at *2.  On a motion for default judgment for failure to respond, the court found those proofs insufficient and denied plaintiffs relief because:  (i) plaintiffs had identified the person who attempted service as a "notification server," while UAE law "requires service by a court bailiff or private company appointed by the UAE Ministry of Justice;" and (ii) the proofs of service "d[id] not include Cecilia's last name or her signature."  *Id.* at *3.  The same reasoning applies here.

At bottom, Plaintiffs' affidavit of service not only fails to prove compliance with UAE law—and by extension, Rule 4's strictures—but affirmatively forecloses a finding that service was proper.  Tellingly, prior to filing their affidavit of service in April 2022, not even Plaintiffs believed that their actions were sufficient.  One week *after* the attempted service in September 2021, Plaintiffs represented, as part of a "Stipulation and [Proposed] Order Regarding Service and Preliminary Scheduling Matters" granted by this Court, that "defendant Wall Street Exchange LLC *has not been served with the Complaint*."  ECF No. 15-1, at 2 (alteration in original) (emphasis added).  Plaintiffs' own statements thus belie their (otherwise facially defective) affidavit of service.

11

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER WSE

"Rule 12(b)(2) authorizes a party to seek dismissal on the ground that the Court lacks personal jurisdiction over him or it." *Eyeking, LLC v. JSS, LLC*, 321 F. Supp. 3d 326, 329 (E.D.N.Y. 2018).  The plaintiff "bears the burden of showing that personal jurisdiction exists over the [d]efendant," *id.*, and "may not rely on conclusory statements without any supporting facts, as such allegations . . . lack the factual specificity necessary to confer jurisdiction," *Sidik v. Royal Sovereign Int'l, Inc.*, No. 17-cv-7020, 2020 WL 5441306, at *6 (E.D.N.Y. Sept. 10, 2020). Moreover, in evaluating a Rule 12(b)(2) motion, "a court may rely on materials beyond the pleadings." *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015).  Here, Plaintiffs' vague and conclusory allegations cannot satisfy their burden of showing that personal jurisdiction exists over WSE—under either New York's long-arm statute or constitutional due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

### A.   New York's Long-Arm Statute Does Not Provide Personal Jurisdiction

Plaintiffs have failed to plead sufficient facts to establish personal jurisdiction over WSE under New York law.  New York's long-arm statute provides for specific jurisdiction over a person who commits certain acts in New York,[5] but only if the "cause of action aris[es] from" those acts. N.Y. C.P.L.R. § 302.[6]  Plaintiffs appear to allege summarily that WSE transacted business in New

---

[5] Presumably because WSE is a UAE corporation headquartered in Dubai, Plaintiffs do not allege that WSE is subject to general jurisdiction in New York, as they do with other Defendants.  *See* AC ¶ 79.

[6] The statute provides in pertinent part as follows:

a) Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

York by "sending dollars from or through Wall Street Exchange's facilities in New York, so that U.S. Dollars could be sent to Wall Street Exchange's customers in Dubai." AC ¶ 1096. Under New York law, "a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006) (internal citations omitted).

Here, Plaintiffs fail to allege any relationship between their claims against WSE and WSE's alleged transactions in New York, never mind a "substantial" one. Plaintiffs allege that WSE provided assistance to terrorist organizations "by allowing the Khanani MLO to transfer and wash U.S. Dollars for the Syndicate's benefit." AC ¶ 582. Although plaintiffs broadly allege that WSE sent dollars through facilities in New York "so that U.S. Dollars could be sent to Wall Street Exchange's customers in Dubai," AC ¶ 1096, those allegations "do[] not sufficiently assert how" the transactions "relate[] to" (i) the Khanani MLO, (ii) the Syndicate, and (iii) the attacks that injured plaintiffs, *Siegel v. HSBC Holdings, PLC,* 2018 WL 501610, at *4 (S.D.N.Y. Jan. 19, 2018). Nor does Plaintiffs' allegation that WSE "washed U.S. dollars" for the Khanani MLO establish that WSE's activity took place in New York (or anywhere else in the United States). AC ¶ 582. Even assuming the truth of those allegations for present purposes, WSE "could have . . . processed U.S.-dollar-denominated wire transfers . . . anywhere in the world," given "the widespread

---

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

acceptance and availability of U.S. currency." *Licci ex rel. Licci*, 732 F.3d at 171; *see also* Choudhary Decl. ¶ 5 (explaining that WSE "routes U.S. dollars through various locations outside of the United States, including through the United Arab Emirates, Austria, and Singapore.").

