**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

AUGUST WILDMAN, *et al.*,

Plaintiffs,

v.

DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK TRUST COMPANY AMERICAS, STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, STANDARD CHARTERED BANK (PAKISTAN) LIMITED, DANSKE BANK A/S, DANSKE MARKETS INC., PLACID NK CORPORATION d/b/a PLACID EXPRESS, and WALL STREET EXCHANGE LLC,

Defendants.

**1:21 Civ. 04400 (HG) (RML)**

**WALL STREET EXCHANGE LLC'S[1] REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Stephen M. Baldini (sbaldini@akingump.com)
Erica E. Holland (eholland@akingump.com)
David Giller (dgiller@akingump.com)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for Defendant Wall Street Exchange LLC*

[1] The Amended Complaint refers to Wall Street Exchange LLC, however; the correct name is Wall Street Exchange Centre LLC.

**TABLE OF CONTENTS**

ARGUMENT ..... 1

I. WSE SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS ..... 1

II. PLAINTIFFS HAVE NOT ESTABLISHED PERSONAL JURISDICTION ..... 2

III. THE AMENDED COMPLAINT VIOLATES RULE 8 AND FAILS TO STATE A CLAIM FOR AIDING AND ABETTING UNDER THE JUSTICE AGAINST SPONSORS OF TERRORISM ACT (JASTA) ..... 5

A. Plaintiffs Fail To Allege That WSE Was Generally Aware Of Playing A Role In Acts Of International Terrorism ..... 6

B. Plaintiffs Fail To Allege That WSE Knowingly Provided Substantial Assistance To Anyone Who Committed The Acts ..... 8

C. Plaintiffs Fail To Link WSE To Any Attack By A Designated FTO ..... 9

CONCLUSION ..... 9

## TABLE OF AUTHORITIES

**<u>Cases</u>:**

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ....................5

*Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
No. 17-mc-00216 (VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) ....................4, 5

*Cabrera v. Black & Veatch Special Projects Corps.*,
No. 19-cv-3833, 2021 WL 3508091 (D.D.C. July 30, 2021) ....................8

*Chirag v. MT Marida Marguerite Schiffahrts*,
604 F. App'x 16 (2d Cir. 2015) ....................2

*Cirulli v. Astorino*,
No. 14-CV-5459 (NSR), 2015 WL 4635707 (S.D.N.Y. Aug. 3, 2015) ....................9

*Doe v. Delaware State Police*,
939 F. Supp. 2d 313 (S.D.N.Y. 2013)....................3

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013)....................3

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ....................8, 9

*Honickman v. BLOM Bank SAL*,
6 F.4th 487 (2d Cir. 2021) ....................6, 8

*In re Crysen/Montenay Energy Co.*,
166 B.R. 546 (S.D.N.Y. 1994)....................2

*In re SSA Bonds Antitrust Litig.*,
420 F. Supp. 3d 219 (S.D.N.Y. 2019)....................5

*In re Terrorist Attacks on Sept. 11, 2001*,
538 F.3d 71 (2d Cir. 2008)....................4
295 F. Supp. 3d 416 (S.D.N.Y. 2018)....................4

*Jerusalem NY Enters. LLC v. Huber Erectors & Hoisting, LLC*,
No. 21-cv-376 (MKB), 2021 WL 4711821 (E.D.N.Y. Oct. 9, 2021)....................4

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021)....................8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)....................3

*Samantar v. Yousuf,*
560 U.S. 305 (2010)....................4

*Sartor v. Toussaint*,
70 F. App'x 11 (2d Cir. 2002) ....................1

*Shum v. JILI Inc*.,
No. 17-cv-7600 (RPK) (VMS), 2022 WL 17403608 (E.D.N.Y. Dec. 2, 2022)....................1

*Siegel v. HSBC N. Am. Holdings, Inc*.,
933 F.3d 217 (2d Cir. 2019)....................9

*Singer v. Bank of Palestine*,
*No.* 19-cv-006 (ENV) (RML), 2021 WL 4205176 (E.D.N.Y. Apr. 30, 2021)....................5

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
450 F.3d 100 (2d Cir. 2006)....................2

*Travers Tool Co. v. Southern Overseas Express Line, Inc.*,
No. 98 CV 8464 (RO), 2000 WL 194781 (S.D.N.Y. Feb. 17, 2000)....................1, 2

*Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*,
779 F. App'x 66 (2d Cir. 2019) ....................4

*Zapata v. City of New York*,
502 F.3d 192 (2d Cir. 2007)....................2

**STATUTES:**

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852
(2016)....................4