In short, Plaintiffs' allegations "lack key supporting facts which would enable the Court to determine whether there [were] frequent and deliberate" transfers through New York related to both the Khanani MLO and relevant FTOs, such that "the quantity and quality of contacts" with New York would be sufficient for personal jurisdiction. *Singer v. Bank of Palestine*, No. 19-cv-006, 2021 WL 4205176, at *6 (E.D.N.Y. Apr. 30, 2021).   For instance, Plaintiffs provide no "information as to dates, dollar amounts, number of transactions, [or] senders or recipients of these transfers." *Id.* at *5.   Indeed, Plaintiffs' most specific allegation—that "Farzam Mehdizadeh, a Canadian agent of Khanani and Khanani's money-laundering organization" sent "international wire transfers via Wall Street Exchange," AC ¶ 947—fails to assert that any of those transfers took place in New York (or anywhere else in the United States).   Plaintiffs therefore cannot satisfy any of the requirements of New York's long-arm statute.

**B.      Exercising Jurisdiction Over WSE Would Violate Due Process**

Even if Plaintiffs could satisfy New York's long-arm statute, Plaintiffs still bear the burden of demonstrating that jurisdiction is consistent with the Due Process Clause.  *See, e.g.*, *Giusto v. Rose & Womble Realty Co., LLC*, No. 15-cv-5249, 2016 WL 4544038, at *11 (E.D.N.Y. Aug. 31, 2016).   The same is true of Plaintiffs' reliance on Rule 4(k), which requires that "exercising jurisdiction is consistent with the United States Constitution and laws" (and is relevant only to the extent that no jurisdiction exists in a state forum).  *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).   Under either theory, Plaintiffs must show that a defendant has "minimum contacts" with a forum.  *Licci ex rel. Licci*, 732 F.3d at 170.   In a specific jurisdiction case like this one, a defendant satisfies the "minimum contacts" requirements if it "has purposefully directed his

activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (internal quotation marks omitted).

For the reasons discussed, Plaintiffs fail to establish that WSE has the requisite minimum contacts with New York. Even if WSE purposefully directed its activities toward New York, Plaintiffs fail to allege adequately that this litigation arose out of those activities. And if the relevant forum is the United States as a whole under Rule 4(k), Plaintiffs' allegations still fail to satisfy the Constitution's minimum contacts requirement. Plaintiffs assert that WSE's acts were "directed at the U.S.," AC ¶ 1097, because WSE "was generally aware" that it was "playing a role in unlawful activities from which the Syndicate's attacks were foreseeable," AC ¶ 958, and WSE "knew that their material support would aid terrorists targeting Americans," AC ¶ 1097. To satisfy due process, however, Plaintiffs must do more than suggest that "acts of violence committed against residents of the United States were a foreseeable consequence of" WSE's purported activities. *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 95 (2d Cir. 2008), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010). Plaintiffs must instead allege that WSE "expressly aimed intentional tortious acts at residents of the United States." *Id.*

The Second Circuit's decision in *In re Terrorist Attacks* is instructive. There, defendants allegedly "supported Muslim charities knowing that their money would be diverted to al Qaeda, which then used the money to finance the September 11 attacks." *Id.* at 94. The Second Circuit nonetheless held that even if defendants intended to fund al-Qaeda, and even if defendants foresaw that such funding would result in acts of violence against United States residents, those acts did not demonstrate the level of intentionality necessary to show defendants should have "anticipate[d]

15

being haled into court here." *Id.* at 93, 95 (internal quotation marks omitted). The same logic applies here.

Taking a different tack, Plaintiffs seek to satisfy the minimum contacts requirement by asserting that "[s]ignificant Wall Street Exchange Laundromat transactions alleged in this Complaint, totaling millions of dollars, were executed by and through Wall Street Exchange's facilities in the United States." AC ¶ 73. Such "conclusory" allegations, attempting to link WSE activities to the claims of this case, are "insufficient" to satisfy due process. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013); *see also Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-cv-1777, 2011 WL 381612, at *3 (E.D.N.Y. Feb. 2, 2011) ("[A] plaintiff cannot meet the burden of showing a prima facie case of jurisdiction where the complaint asserts only 'conclusory non-fact-specific jurisdictional allegations.'" (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)); *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 627 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) ("conclusory assertion" was "not sufficient to satisfy the minimum contacts requirement").