**OTHER AUTHORITIES:**

FED. R. CIV. P. 8(a) ....................9

Plaintiffs concede their failure to serve WSE. Plaintiffs also cannot connect WSE's alleged US-based transactions to the Khanani MLO, much less to the Syndicate and the attacks that harmed Plaintiffs, thereby failing to establish personal jurisdiction. And Plaintiffs make lengthy and irrelevant allegations to build an attenuated chain of connections that fail to reach WSE and fail to state a claim for aiding and abetting under the Anti-Terrorism Act. Accordingly, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I. WSE SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS

Plaintiffs expressly concede their failure to serve WSE: "[p]laintiffs do not dispute that service did not meet all the requirements of U.A.E. law." Opp. at 4; *see* ECF No. 83 (requesting alternative means of service due to failure to serve WSE). As such, they do not contest that their proof of service was facially deficient under U.A.E. law and the Federal Rules, for the reasons set forth in WSE's opening brief. Instead, Plaintiffs offer a variety of reasons this Court should not dismiss the Amended Complaint *notwithstanding* their concession, none of which are persuasive.

First, Plaintiffs argue that WSE has suffered no prejudice because it has had time to retain counsel and respond to the Amended Complaint. But "actual notice of suit [cannot] cure a failure to comply with the . . . requirements for serving process." *Sartor v. Toussaint,* 70 F. App'x 11, 13 (2d Cir. 2002); *Shum v. JILI Inc*., No. 17-cv-7600 (RPK) (VMS), 2022 WL 17403608, at *3 (E.D.N.Y. Dec. 2, 2022) ("Plaintiff cannot salvage his defective service by noting that Huang had actual notice of the lawsuit.").

Second, Plaintiffs rely on the fact that the time limits of Rule 4(m) do not apply to service in a foreign country. But that "does not mean that plaintiffs have unlimited time to serve. 'Rather, where service is in a foreign country, the Court uses a flexible due diligence standard to determine whether service of process was timely,'" (*Travers Tool Co. v. Southern Overseas Express Line,*

*Inc.,* No. 98 CV 8464 (RO), 2000 WL 194781, at *1–2 (S.D.N.Y. Feb. 17, 2000)), focusing on "good cause" for delay, (*In re Crysen/Montenay Energy Co*., 166 B.R. 546, 553 (S.D.N.Y. 1994)). Here, the facts do not support Plaintiffs' claim to have "exercised diligence." Opp. at 6. While Plaintiffs filed a stipulation with the Court on October 5, 2021, representing that WSE "has not been served with the Complaint," ECF No. 15-1, Plaintiffs then filed on April 8, 2022, an affidavit claiming WSE had been served successfully on September 28, 2021, ECF No. 39. Plaintiffs have not explained this discrepancy. Nor have they made other attempts to serve properly (at least until WSE moved to dismiss). That Plaintiffs filed an obviously deficient proof of service that they do not even defend reinforces their lack of diligence.

Finally, Plaintiffs argue the Court should not dismiss for insufficient service of process because some claims may be time-barred if refiled. That gets the law backward. Where (as here) there is no "colorable excuse for neglect," a district court has the discretion to deny a plaintiff a further opportunity to serve process if the defendant would suffer prejudice by having to litigate an otherwise time-barred claim. *Zapata v. City of New York*, 502 F.3d 192, 197-99 (2d Cir. 2007).

## II. PLAINTIFFS HAVE NOT ESTABLISHED PERSONAL JURISDICTION

Plaintiffs' opposition brief confirms their failure to establish specific personal jurisdiction based on allegations that demonstrate a "substantial relationship between the transaction and the claim asserted," (*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citations omitted)), and are "non-conclusory" and "fact-specific," (*Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015)).

Although Plaintiffs claim to have alleged "that WSE helped Khanani and the Khanani MLO move USD in and through the U.A.E. using facilities—*e.g.*, assets and accounts—in the United States," Opp. at 9, none of their allegations actually connect WSE's alleged US-based transactions to the Khanani MLO, much less to the Syndicate and the attacks that harmed Plaintiffs.

For example, the cited allegation that WSE "sen[t] dollars from or through Wall Street Exchange's facilities in New York" for the benefit of "customers in Dubai" does not specify that those transactions were for the Khanani MLO. AC ¶¶ 1095-1096 (cited in Opp. at 9). And in confirming that WSE (supposedly) "help[ed] [Khanani] move USD around the world," Opp. at 10 (citing AC ¶ 576), Plaintiffs implicitly concede that the alleged laundering conduct did not necessarily occur in New York.[2] Plaintiffs' allegations are thus far afield from those in *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, where plaintiffs specifically alleged that defendant frequently "used its New York correspondent account" to funnel money to the terrorist group that carried out the attacks that injured plaintiffs. 732 F.3d 161, 168 (2d Cir. 2013). *Contra* Opp. at 10.