## III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED ON THE MERITS

Even if Plaintiffs had properly served WSE and this Court had jurisdiction over WSE, Plaintiffs' Amended Complaint would fail on its own terms.

### A.   The Amended Complaint Fails Basic Pleading Standards

As a threshold matter, at nearly 600 pages, the Amended Complaint is neither "short" nor "plain," and at over 170,000 words, it is not "simple, concise, or direct." FED. R. CIV. P. 8; *see Kalderon v. Finkelstein*, 495 F. App'x 103, 105-06 (2d Cir. 2012) ("District Court would have acted well within its discretion in dismissing the complaint . . . for failure to comply with Rule 8(a)(2) and (d)(1)" where "rambling, 126-page complaint . . . was neither short nor plain, and contained factual allegations that were often repetitive [and] inconsistent"). Plaintiffs make confused and

vague allegations that create a "disconnect within the facts and legal claims" and "make it impossible for this Court or Defendants' counsel to proceed . . . in any reasonable manner." *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 420 (D.D.C. 2017).   Making matters worse, Plaintiffs improperly lump all Defendants together in hundreds of allegations, *e.g.*, AC ¶¶ 591-735, and use loosely and inconsistently defined terms like "Syndicate" and "Khanani MLO," *see Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) ("Generally, a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 . . . by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct."). Those Rule 8 deficiencies deprive WSE of adequate notice, and dismissal is warranted for that reason alone.  *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

## B.        The Amended Complaint Fails To State A Claim

In any event, to survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.   "A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action."  *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 WL 1409446, at *4 (S.D.N.Y. Mar. 28, 2019).  That is especially true in this case:  given the "extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant."  *In re Terrorist Attacks on September 11, 2001*, 464 F. Supp. 2d 335, 339 (S.D.N.Y. 2006).

Plaintiffs' claims arise under JASTA, which amended the ATA to provide a cause of action against "any person who aids and abets, by knowingly providing substantial assistance" to "an act of international terrorism."  18 U.S.C. § 2333(d)(2).  Such liability is restricted to an injury arising

from "an act of international terrorism" that was "committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189) as of the date on which such act of international terrorism was committed, planned, or authorized." *Id*.  Consequently, to avoid dismissal, Plaintiffs must adequately plead three statutory elements:  "(1) an injury arising from an act of international terrorism; (2) that the act was committed, planned, or authorized by a designated [FTO];  and (3) that the defendant aided or abetted an act of international terrorism by knowingly providing substantial assistance." *Averbach v. Cairo Amman Bank*, No. 19-cv-0004, 2022 WL 2530797, at *9 (S.D.N.Y. Apr. 11, 2022).  Plaintiffs fail to do so for elements two and three.

i.   *Plaintiffs' Amended Complaint cannot establish aiding and abetting liability.*

As to the third statutory element, when Congress enacted JASTA, it specified that "the proper legal framework for federal civil aiding and abetting and conspiracy liability" claims under the statute is found in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).  JASTA § 2(a)(5), 130 Stat. at 852.  *Halberstam* supplies three elements relevant to establishing aiding or abetting liability— "wrongful acts, general awareness, and substantial assistance."  *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 216 (D.C. Cir. 2022) (citing *Halberstam*, 705 F.2d at 487-88).  Here, the Amended Complaint is rife with conclusory allegations that, even if construed in Plaintiffs' favor, fail to adequately plead that WSE knowingly provided substantial assistance to a designated FTO.

a.   *Plaintiffs fail to establish WSE was generally aware it was playing a role in terrorist activities.*

Aiding-and-abetting liability requires "more than the provision of material support to a designated terrorist organization."  *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018). Instead, it "requires the secondary actor to be 'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities."  *Id.*   At the motion-to-dismiss stage, "Plaintiffs are

18

required to include allegations of the facts or events they claim give rise to an inference of knowledge." *Averbach*, 2022 WL 2530797, at *10 (citing *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir. 1985)).  Moreover, whether a defendant's support to an FTO "suffices to establish general awareness" depends on "allegations that a defendant was generally aware . . . that it was playing a role in unlawful activities from which [terrorist] attacks were foreseeable." *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 498 (2d Cir. 2021) (internal quotation marks omitted).