Plaintiffs' other allegations (Opp. at 9-10) are too general to support jurisdiction. "[C]ourts have regularly held that a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contacts with the forum state." *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 332 (S.D.N.Y. 2013). Yet Plaintiffs seek to rely on broad allegations that "[e]ach Defendant . . . process[ed] transactions for the terrorists that injured Plaintiffs through each Defendant's affiliated New York, or through such Defendant's correspondent account transactions with a bank in New York," AC ¶ 78; that "New York has remained a core financial capital and hub for dollar- clearing transactions" for terrorists, AC ¶ 604; and "that a vast sum of USD-denominated terrorist finance would inevitably flow through U.S.-based accounts to overseas accounts foreseeably controlled by al-Qaeda and the Haqqani Network," AC ¶ 614.[3]

---

[2] Plaintiffs incorrectly argue (Opp. at 7-8) that this court must disregard an affidavit stating that WSE routes U.S. dollars outside the United States. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). In any event, Plaintiffs do not actually contest that WSE "routes U.S. dollars through various locations outside of the United States." Choudhary Decl. ¶ 5.

[3] It is also entirely irrelevant that WSE is titled "Wall Street Exchange." That fact does not support any inference that WSE must somehow have a connection to the New York financial

Plaintiffs' alternative theory of jurisdiction is equally unavailing. Plaintiffs do not dispute that, under Second Circuit case law, they must allege that WSE "expressly aimed intentional tortious acts at residents of the United States." *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 95 (2d Cir. 2008) (internal quotation marks omitted), *abrogated on other grounds by Samantar v. Yousuf,* 560 U.S. 305 (2010). Instead, they argue that the 2016 enactment of the Justice Against Sponsors of Terrorism Act, (JASTA), Pub. L. No. 114-222, 130 Stat. 852 (2016), undercuts that precedent. *See* Opp. at 12. But it is the role of the Second Circuit, not Plaintiffs, to determine whether circuit precedent should be overruled, and following JASTA's enactment, the Second Circuit has confirmed its *In re Terrorist Attacks* holding. *See Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68-69 (2d Cir. 2019). In any case, "it is well established that this Court's constitutional due process analysis cannot be altered by legislative enactment." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 428 (S.D.N.Y. 2018), *rev'd on other grounds by Underwriting Members of Lloyd's Syndicate 2*, 779 F. App'x 66 (2d Cir. 2019). And Plaintiffs' argument fails on its own terms, because the language Plaintiffs cite comes from JASTA's findings of fact, which "do not have binding legal effect." *Id.*

Finally, this Court should reject Plaintiffs' alternative request (Opp. at 11-12) for jurisdictional discovery. Where "[a] plaintiff has failed to establish a prima facie case for personal jurisdiction, jurisdictional discovery is generally not granted." *Jerusalem NY Enters. LLC v. Huber Erectors & Hoisting, LLC*, No. 21-cv-376 (MKB), 2021 WL 4711821, at *7 (E.D.N.Y. Oct. 9, 2021). Moreover, a plaintiff "must rely on more than conclusory allegations or mere speculations or hopes that jurisdiction exists" to justify such discovery. *Australia & New Zealand Banking Grp.*

---

system, much less one that relates to the Khanani MLO, the Syndicate, and relevant attacks, as Plaintiffs suggest. Opp. at 12.

*Ltd. v. APR Energy Holding Ltd.*, No. 17-mc-00216 (VEC), 2017 WL 3841874, at *5 (S.D.N.Y. Sept. 1, 2017) (internal quotation marks omitted). Although Plaintiffs claim that "it is likely that WSE's transactions flowed through New York," Opp. at 12, their allegations amount to nothing more than speculation that they might find some nexus between (1) WSE's transactions in New York, (2) WSE's transactions for the Khanani MLO, and (3) the Khanani MLO's connection to the Syndicate and its terrorist attacks. That is an insufficient basis to warrant discovery. *Compare In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 241 (S.D.N.Y. 2019) (denying jurisdictional discovery where plaintiffs' allegations were "conclusory and devoid of any facts that show specific transactions in New York" linked to the offending conduct), *with Singer v. Bank of Palestine, No.* 19-cv-006 (ENV) (RML), 2021 WL 4205176, at *7 (E.D.N.Y. Apr. 30, 2021) (ordering jurisdictional discovery where plaintiffs identified "[a]ccount numbers" and "the locations of . . . correspondent bank accounts" in New York that defendant allegedly used to issue payments to organizations affiliated with Hamas).