Plaintiffs' numerous circular and conclusory allegations fail to give rise to an inference that WSE was "generally aware" that it was playing any role in terrorist activities.  In numerous paragraphs, Plaintiffs lump all defendants together to allege "general awareness" but provide "no factual basis to distinguish [WSE's] conduct" from that of other Defendants.  *Toumazou*, 71 F. Supp. 3d at 21; *see, e.g.*, AC ¶¶ 591-735.  Plaintiffs allege "[t]he nature, counterparties, and sheer volume of transactions" provided WSE with "general awareness" and that "at all relevant times" WSE "knew" or was "generally aware" that "Khanani was a known agent of, and widely understood to launder money for, al-Qaeda, the Taliban and the Haqqani Network."  AC ¶¶ 953, 961.  But Plaintiffs do not explain why the volume of transactions or nature of the counterparties should have alerted WSE that the transactions were for illegal purposes, much less why WSE should have suspected that the alleged transactions were for terroristic ones (or even that the transactions were actually by Khanani or the Khanani MLO).  *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (general awareness prong unmet where plaintiffs fail to allege non-conclusory factual allegations that defendants "knew or intended that" the funds transferred for bank customer would be sent to an FTO or to any terrorist organization); *see also Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 869 (D.C. Cir. 2022) (allegation that defendant's senior manager expressed concern that a customer "may" have "links to terrorism"

19

was insufficient to establish defendant was generally aware of playing a role in terrorist acts).

Plaintiffs' limited citations to public sources—most of which are dated after the relevant attacks—fail to raise any inference that WSE was generally aware that it was playing a purported role in terrorist activities by performing financial transactions for the Khanani MLO.  Where public sources "are dated after the injury-causing attacks," they "do not plausibly support an inference that [WSE] had the requisite general awareness *at the time* that it provided" the relevant financial services.  *Honickman*, 6 F.4th at 501 (emphasis added).  Plaintiffs also make numerous allegations that WSE's FTO-affiliated customers went through great lengths of using "fronts," "agents," and "covers" to conceal their identities and terroristic purposes.  *See, e.g.*, AC ¶¶ 250 (p. 142), 269 (p. 150), 688.  But they simultaneously allege WSE "knew" their identities without any specific non-conclusory factual allegation to support that conclusion.  AC ¶¶ 949, 956, 960-61.  Allegations that WSE's FTO-affiliated customers "maintained a 'cover' in public undermines the plausibility of Plaintiffs' theory that [WSE] understood these organizations' true nature and activities from the public record at the time."  *Honickman*, 6 F.4th at 502.  Plaintiffs have failed to plausibly allege that WSE was aware that any of its alleged customers were closely intertwined with an FTO's terrorist's activities.

> b.   *Plaintiffs fail to plausibly allege that WSE knowingly provided substantial assistance to anyone who committed the attacks.*

To maintain their JASTA claim, Plaintiffs also must plausibly allege that WSE both "knowingly" and "substantially" assisted those who committed the relevant terrorist attacks.  *Atchley*, 22 F.4th at 216.  Plaintiffs do not plead a "direct connection between the services [WSE] provided" and "any alleged terrorist activities."  *Freeman v. HSBC Holdings PLC*, 465 F. Supp. 3d 220, 231 (E.D.N.Y. 2020).  "[T]he absence of any factual allegations showing a connection between [WSE's] services and the terrorist activity at issue is fatal to Plaintiffs' aiding and abetting

claim." *Id.* The "knowledge component" is satisfied only "[i]f the defendant knowingly—and not innocently or inadvertently—gave assistance." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021). It is "designed to avoid imposing liability on 'innocent, incidental participants.'" *Id*. (quoting *Halberstam*, 705 F.2d at 485 n.14).

For many of the same reasons that Plaintiffs' "general awareness" allegations are inadequate, Plaintiffs fail to adequately plead that WSE had *requisite knowledge* that it was assisting those engaged in terrorist activities. Plaintiffs allege without support that WSE had a "culpable mental state because it knew that Khanani and the Khanani MLO was using Wall Street Exchange facilities to launder money, including for the Syndicate, and it allowed him to do so on a massive scale and over a long period of time." AC ¶ 1016.[7] Such conclusory allegations do not meet the JASTA standard. "[A]t most, the Complaint[] allege[s] that [WSE] should have known that [it was] contributing to terrorism and chose to ignore the possible consequences. That is in effect an allegation of recklessness, but JASTA requires more." *Freeman*, 465 F. Supp. 3d at 233 (quoting *Brill v. Chevron Corp.*, No. 15-cv-4916, 2018 WL 3861659, at *3 (N.D. Cal. Aug. 14, 2018)); *see also Honickman for Est. of Goldstein v. BLOM Bank SAL*, 432 F. Supp. 3d 253, 268 (E.D.N.Y. 2020) (finding "knowing" prong unmet where "the allegations support[ed] nothing more than the speculative possibility that [defendant] *might* have known about a nexus between the Three Customers and Hamas" (emphasis in original)); *Averbach v. Cairo Amman Bank*, No. 19-cv-4, 2020 WL 486860, at *13 (S.D.N.Y. Jan. 21, 2020) ("Merely providing banking services to a Hamas-affiliated charity, does not satisfy JASTA's *mens rea* requirement.").