## III. THE AMENDED COMPLAINT VIOLATES RULE 8 AND FAILS TO STATE A CLAIM FOR AIDING AND ABETTING UNDER THE JUSTICE AGAINST SPONSORS OF TERRORISM ACT (JASTA)

By conflating all Defendants in hundreds of allegations, *e.g.*, AC ¶¶ 591-735, Plaintiffs fail to provide WSE with adequate notice of the specific claims against it, as required by Rule 8. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). Plaintiffs claim "some" allegations are "against all of the defendants" and are "common to each defendant," but this is not clear in the Amended Complaint. Opp. at 13. Plaintiffs make "common allegations" but allege factual support for only some individual defendants. For example, although Plaintiffs allege "[e]ach [d]efendant aided the Syndicate by facilitating the Estonia-related transactions," their underlying alleged facts support this claim for other defendants, not WSE. *See* AC ¶ 245, 534-538, 542-545, 921-930, 1087-1091. Plaintiffs state "many allegations" "don't relate to WSE, but

instead to other defendants," Opp. at 13, confirming WSE's position that the vast majority of the alleged terrorist schemes are not connected to WSE. Plaintiffs must distinguish the conduct of each defendant to provide fair notice.

As to the merits of Plaintiffs' JASTA claim (Plaintiffs do not address RICO), the long and vague causal chain that Plaintiffs allege between WSE and any FTO is far too attenuated to support either of JASTA's second or third prongs to establish aiding and abetting liability.

**A. Plaintiffs Fail To Allege That WSE Was Generally Aware Of Playing A Role In Acts Of International Terrorism**

Plaintiffs fail to plausibly allege that WSE was generally aware that it was playing a role in illegal activity from which terrorist attacks were foreseeable. *See Honickman v. BLOM Bank SAL*, 6 F.4th 487, 496 (2d Cir. 2021). Plaintiffs claim to have met this standard by pleading that WSE "knew" it was laundering money for terrorist agents because "a litany of public sources" put WSE on notice that Khanani was a notorious terrorist money launderer. Opp. at 16. But that is not enough; Plaintiffs must allege why WSE should have known they were assisting Khanani with those specific activities. *Honickman*, 6 F.4th at 499 (holding that plaintiffs must show that defendant's customer "'w[as] so closely intertwined with [the terrorist attacker's] violent terrorist activities that one can reasonably infer that [the bank] was generally aware while it was providing banking services to those entities that it was playing a role in unlawful activities from which [the terrorist] attacks were foreseeable.'").

And although Plaintiffs claim broadly that WSE "knew who[m] it was dealing with," Opp. at 20, they set forth no specific factual allegations—such as the timing, number, location, or senders/recipients of transfers—to indicate WSE knew the Khanani MLO was its customer, much less that WSE was aware of aiding the Khanani MLO in terrorist activities. Plaintiffs have now in fact conceded that they went too far in alleging WSE knew of any illegal activity, withdrawing the

"erroneous allegation" that a public source stated that WSE "knew it was evading anti-money laundering rules and supporting illicit groups." ECF No. 86.

Indeed, while Plaintiffs broadly allege that Khanani used fronts and unknown agents to conduct business, they do not allege that public sources contemporaneously connected those fronts and agents to Khanani or that WSE held accounts for them. *See, e.g.*, AC ¶¶ 250 (p. 142), 269 (p. 150), 688. Plaintiffs identify just one individual potentially connecting Khanani to WSE, via sources made publicly available only after 2016—that is, after the majority of the alleged attacks took place. Having failed to identify a sufficient connection linking Khanani and WSE, Plaintiffs resort to claiming that Khanani's supposed WSE transactions were suspicious on their face. *See* AC ¶¶ 937, 945. But they do not provide any details—such as their amount, sender, recipient, or date—to explain why the transactions were suspicious.

As in their complaint, Plaintiffs try in their opposition brief to plead their case by lumping the Defendants together. For instance, Plaintiffs declare that "employees at Standard Chartered Bank reviewing transactions for Al Zarooni Exchange discerned that entity's connection to Khanani, money laundering, and terrorism in 2012 and 2013" and therefore, it is a "fair inference that WSE was able to do the same."[4] Opp. at 18-19. But WSE is not interchangeable with Standard Chartered Bank, and Plaintiffs' claims against WSE must stand on their own. Plaintiffs also argue that institutions like WSE "have advanced due diligence methods that enable them to identify illicit transactions based on simple information about their customers and their transactions." Opp. at 19. Yet Plaintiffs make no allegation that WSE's due diligence methods identified Khanani or the Khanani MLO as customers.