---

[7] *See also* AC ¶ 572 ("Defendant Wall Street Exchange knowingly assumed a role in the Syndicate's terrorist fundraising and finance activities[.]"); AC ¶ 954 ("[T]he Khanani MLO's transfers of U.S. Dollars using Wall Street Exchange were inherently illegal in and of themselves, so Wall Street Exchange knew of its role in an illegal activity."); AC ¶ 960 ("Wall Street Exchange knew its customers, and therefore it knew that it was giving assistance, not in an innocent or inadvertent way, to Khanani and the Khanani MLO, which were in turn working as agents for the Syndicate.").

Beyond knowledge, Plaintiffs also fail to plausibly allege that WSE provided *substantial assistance* to any terrorist organization.  In determining whether an entity has substantially assisted a terrorist organization, courts consider six different factors:  (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance.  *Linde*, 882 F.3d at 329 (citing *Halberstam*, 705 F.2d at 483-84); *Honickman*, 6 F.4th at 500.  No one factor is dispositive, and the weight accorded to each factor is determined on a case-by-case basis.  *Averbach*, 2022 WL 2530797, at *15.  On balance, the factors must "plausibly show that [WSE] substantially assisted the acts of terrorism that ultimately harmed Plaintiffs."  *Id*.  In this case, all six factors strongly favor dismissal.

**Nature of the Act Encouraged**.  "This factor weighs against substantial assistance if '[t]here is no allegation that [the defendants] encouraged the [a]ttacks or any of [the organization's] terrorist activities."  *Cabrera v. Black & Veatch Spec. Projects Corps.*, No. 19-cv-3833, 2021 WL 3508091, at *27 (D.D.C. July 30, 2021) (quoting *Averbach*, 2020 WL 486860, at *16).  Although Plaintiffs allege that WSE facilitated financial transactions by unknown agents of Khanani, they do not "advance any non-conclusory allegation" that an FTO received any of those funds or that WSE "knew or intended that" an FTO would receive the funds, much less that they did so to encourage an FTO's engagement in terrorist activities.  *Siegel*, 933 F.3d at 225.  This factor weighs in favor of dismissal.

**Amount of Assistance**.  Plaintiffs allege that WSE facilitated transfers totaling "millions if not billions" of dollars.  AC ¶¶ 585, 951.  But Plaintiffs fail to "advance any non-conclusory allegation" that al-Qaeda, the Haqqani Network, Hezbollah, the Islamic Revolutionary Guard Corps, Jaish-e-Mohammed, or Lashkar-e-Taiba actually received any funds associated with WSE

22

or that WSE knew or intended that those organizations would receive the funds. *Siegel*, 933 F.3d at 225; *see also Honickman*, 432 F. Supp. 3d at 268 (discounting allegation that defendant's services allowed millions of dollars to flow to terrorist operations where "[p]laintiffs ma[d]e no non-conclusory assertions that any of the funds processed by the [customers alleged to be affiliates of the FTO] actually went to [the FTO], or that [defendant], at the time it provided banking services to the [customers], was aware or intended that [the FTO] would receive the corresponding funds" (citing *Siegel*, 933 F.3d at 225)). Plaintiffs also fail to allege "how much (if any) of that money indirectly flowed to al-Qaeda" or any FTO. *Bernhardt*, 47 F.4th at 871. This factor weighs in favor of dismissal.

*Presence*. "Any assistance is less substantial if the defendants were not 'physically present' at the time of the [a]ttacks." *Cabrera*, 2021 WL 3508091, at *27 (quoting *Averbach*, 2020 WL 486860, at *16). Plaintiffs do not allege that WSE was present at the time of any attack or that WSE was "working in parallel" with the perpetrators at some "discrete location." *Id.* Even where financial support is alleged, "without any identifiable connection to the specific attacks," it cannot constitute "presence." *Id.* (citing cases).