---

[4] The Amended Complaint does not allege that Al Zarooni Exchange was a direct customer of WSE.

Highlighting *Kaplan v. Lebanese Canadian Bank, SAL*, Plaintiffs argue that providing money-laundering banking services to customers is sufficient to permit an inference of general awareness of terrorist activity. Opp. at 19 (citing 999 F.3d 842 (2d Cir. 2021)). In *Kaplan*, however, the plaintiffs pleaded with the requisite detail that three integral members of Hezbollah were *direct* customers of the defendant bank. 999 F.3d at 864. Here, Plaintiffs do not allege that any WSE customers were directly connected to any FTO.

### B. Plaintiffs Fail To Allege That WSE Knowingly Provided Substantial Assistance To Anyone Who Committed The Acts

For many of the reasons Plaintiffs fail to adequately plead general awareness, they fail to adequately plead that WSE *knowingly* assisted any FTO. Nor do they satisfy the factors for establishing substantial assistance. *See Halberstam v. Welch,* 705 F.2d 472, 483-84 (D.C. Cir. 1983). For one, Plaintiffs advance no non-conclusory allegations that WSE encouraged terrorist activities. *Cabrera v. Black & Veatch Special Projects Corps.*, No. 19-cv-3833, 2021 WL 3508091, at *27 (D.D.C. July 30, 2021) (holding that this factor weighs against substantial assistance if "[t]here is no allegation that [the defendants] encouraged the [a]ttacks or any of [the organization's] terrorist activities") (alterations in original). The complaint is bereft of allegations as to the date, location, or amount of any particular transaction, and it lacks details as to the nature of the "essential financial services" WSE allegedly provided to benefit the Syndicate or any FTO. With respect to the amount of assistance, Plaintiffs declare that they do not need to allege that an FTO actually received the relevant funds. But that is so only if Plaintiffs adequately plead general awareness, which they have not done. *Honickman*, 6 F.4th at 500.

Plaintiffs concede that WSE was not present at the attacks and did not have a direct relationship with the principle tortfeasers. Further, Plaintiffs' allegations about WSE's supposed relationships with unknown Khanani entities during an unidentified time period are insufficient.

*See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (holding that plaintiffs could not show substantial assistance where defendant bank's relation to the principal attackers was several steps removed). Regarding state of mind, while Plaintiffs need not plead specific intent, they do not even plead general awareness that WSE was aiding criminal or tortious activity. The fact that the defendant in *Halberstam* did not know that she was an accomplice to burglary does not help Plaintiffs, *contra* Opp. at 23, because violence was a foreseeable risk of the illegal enterprise—"personal property crime at night"—in which the *Halberstam* defendant knowingly assisted her boyfriend. 705 F.2d at 487–88. The same cannot be broadly said of bank transfers, and Plaintiffs have not pled that WSE knew, at the time of any transaction, that any of its customers were involved in any criminal acts that could foreseeably lead to terrorism.

**C. Plaintiffs Fail To Link WSE To Any Attack By A Designated FTO**

Plaintiffs cannot make catch-all allegations that al-Qaeda planned or authorized every attack at issue, to connect each attack to a designated FTO, without factual support. Opp. at. 24-25. Such "[c]atchall pleading . . . does not meet pleading standards." *Cirulli v. Astorino*, No. 14-CV-5459 (NSR), 2015 WL 4635707, at *5 (S.D.N.Y. Aug. 3, 2015) (citing FED. R. CIV. P. 8(a)). Plaintiffs declare there is no "requirement to link WSE's assistance to any specific attack or FTO," Opp. at 25, but JASTA requires Plaintiffs to plausibly plead that WSE's conduct aided terrorist attacks committed, planned, or authorized by an FTO. Plaintiffs' opposition does not cure the Amended Complaint's failure to plead factual content that would allow this Court to draw the reasonable inference that WSE helped an FTO that committed planned or authorized attacks on Plaintiffs.

## CONCLUSION

The Court should grant WSE's Motion to Dismiss the Amended Complaint with prejudice.

Dated: New York, New York
December 9, 2022

Respectfully Submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

/s/ *Stephen M. Baldini*
Stephen M. Baldini (sbaldini@akingump.com)
Erica E. Holland (eholland@akingump.com)
David Giller (dgiller@akingump.com)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for Defendant Wall Street Exchange LLC*