*Relationship to the Principal*. "This factor recognizes that one's encouragement of a tort may be more effective or less effective depending on one's relationship to the person being encouraged." *Cabrera*, 2021 WL 3508091, at *28 (citations omitted). Plaintiffs do not plead any non-conclusory allegations that WSE had any relationship with al-Qaeda, the Haqqani Network, Hezbollah, the Islamic Revolutionary Guard Corps, Jaish-e-Mohammed, Lashkar-e-Taiba, or any other organization responsible for the attacks at issue. Plaintiffs also fail to allege any direct relationship between WSE and Altaf Khanani or any of the organizations or individuals in the Khanani MLO.

23

*State of Mind*.   This factor asks "whether the defendant was 'one in spirit' with the tortfeasor or desired to make the venture succeed." *Cabrera*, 2021 WL 3508091, at *28 (citations omitted).   "Such a state of mind may be found if the complaint plausibly alleges that the defendants 'had advance knowledge of any attacks' or otherwise 'intended [the perpetrator] to carry out the attacks.'"  *Id.* (quoting *Copeland v. Twitter, Inc.*, 352 F. Supp. 3d 965, 976 (N.D. Cal. 2018)). Plaintiffs do not plead any non-conclusory allegations that WSE knowingly assumed a role in a specific FTO's terrorist activities or had any knowledge of the terrorist activities at all.  *Siegel*, 933 F.3d at 225.

*Duration of Assistance*.   Plaintiffs do not plead any factual information as to when WSE provided financial services to any specific individual or organization connected to Khanani, Khanani MLO, or an FTO.   Plaintiffs merely allege in conclusory fashion that WSE "aided al-Qaeda, the Taliban, Lashkar-e-Taiba, Jaish-e-Mohammed, and D-Company since at least 2008" and "provided essential services that directly benefited the Syndicate from at least 1995 through 2016." AC ¶¶ 1024, 574.   This is insufficient without any demonstrable allegations of identifiable individuals who made transactions and when they did.   The allegation of decades of transactions "bespeaks a lengthy relationship but not necessarily of assistance in terrorism." *Siegel*, 933 F.3d at 225; *see also id.* ("ARB is a large bank with vast operations, and the plaintiffs do not allege— even conclusorily—that most, or even many, of HSBC's services to ARB assisted terrorism.").

ii.    *Plaintiffs fail to plausibly link WSE to any attack or FTO.*

As to the second element of a JASTA claim, Plaintiffs fail to plausibly link WSE to any injury-causing attack "committed, planned, or authorized by" a designated FTO.  *See* 18 U.S.C. § 2333(d)(2); *Averbach,* 2020 WL 486860, at *12 (noting "trend in JASTA case law toward disallowing claims against defendants who did not deal directly with a terrorist organization or its proxy").   Plaintiffs group FTOs and non-FTOs together and allege attacks committed by

24

organizations that are not FTOs (*i.e.*, the Taliban) or attacks by an FTO before it was designated as such (*i.e.,* Haqqani Network before its designation on September 19, 2012).[8]  Plaintiffs' failure to concisely plead sufficient facts regarding their injuries makes it impossible to identify links between WSE and any FTO or non-FTO responsible for their injuries.

To the extent there are any allegations that involve WSE, they are conclusory and do not include any underlying facts connecting specific FTOs to WSE services or those same FTOs to Plaintiffs' injuries.  Allegations that are "mere conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 664.  Assuming Plaintiffs' conclusory allegations that WSE directly aided Khanani or the Khanani MLO by facilitating financial transactions are true (they are not), there are no allegations that Khanani or the Khanani MLO planned or committed any of the attacks.  Consequently, Plaintiffs have completely failed to connect WSE to any of their injuries or any WSE-alleged conduct to an FTO.

## CONCLUSION

The Court should grant WSE's Motion to Dismiss the Amended Complaint with prejudice.

Dated:  New York, New York  
       November 1, 2022

Respectfully Submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

 /s/  *Stephen M. Baldini*                      
Stephen M. Baldini (sbaldini@akingump.com)  
Erica E. Holland (eholland@akingump.com)  
David Giller (dgiller@akingump.com)  
One Bryant Park  
New York, NY 10036-6745  
Telephone:  (212) 872-1000  
Facsimile:  (212) 872-1002

*Counsel for Defendant Wall Street Exchange LLC*

---

[8] At the least, claims based on attacks committed by the Haqqani Network before its designation as an FTO and those committed solely by the Taliban should be dismissed.